**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 |
| | Master Docket Case No. 1:14-cv-1748 |
| | Honorable Matthew F. Kennelly |
| MEDICAL MUTUAL OF OHIO, | |
| Plaintiff, | |
| v. | Case No. 1: 14-cv-8857 |
| ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY NORTH AMERICA, LLC, SOLVAY PHARMACEUTICALS, INC., SOLVAY PHARMACEUTICALS SARL, SOLVAY S.A., AUXILIUM, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX LIMITED, ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC., | |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO SEVER PLAINTIFF'S CLAIMS

**<u>TABLE OF CONTENTS</u>**

I.       INTRODUCTION ............................................................................................... 1

II.     LAW & ARGUMENT ....................................................................................... 2

    A.    Legal Standard .......................................................................................... 2

    B.    Defendants' Joint Severance Arguments Are Contradictory to Their Prior JPML and MDL Positions and the Benefits of Severance Are Largely Hypothetical and/or Illusory .......................................................................................... 3

        1.   *Plaintiff Medical Mutual's Complaint Is Consistent with Prior Proceedings* .. 3

        2.   *Defendants' Severance Arguments Are Hypothetical and Illusory* ................... 7

    C.    Medical Mutual's Complaint Meets Rule 20's Joinder Requirements ................... 9

        1.   *Series of Transactions or Occurrences* ........................................... 9

        2.   *Common Questions of Law or Fact* ................................................. 14

III.    CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Achte/Neunte Boll Kino Betteiligungs Gmbh & Co. KG v. Plebaniak*, 2013 WL 1342321, (D. Mass. 2013) .................................................................................................................... 14

*Benitez v. Am. Standard Circuits, Inc.*, 2009 WL 742686 (N.D. Ill. 2009) ............................... 3, 8

*Bicycle Peddler, LLC v. Does 1-99*, 2013 WL 4080196 (N.D. Ill. 2013) ..................................... 1

*Brinkley v. Cnty. of Lasalle, Ill.*, 2010 WL 3781281 (N.D. Ill. 2010) ......................................... 14

*Chapman v. Wagener Equities, Inc.*, 2012 WL 6214597 (N.D. Ill. 2012) .................................... 3

*Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) ...................................................... 3

*Dean v. City of Chicago*, 2009 WL 2848865, (N.D. Ill. 2009) .................................................. 7, 9

*George v. Smith*, 507 F.3d 605 (7th Cir. 2007), ......................................................................... 14

*In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) .................................................. 9, 11, 14

*In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 624 (8th Cir. 2010) ..................................... 9, 13

*In re: AndroGel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378 (U.S. Jud. Pan. Mult. Lit. 2014). ....... 14

*Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191 (N.D. Ill. 2013) ............................ 1, 9, 14

*Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) ......................................................................... 14

*Purzel Video GmbH v. Does 1-108*, 2013 WL 6797364 (N.D. Ill. 2013) ..................................... 1

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). ....................................................... 3

*United States v. Mississippi*, 380 U.S. 128 (1965) .................................................................... 11

### <u>Rules</u>

Fed. R. Civ. P. 20(a)(2)(B). ........................................................................................................ 14

Fed. R. Civ. P. 20(a)(2)............................................................................................................... 2

Fed. R. Civ. P. 21 ...................................................................................................................... 15

### <u>Treatises</u>

Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* ............... 2

COMES NOW Plaintiff Medical Mutual of Ohio, on behalf of itself and a class of similarly situated third party payors ("Medical Mutual" or "TPPs"), in Opposition to Defendants' Joint Motion to Sever Claims. (Dkt. No. 22.) Defendants' Joint Motion to Sever should be denied.

## I.    INTRODUCTION

Medical Mutual's Complaint was directly filed in the industry-wide *In re: Testosterone Replacement Therapy Products Liability Litigation* MDL, alleges common questions of fact and law as to each defendant, and thus involves substantial discovery overlap with the MDL's already-established discovery procedures. For discovery that is unique to Medical Mutual's class action, there is no reason to believe that the Court will not establish similarly effective discovery procedures for the five (5) Defendant groups in this case. Furthermore, the Court has already endorsed the parties' proposed Motion to Dismiss briefing schedule which allows for one Motion to Dismiss, one Response (to potentially include an amended complaint), and one Reply. (Dkt. No. 591.) Moreover, at least through fact discovery, severance now will create substantial case management inefficiencies.  Defendants' Joint Motion to Sever simply fails to overcome the case law's strong preference for joinder of parties and claims. Given that strong preference, and the Court's wide discretion on such matters, the Court need not rule on Defendants' severance motion at this early stage of litigation where the prospect of individual defenses is still "largely hypothetical."[1] *Bicycle Peddler, LLC v. Does 1-99*, No. 13-CV-2375, 2013 WL 4080196, at *5 (N.D. Ill. Aug. 13, 2013) (Gottschall, J.). In short, Defendants have done little to establish that joinder is impractical, inefficient, or prejudicial.

---

[1] Alternatively, the Court should view Defendants' severance motion with even more deference toward allowing the parties to remain joined at "at this early stage of the litigation." *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191 (N.D. Ill. 2013) (Castillo, J.); *see also Purzel Video GmbH v. Does 1-108*, No. 13-CV-792, 2013 WL 6797364, at *6 (N.D. Ill. Dec. 19, 2013) (stating that "joinder at this stage of the litigation is more efficient") (Gottschall, J.).

Here, the Complaint satisfies Rule 20's joinder requirements.[2] Plaintiff's claims are all logically related to Defendants' "complementary" and "cooperative" (Dkt. No. 1, at ¶¶ 4, 8) efforts to sell the Low T myth, i.e., "a fake disease concocted by defendants, who sought to give men the false impression that TRTs were approved to treat conditions like erectile dysfunction, osteoporosis, depression, fatigue, and obesity." (*See, e.g.,* No. 14-CV-1748, Dkt. No. 526, at 13.) Plaintiff's allegations set forth a "series of transactions or occurrences" and there are indeed many "questions of law or fact" common to all Defendants. In fact, in previous proceedings before the JPML and before this Court, Defendants have conceded as much.

The Court should thus deny or delay ruling on Defendants' Joint Motion to Sever.

## II.  LAW & ARGUMENT

### A.  <u>Legal Standard</u>

Rule 20 requires the claims against the defendants arise out of or with respect to "the same transaction, occurrence, or series of transactions or occurrences," and (2) that "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The purpose of the rule is "to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits[.]" 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1652; *see also id.* at § 1653 (joinder of "reasonably related claims" promotes "judicial economy"). "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S.

---

[2] In addition, any amended complaint is likely to allege a RICO conspiracy claim against all Defendants allegedly involved in their joint efforts to fabricate and then disseminate a disease state for hypogonadism associated with the male aging process. Plaintiff Medical Mutual notes that there is substantial overlap in the physician and vendor participants, and that Defendants often jointly sponsored CME and other unbranded events and disease "awareness" materials, and that Defendants often relied on other Defendants' publications and other medical literature generated by the publication enterprises.

715, 724 (1966).

Courts have wide discretion in deciding whether to sever a party for improper joinder. *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001). Rule 20 "should be given the liberal interpretation needed to implement its apparent purpose: the avoidance of multiple trials involving many similar or identical issues." *Chapman v. Wagener Equities, Inc.*, 09-CV-7299, 2012 WL 6214597, *6 (N.D. Ill. Dec. 13, 2012) (Tharp, J.) (quotations and citations omitted).

Finally, the strong preference for joinder of claims and parties is best served by not entertaining misjoinder motions until the close of fact discovery, *see Benitez v. Am. Standard Circuits, Inc.*, No. 08-CV-1998, 2009 WL 742686, at *6 (N.D. Ill. March 18, 2009) (Coar, J.) ("The motion to sever and the motion for separate trials are premature at this point. A more appropriate time to decide the matter would be at the conclusion of discovery."), or at least until after responsive pleadings are filed and briefed because the misjoinder concerns are "largely hypothetical" to that point. *Bicycle Peddler*, 2013 WL 4080196, at *5.

**B.      Defendants' Joint Severance Arguments Are Contradictory to Their Prior JPML and MDL Positions and the Benefits of Severance Are Largely Hypothetical and/or Illusory**

### 1.       Plaintiff Medical Mutual's Complaint Is Consistent with Prior Proceedings

The industry-wide *In re: Testosterone Replacement Therapy Products Liability Litigation* multi-district litigation ("MDL") began as the *In re: AndroGel Products Liability Litigation*. (*See, e.g.*, MDL No. 2545, Dkt. No. 211 ("the JPML Transfer Order").) However, as cases began to be filed against other TRT manufacturers, the issue of an "industry-wide" MDL was briefed, with numerous of the Defendants arguing in support thereof. (*See* MDL No. 2545, Dkt. No. 87, at 9 (AbbVie Defendants, Lilly Defendants, and Endo "do agree that these cases present one or more common questions of fact"); Dkt. No. 88, at 6 (Auxilium conceding that "[c]ommon

[q]uestions [e]xist" in all of the TRT cases).) The JPML likewise found "[found] that these actions involve common questions of fact" including "the role of testosterone in the aging body (possibly including examination of the recent studies that prompted the FDA investigation), as well as involve common regulatory issues in light of the FDA's announcement and subsequent actions, if any." (MDL No. 2545, Dkt. No. 211, at 2.) The JPML Transfer Order further stated that an industry-wide MDL was "the best solution" and

> [c]entralization of claims involving all testosterone replacement therapies will reduce potentially costly expert discovery, facilitate the establishment of a uniform pretrial approach . . . and conserve the resources of the parties, their counsel, and the judiciary.

(Id. at 2.)

Once the TRT cases were coordinated as an industry-wide MDL, Defendants filed a joint motion to dismiss, and requested joint briefing. (Dkt. No. 57, at ¶ 4 ("Defendants propose . . . a joint brief . . . .").) The Court granted Defendants' motion for joint briefing. (Dkt. No. 61).

In denying Defendants' joint motion to dismiss, the Court discussed the "Off-label promotion allegations" which are central to the Complaint filed by Plaintiff Medical Mutual against all five defendant groups.[3] (Dkt. No. 526, at 2.) The Court noted the allegations that all "Defendants conducted 'national disease awareness media blitz,' which was designed to convince men that 'normal and common conditions associated with normal aging could be caused by low testosterone levels.'" (Id. at 2-3 (citing Blades's Amended Compl. ¶¶ 35-39).)

In fact, the Court's discussion of the joint motion to dismiss in its Memorandum Opinion and Order is replete with references to common legal and factual issues as well as logically overlapping conduct by Defendants. Aside from the joint "national disease awareness media blitz" referenced above, the Court further cites the joint allegation against all Defendants that

---

[3] The Defendant groups consist of the AbbVie Defendants, Auxilium, the Lilly Defendants, the Actavis Defendants, and Endo.

"'Low T' was a fake disease concocted by defendants" (Dkt. No. 526, at 13), which is consistent with Plaintiff Medical Mutual's allegations that Defendants' unbranded disease state campaigns were both "cooperative" and "complementary." The Court further noted that "defendants also allegedly misrepresented the approved uses of the drugs through their online quizzes – AbbVie's 'www.IsItLowT.com,' Auxilium's 'ADAM questionnaire,' and Endo's 'www.GetTestedForLowT.com" – all of which were designed to make men think that normal signs of aging were symptoms of 'Low T.'" (Dkt. No. 526, at 13.) Plaintiff Medical Mutual details in its Complaint these nearly identical quizzes as part of the off-label promotion strategy that was both "cooperative" and "complementary." (*See, e.g.*, Dkt. No. 1, at ¶ 141.)

More generally, in discussing Texas law's off-label promotion exception in the context of a Texas failure to warn claim, the Court found that the personal injury plaintiffs had satisfied the pleading standard against all defendants on account of the allegation "that defendants promoted their drugs for treatment of 'Low T,' a fabricated disease, to treat conditions for which the drugs were not approved." (Dkt. No. 526, at 29-31.) The Court also references allegations that "TRT drugs increase hematocrit" and "scientific studies and the FDA's recent requirement that all TRT manufacturers change their labels to warn about the risk of venous thromboembolism" as common questions of fact. (Dkt. No. 526, at 5, 7-8.)

Plaintiff Medical Mutual makes similar allegations throughout its Complaint. (*See, e.g.*, Dkt. No. 1, at ¶ 4 ("Defendants <u>respective but complementary</u> marketing strategies specifically targeted for off-label TRT drug use patients with age-appropriate testosterone levels and patients with erectile dysfunction, diabetes, depression and obesity (among other off-label promotions) . . . . Defendants succeeded in polluting the medical discourse and medical literature to such a degree that the contours of the entire disease state and diagnosis were blurred.") (emphasis added)); *see*

*also* id. at ¶ 7 ("Such studies [e.g., the AbbVie-funded HIM Study] were and are cited and re-cited *ad nauseam* by <u>all</u> TRT Defendants to create the impression that hypogonadism was a vastly underdiagnosed and prevalent condition.") (emphasis added); *see also* id. at ¶ 8 ("Just how rapidly <u>and cooperatively</u> Defendants worked to inflate the hypogonadism prevalence numbers (a form of off-label marketing referred to as 'label expansion') . . . .") (emphasis added).)

Although Medical Mutual's Complaint alleges separate causes of action against each defendant group and alleges Defendants maintained their respective RICO enterprises, the Complaint also states that Defendants' efforts were "complementary" (Dkt. No. 1, at ¶ 4), "cooperative[ ]" (Dkt. No. 1, at ¶ 8), "similar" (Dkt. No. 1, at ¶ 9), "echoed" other Defendants' efforts (Dkt. No. 1, at ¶ 388), "rel[iant]" on other Defendants' efforts (Dkt. No. 1, at ¶¶ 406, 410), and consisting of joint unbranded promotional efforts (Dkt. No. 1, at ¶ 408). Further, as stated *supra*, at n.2, Plaintiff and counsel are actively investigating whether a joint RICO conspiracy claim based upon the collective effort to "fabricate" a disease through unbranded advertising, publications, and CME events against multiple or all Defendants is warranted.

Defendants all made the same off-label promotions regarding their TRT products, and relied on the same medical literature generated collectively by the Defendants' publication enterprises. For example, Dr. Thomas Mulligan's HIM Study was funded and developed as part of the AbbVie Defendants' Publication Enterprise (Dkt. No. 1, at ¶¶ 163, 223, 287-290, 296), and was among the first to suggest that hypogonadism was underdiagnosed and that aging men were suffering from hypogonadism. Defendant Auxilium, the Lilly Defendants, and the Actavis Defendants are all alleged to have recycled the HIM Study for their own purposes. (Dkt. No. 1, at ¶¶ 9, 378, 388, 406, 410, 445.)

Although Defendants state repeatedly and with emphasis that they are "competitors" (Dkt

No. 23, at 1, 4, 8), a statement made by the AbbVie Defendants demonstrates how fabricating a disease state based on the male body's natural aging process served all TRT Defendants equally: "Instead of going after a bigger piece of the pie, we need to make a bigger pie." (Dkt. No. 1, at ¶ 190.) Thus, Defendants collaborated on unbranded advertising, relied on each other's publications to support age-related hypogonadism, and worked cooperatively to ensure that with a bigger pie, each Defendant was ensured of a larger slice.

### 2. *Defendants' Severance Arguments Are Hypothetical and Illusory*

Given that there is already a briefing schedule setting forth a single Motion to Dismiss and the fact that severance will not affect discovery, combined with the strong encouragement of joinder, *see United Mine Workers*, 383 U.S. at 724, the Court should refuse to sever Plaintiffs' Complaint on such hypothetical and illusory grounds.

As with the personal injury cases, the parties have agreed to and the Court has endorsed a single joint Motion to Dismiss briefing schedule in this case. (14-CV-1748, Dkt. No. 591 ("Defendants' motion to dismiss and supporting memorandum regarding *Medical Mutual of Ohio v. AbbVie Inc. et al,* Case No. 14 C 8857 are to be filed by 3/16/2015; plaintiff's response is due by 5/1/2015; defendants' reply is due by 6/8/2015.").) Thus the argument that it is "burdensome and confusing to require the defendant groups to answer to Medical Mutual's 'mismash of a complaint'" (Dkt. No. 23, at 12) is simply moot at this juncture. *See also Dean v. City of Chicago*, No. 09-CV-1190, 2009 WL 2848865, at *3 (N.D. Ill. Aug. 31, 2009) (Kennelly, J.) ("The Court also notes that joinder of the cases will lead to some significant economies. Among other things, the legal viability of the plaintiffs' claims can be determined once rather than nineteen times.").

Defendants have further failed to suggest an difference in discovery procedures. Given

the Court's already-established MDL discovery plan and the Court's control over the discovery specific to this action, severance will have no effect on the proceedings at this juncture or for the foreseeable future. *See Dean*, 2009 WL 2848865, at *3 (stating that "joinder of the cases will permit more economical discovery of the common issues").

As a result, Defendants' argument that joinder "is likely to complicate the litigation of claims against each defendant group and the management of the action as a whole, resulting in delay, confusion, prejudice to defendants and third parties, and a waste of resources," rings hollow and is also contradictory, given that these very Defendants (and their counsel) made the exact opposite arguments regarding coordinated discovery in support of an industry-wide MDL. (*See, e.g.*, AbbVie, Ely Lilly, Endo Resp. to Pls.' Mot. for Transfer, Coordination, and/or Consolidation, MDL No. 2545, Dkt. No. 87, at 2 ("Without the establishment of a coordinated proceeding, the parties and judiciary will face inconsistent rulings, duplicative discovery, and likely scheduling conflicts in attempting to litigate these cases effectively and efficiently.").)

Aside from the vaguely-stated argument that "[s]eparate claims against each defendant group will draw into sharp relief the deficiencies underlying Medical Mutual's claims[,]" (Dkt. No. 23, at 2), as stated above, Defendants make little argument that joinder of this action is actually impractical, inefficient, or prejudicial in any way. With a single Motion to Dismiss and with discovery that will be governed by the MDL's processes or similar processes likely to be established by the Court,[4] severance will have little (if any) impact on this case for the foreseeable future. As stated by Judge Coar, "[a] more appropriate time to decide the [severance] matter would be at the conclusion of discovery." *Benitez*, 2009 WL 742686, at *6. And as stated by Judge Gottschall, severance should be particularly disfavored at this early stage of litigation

---

[4] Given the Motion to Dismiss briefing schedule, Plaintiff may amend as of right up to and including April 7, 2015.

where the prospect of individual defenses is still "largely hypothetical."[5] *Bicycle Peddler*, 2013 WL 4080196, at *5.

### C.     <u>Medical Mutual's Complaint Meets Rule 20's Joinder Requirements</u>

#### 1.     *Series of Transactions or Occurrences*

Courts have repeatedly held that Rule 20's "'[t]ransaction' is a word of flexible meaning." *Malibu Media, LLC v. Does 1-6*, 291 F.R.D. 191, 201 (N.D. Ill. 2013) (Castillo, J.) (quoting *Moore v. N.Y. Exchange*, 270 U.S. 593, 610 (1926)). The term "comprehend[s] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Dean*, 2009 WL 2848865, at *2. "[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Malibu Media*, 291 F.R.D. at 201. Thus, "all reasonably related claims" may be tried in "a single proceeding" as "[a]bsolute identity of all events is unnecessary." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 624 (8th Cir. 2010).

Importantly, the defendants need not have conspired or acted in concert for a plaintiff's claims to be logically or reasonably related. "[T]he mere fact that a case involves independent actors as defendants does not necessarily bring the case outside the scope of Rule 20." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012). Independent defendants satisfy Rule 20's transaction or occurrence test "when there is a logical relationship between the separate causes of action." *Id.* Such a logical relationship can be found when "there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant." *Id.* at 1358. *See also Dean*, 2009 WL 2848865 at *3 (finding joinder proper where independent conduct was

---

[5] Alternatively, the Court should view Defendants' severance motion with even more deference toward allowing the parties to remain joined at "at this early stage of the litigation." *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191 (N.D. Ill. 2013) (Castillo, J.); *see also Purzel Video GmbH v. Does 1-108*, No. 13-CV-792, 2013 WL 6797364, at *6 (N.D. Ill. Dec. 19, 2013) (stating that "joinder at this stage of the litigation is more efficient") (Gottschall, J.).

linked by "a common set of allegedly improper practices").

Plaintiff's Complaint alleges that Defendants' "TRT drugs were marketed as part of a decade-long deceptive marketing scheme to transform the male aging process into a curable disease state." (Dkt. No. 1, at ¶ 2) The Complaint specifically alleges that Defendants' deceptive marketing scheme was, in no small part, "cooperative" and "complementary." (Dkt. No. 1, at ¶¶ 4, 7.) The fact that certain Defendants jumped on board this scheme at later dates, as argued by Defendants (Dkt. No. 23, at 13), is of no import to whether they cooperated in the effort to "make a bigger pie." (Dkt. No. 1 at ¶¶ 190, 315, 391.) The "series of transactions or occurrences" here is the industry-wide effort to perpetuate the Low T myth through unbranded (and often jointly conducted) advertising and through the creation, use, dissemination, and recycling of the same medical literature through an often-overlapping roster of physician and vendor participants.

Moreover, there is substantial evidentiary overlap in the facts giving rise to Plaintiff's causes of action against each Defendant group. The existence of a logical relationship linking the conduct of all Defendants is inherent in both the establishment of an industry-wide MDL, which most of the Defendant groups themselves supported, *supra*, and in the FDA AdComm's industry-wide TRT hearings recently conducted. In January 2014, the FDA issued a "Safety Announcement" that it was "investigating the risk of stroke, heart attack, and death in men taking <u>FDA-approved testosterone products</u>." (Jan. 31, 2014 FDA Safety Announcement (emphasis added).) Thus, the FDA has consistently approached the safety issues surrounding TRT therapy as an industry-wide matter. Further, in September 2014, the FDA's joint Bone, Reproductive, and Urologic Drugs Advisory Committee and the Drug Safety and Risk Management Advisory Committee, in an action consistent with the FDA's industry-wide view, voted 20 to 1 to change the labeling for <u>all</u> TRT products in a decision reflecting a near

unanimous rejection of Defendants' "age-related" hypogonadism off-label promotion. Thus, the question of whether Defendants falsely misrepresented the safety and efficacy of TRT for "age-related" hypogonadism is an overlapping question to the extent that there was an insufficient basis to claim the safety and/or efficacy of TRT for men with age-appropriate but declining testosterone levels. More generally, the question of what would have been an appropriate cardiovascular warning in Defendants' labeling is an overlapping question of fact given the FDA's industry-wide treatment of the risks associated with TRT.

Additional substantial evidentiary overlap establishing the logical relationship between the Defendants' conduct, *EMC Corp.*, 677 F.3d at 1358, include questions of fact present with respect to Medical Mutual's Complaint specifically. For example, in third party payor off-label cases, the usual appropriate measure of damages is the difference in cost of reimbursement for the product at issue compared to an appropriate alternative. Here, it is alleged that no individual TRT product would have been an appropriate alternative for any other TRT product, which gives rise to a common questions. (Dkt. No. 1, at ¶ 608 ("… for the vast majority of TRT patients, no alternative medicine should have been prescribed at all ….").)

A significant portion of Defendants' brief is spent arguing that severance should be granted because Plaintiff has not alleged that Defendants "conspired with one another, acted in concert, or coordinated their alleged conduct[.]" Yet, as already noted, Medical Mutual does in fact allege that Defendants' disease state fabrication efforts to make a bigger pie were complementary and cooperative.

In any case, however, a conspiracy between defendants or coordinated or concerted conduct is not a prerequisite for joinder. *See, e.g.*, *United States v. Mississippi*, 380 U.S. 128 (1965). The defendants therein included the State of Mississippi, three election commissioners,

11

and six county voting registrars, accused of acting to deprive African American citizens of their respective counties of the right to vote. *Id.* at 130. Overturning the lower court's severance for failure to allege joint conduct, the Court found Rule 20 satisfied despite the fact that the defendants' conduct constituted independent actions because each registrar was part of a "state-wide system designed to enforce registration laws in a way that would inevitably deprive [African Americans] the right to vote solely because of their [race]." *Id.* Like in *United States v. Mississippi*, here, Defendants did not merely engage in separate conduct with reference to individual products. Instead, they fostered – through complementary and cooperative disease state fabrication – an atmosphere where patients, physicians, and payors were duped into using, prescribing, and reimbursing TRT drugs for uses where there was insufficient evidence of safety and efficacy.

*Malibu Media* is another instructive decision from this Court. In that case, the plaintiff alleged that each defendant independently utilized a BitTorrent program to access, copy, and distribute computer files containing the plaintiff's copyrighted works. *Id.* at 194. The Court denied motions to sever, concluding that the conduct "shares an aggregate of operate facts . . . such that the 'logical relationship' test is satisfied at this early stage of the litigation." *Id.* at 202. The Court emphasized that each defendant used BitTorrent to copy and distribute Malibu Media's copyrighted works, each participated in the same swarm, and each had pieces of the same file. *Id.* Here, Defendants are alleged to have used the same disease-inflating publications promoting the same off-label messages using the same physician participants and vendors to reach the same types patients for off-label TRT use. Furthermore, the unbranded off-label by any defendant "*facilitated, even if only indirectly, the participation of the other defendants*[.]" *Malibu Media*, 285 F.R.D. at 273 (emphasis added). Or, in Defendant AbbVie's words, each

Defendant's efforts helped to "make a bigger pie," which meant a bigger slice of the growing TRT market for each of them.[6]

The Eighth Circuit's opinion in *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010), is also supportive of Plaintiff's position. There, multiple personal injury plaintiffs brought claims against multiple manufacturers of hormone replacement therapy ("HRT") products alleging the drugs caused breast cancer and attacking the manufacturers for their efforts to sell HRT therapy. The multiple HRT manufacturer defendants removed, arguing fraudulent misjoinder in the removal context. After considering the Rule 20 joinder standards, the court concluded the plaintiffs' claims arose "from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs." *Id.* at 623. The court also cited as overlapping questions of fact whether studies linking HRT drugs to breast cancer were reliable and whether and when manufacturers knew of the dangers of HRT drugs prior to the publication of such studies. Similar issues have been raised on both sides of the TRT litigation. *Id.* ("Here, there may be a palpable connection between the plaintiffs' claims against the manufacturers as they all relate to similar drugs and injuries and the manufacturers' knowledge of the risks of HRT drugs.").[7]

---

[6] Defendants' repeated reliance on *Ramos v. Playtex Products, Inc.*, Nos. 08-CV-2703, 08-CV-2828, 08-CV-3352, 2009 WL 4066250 (N.D. Ill. Aug. 27, 2007) (Lefkow, J.), is misplaced. In *Ramos*, the plaintiff brought claims against three different manufacturers of coolers alleged to contain lead. The court granted the motions to sever, concluding there was no logical relationship between each defendant's production, marketing, or sales of its coolers. *Id.* at *3. Importantly, there were no allegations that the cooler defendants were acting cooperatively in marketing the coolers, that they benefitted from one another's cooler marketing, or were expanding the cooler market to individuals who should not have been buying coolers.

[7] Since the court's ruling was in the context of the fraudulent misjoinder for removal purposes, it was not the court's province to determine that the plaintiffs' claims were in fact properly joined.

13

Defendants also make the strained argument that present Complaint seeks only several and not joint liability. (Dkt. 23, p. 9.) However, as Rule 20 makes abundantly clear, two or more defendants may be joined if "any right to relief is asserted against them jointly, *severally, or in the alternative*." Fed. R. Civ. P. 20(a)(2) (emphasis added). Multiple courts have affirmed this rule in practice. *See, e.g., In re EMC Corp.*, 677 F.3d at 1356 ("[A]n allegation of joint liability is not required."); *Malibu Media*, 291 F.R.D. at 200 ("Rule 20 also allows for permissive joinder of defendants where a right to relief is asserted against the defendants severally . . . so an allegation of joint liability is not required.") (internal quotations and citations omitted); *Achte/Neunte Boll Kino Betteiligungs Gmbh & Co. KG v. Plebaniak*, 11-CV-10268, 2013 WL 1342321, at *10 (D. Mass. March 18, 2013) (same). Thus, an allegation of joint liability is not required.

Finally, Defendants also cite to a number of cases with little bearing on this action, including prisoner litigation[8] as well as intellectual property infringement actions between competitors.

## 2. *Common Questions of Law or Fact*

Rule 20(a) also requires that at least one "question of law or fact" be common to all defendants. Fed. R. Civ. P. 20(a)(2)(B). Defendants have conceded that at least one common question of law or fact exists, as they have not briefed the issue. Common questions of law or fact include, but are not limited to:

- Whether Defendants misrepresented the safety and efficacy of TRT therapy for off-label conditions including "age-related" hypogonadism;
- Whether Defendants made material misrepresentations of fact, or omitted to state material facts regarding the several cardiovascular risks associated with TRT therapy;
- Evaluation of studies examining the link between TRT use and cardiovascular risk;

---

[8] *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), and *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) involve prison inmate litigation and are "extreme example[s] that involved an inmate who was attempting to circumvent the Prison Litigation Reform Act's limits on frivolous filings and the requirement that prisoners pay filing fees for separate lawsuits." *Brinkley v. Cnty. of Lasalle, Ill.*, 09-CV-5656, 2010 WL 3781281, *3 (N.D. Ill. Sept. 21, 2010) (St. Eve, J.).

- When Defendants knew or should have known of alleged link between TRT use and cardiovascular risk;
- Whether and what an appropriate warning and/or labeling should constitute for TRT therapy and cardiovascular risk;
- Whether any TRT product should or could be prescribed as a safe and effective alternative to any other TRT product for the off-label and/or label-expanding conditions promoted by Defendants;
- What an appropriate alternative, if any, would have been for alleged off-label TRT prescriptions that would not have been prescribed had Defendants not misrepresented the safety and efficacy of TRT therapy for off-label conditions and had Defendants not made material misrepresentations of fact, or omitted to state material facts regarding the several cardiovascular risks associated with TRT therapy; and
- Determining the amount of TRT usage that was off-label and caused by Defendants' misrepresentations of the safety and efficacy of TRT therapy for off-label conditions and material misrepresentations of fact, or omissions of material fact, regarding the several cardiovascular risks associated with TRT therapy;
- Whether Defendants' joint Continuing Medical Education efforts (through often-overlapping speaker rosters) encouraged off-label use of TRT products through misrepresentations and/or omissions about the safety and/or efficacy of TRT therapy;
- Whether Defendants knowingly cited and relied upon studies created as part of other Defendants' Publication Enterprises that encouraged the off-label use of TRT therapy.

### III.    CONCLUSION

For the reasons stated above, Defendants' collective misjoinder concerns to this point are largely hypothetical and/or nonexistent, and for that reason, Defendants' Joint Motion to Sever should be denied.[9] Furthermore, even if the Court entertains a full joinder analysis, Plaintiff has established both a "series of transactions or occurrences" through a logical relationship between the Defendant groups and overlapping evidentiary issues. Furthermore, there are indeed many common questions of law or fact, as conceded by Defendants themselves. For these reasons, the Court should deny Defendants' Joint Motion to Sever.

---

[9] As the case progresses, the Court may always revisit the matter. Fed. R. Civ. P. 21 ("On motion or its own, the court may *at any time*, on just terms, add or drop a party. The court may also sever any claim against a party.") (emphasis added).

Dated February 6, 2015                Respectfully submitted,

**KANNER & WHITELEY, LLC**
/s/ Conlee S. Whiteley
Conlee S. Whiteley, Esq. (LA Bar No. 22678)
John R. Davis, Esq. (LA Bar No. 34872)
Luke A. Hasskamp, Esq. (CA Bar No. 280872)
701 Camp Street
New Orleans, Louisiana 70130
Tel: (504) 524-5777
Fax: (504) 524-5763

*and*

**THE SIMMER LAW GROUP**
W. Scott Simmer, Esq. (D.C. Bar No. 460726)
Thomas J. Poulin, Esq. (D.C. Bar No. 475115)
The Watergate
Suite 10-A
Washington, DC 20037
Tel: (202) 333-4562
Fax: (202) 337-1039

*Attorneys for Plaintiff Medical Mutual of Ohio*

**SEEGER WEISS LLP**
Stephen A. Weiss, Esq. (NY Bar No. 2413342)
Christopher A. Seeger, Esq. (NY Bar No. 2425304)
77 Water Street
New York, NY 10005
Tel: (212) 584-0700

**SIMMONS HANLY CONROY**
Trent B. Miracle, Esq. (IL Bar No. 6281491)
Brendan A. Smith, Esq. (IL Bar No. 65190)
One Court Street
Alton, IL 62002
Tel: (618) 259-2222
Fax: (618) 259-2251

*and*

**SCHACHTER HENDY & JOHNSON PSC**

16

Ronald E. Johnson, Jr., Esq. (KY Bar No. 88302)
Sarah N. Lynch, Esq. (KY Bar No. 94261)
909 Wright's Summit Parkway
Suite #210
Ft. Wright, KY 41011
Tel: (859) 578-4444
Fax: (859) 578-4440

*MDL Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on February 6, 2015 on all counsel or parties of record on the Service List below.

/s/ **Conlee. S. Whiteley**
Conlee S. Whiteley

**William F. Cavanaugh , Jr.**
**Jonah Moses Knobler**
**Scott C. Caplan**
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336 2793

*Attorneys for Defendants AbbVie, Inc., Abbott Laboratories, Abbot Products, Inc.*

**Daniel Leslie Ring**
**Craig A. Woods**
**Michael Allen Olsen**
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

(312) 782-0600

*Attorneys for Defendants Solvay America, Inc.*

**James W Matthews**
**Robert W. Sparkes, III**
K&L GATES, LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3194

*Attorneys for Defendants Actavis, Inc., Actavis Pharma, Inc., Watson Pharmaceuticals Inc.,*
*Watson Laboratories, Inc.*

**David E. Stanley**
**Janet H. Kwuon**
**Robert D. Phillips**
**Margaret M. Grignon**
REED SMITH LLP
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 457-8000
Fax: (213) 457-8080

*Attorneys for Defendants Eli Lilly and Co., and Lilly USA, LLC*

**William Hoffman**
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Tel: (202) 682-3550
Fax: (202) 414-0355

**Andrew K. Solow**
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-7740
Fax: (212) 836-6776

*Attorneys for Defendant Endo Pharmaceuticals, Inc.*

**James D. Pagliaro**
**Thomas J. Sullivan**

**Ezra D. Church**
MORGAN LEWIS & BROCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001

**Tinos Diamantatos**
MORGAN LEWIS & BROCKIUS LLP
77 West Wacker Dr., Ste. 500
Chicago, IL 60601
Tel: (312) 324-1780
Fax: (312) 324-1001

*Attorneys for Defendant Auxilium Pharmaceuticals, Inc.*