IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br><br>Master Docket Case No. 1:14-cv-01748<br><br>Hon. Judge Matthew F. Kennelly |

| | |
|---|---|
| This document relates to:<br><br>MEDICAL MUTUAL OF OHIO,<br><br>                Plaintiff,<br><br>v.<br><br>ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY NORTH AMERICA, LLC, SOLVAY PHARMACEUTICALS, INC., SOLVAY PHARMACEUTICALS SARL, SOLVAY, S.A., AUXILIUM, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX LIMITED, ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC. WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC.,<br><br>                Defendants. | No. 1:14-cv-08857 |

**SUPPLEMENTAL MEMORANDUM OF
DEFENDANTS ELI LILLY AND COMPANY, LILLY USA, INC., AND ACRUX
LIMITED IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

ALLEGATIONS AGAINST LILLY ...........................................................................1

ARGUMENT .................................................................................................................2

I.      The Complaint Does Not State A Civil RICO Claim Against Lilly...................2

        A.      The Complaint Fails To Allege Two Or More Actionable Acts Of Mail Or Wire Fraud With The Particularity Required By Rule 9(b)...................2

                1.      Allegations Concerning The "Axiron Publication Enterprise"...............2

                2.      Allegations Concerning The "Axiron DTC Enterprise".........................4

                3.      Allegations Concerning The "Axiron Peer Selling Enterprise" .............5

        B.      The Complaint Fails To Allege That Lilly's Purported Conduct Induced Any Doctor To Prescribe Axiron To An MMO Beneficiary And Induced MMO To Pay For That Prescription. ...................................6

        C.      Given The Defects, MMO's RICO Claims Against Lilly Must Be Dismissed ......7

II.     The Complaint Does Not State A Claim Under Any State Law, Including The Indiana Deceptive Consumer Sales Act.................................................7

        A.      The Indiana DCSA Claim Is Not Based On Allegations Of Conduct Or Injury In Indiana ...............................................................8

        B.      The Indiana DCSA Claim Is Not Based On Allegations Of A "Consumer Transaction".................................................................9

        C.      The Indiana DCSA Claim Does Not Satisfy Rule 9(b) And Relies On Allegations Of Omissions And Concealment That Are Not Actionable Under The Statute ...................................................9

        D.      MMO Fails To Plead Actual Damages That Were Caused By Lilly's Alleged Conduct Under The DCSA ...................................10

        E.      The Indiana DCSA Claim Is Time-Barred ...........................................11

        F.      MMO's Claims For Common Law Fraud, Negligent Misrepresentation, Unjust Enrichment, And Equitable Relief Also Fail As A Matter Of Law ...........13

CONCLUSION..............................................................................................................14

CERTIFICATE OF SERVICE ......................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J.'s Auto. Sales, Inc. v. Freet*,
  725 N.E.2d 955 (Ind. Ct. App. 2000) ...................................................................................11

*Banks v. Jamison*,
  12 N.E.3d 968 (Ind. Ct. App. 2014) ......................................................................................9

*Doe v. United Methodist Church*,
  673 N.E.2d 839 (Ind. Ct. App. 1996) ...................................................................................11

*Greg Allen Constr. Co. v. Estell*,
  798 N.E.2d 171 (Ind. 2003) .................................................................................................13

*Holmes v. SIPC*,
  503 U.S. 258 (1992) .............................................................................................................13

*Hughes v. Chattem, Inc.*,
  818 F. Supp. 2d 1112 (S.D. Ind. 2011) ...............................................................................14

*Ind. Harbor Belt R.R. Co. v. Pub. Serv. Comm'n*,
  263 N.E.2d 292 (Ind. Ct. App. 1970) .....................................................................................8

*Indianapolis Raceway Park, Inc. v. Curtiss*,
  386 N.E.2d 724 (Ind. Ct. App. 1979) ...................................................................................14

*Indus. Dredging & Eng'g v. S. Ind. Gas & Elec. Co.*,
  840 F. 2d 523 (7th Cir. 1988) ..............................................................................................13

*Kesling v. Hubler Nissan., Inc.*,
  997 N.E.2d 327 (Ind. 2013) ............................................................................................9, 10

*Lawson v. Hale*,
  902 N.E.2d 267 (Ind. Ct. App. 2009) ...................................................................................10

*Luis v. Smith Partners & Associates*,
  2012 WL 5077726 (N.D. Ill. Oct. 18, 2012) .......................................................................14

*McKinney v. State*,
  693 N.E.2d 65 (Ind. 1998) .....................................................................................................9

*Midwest Title Loans, Inc. v. Ripley*,
  616 F. Supp. 2d 897 (S.D. Ind. 2009) ...................................................................................8

*Morgan v. Koch*,
  419 F.2d 993 (7th Cir. 1969) ............................................... 11

*Noah v. Enesco Corp.*,
  911 F. Supp. 305, 307 (N.D. Ill. 1995) ................................ 14

*Pitts v. Unarco, Inc.*,
  712 F.2d 276 (7th Cir. 1983) .............................................. 11

*Ruse v. Bleeke*,
  914 N.E.2d 1 (Ind. Ct. App. 2009) ..................................... 13

*Sidney Hillman Health Ctr., of Rochester v. Abbott Labs.*,
  --- F. Supp. 2d ---, 2014 WL 4057439 (N.D. Ill. Aug. 14, 2014) .......... 12

*S. Ill. Laborers And Employers Health And Welfare Fund v. Prizer, Inc.*,
  2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ....................... 13

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  2014 WL 7365872 (N.D. Ill. Dec. 23, 2014) ........................... 1

*Tolen v. A.H. Robins Co.*,
  570 F. Supp. 1146 (N.D. Ind. 1983) ................................... 11

*Trytko v. Hubbell, Inc.*,
  28 F.3d 715 (7th Cir. 1994) ............................................... 13

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010) ............................................... 12

*W.H. Barber Co. v. Hughes*,
  63 N.E.2d 417 (Ind. 1945) ................................................. 8

*Wright-Moore Corp. v. Rocoh Corp.*,
  794 F. Supp. 844 (N.D. Ind. 1991) ...................................... 8

*Young v. Harbor Motor Works, Inc.*,
  2009 WL 187793 (N.D. Ind. Jan. 27, 2009) ......................... 9

*Zyprexa Prods. Liab. Litig.*,
  253 F.R.D. 69 (E.D.N.Y. 2008), *rev'd on other grounds UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) ...................... 12

**Statutes And Rules**

Fed. R. Civ. P. 9(b) ............................................................. 2, 7, 9

18 U.S.C. § 1962(c) ........................................................... 2, 4, 5, 6

Ind. Code § 24-5-0.5 ..........................................................................................................8

Ind. Code § 24-5-0.5-2(a)(1) ............................................................................................9

Ind. Code § 24-5-0.5-3(a) ...............................................................................................10

Ind. Code § 24-5-0.5-4(a) ...............................................................................................10

Ind. Code § 24-5-0.5-5(b) ...............................................................................................11

**INTRODUCTION**

Defendants Eli Lilly and Company, Lilly USA, LLC, and Acrux Limited (collectively "Lilly") adopt Defendants' Joint Memorandum in Support of their Motion to Dismiss (the "Joint Memorandum"). Lilly submits this Supplemental Memorandum to highlight particular reasons why Plaintiff Medical Mutual of Ohio's ("MMO") claims against Lilly should be dismissed.

**ALLEGATIONS AGAINST LILLY**

Although the Complaint is 336 pages, the allegations directed at Lilly are sparse. The Complaint alleges that, in March 2010, Eli Lilly and Company and Lilly USA, LLC, licensed a testosterone-replacement therapy ("TRT") drug known as "Axiron" from Acrux Limited. (Compl. ¶¶ 42, 56, 387.) In November 2010, the U.S. Food and Drug Administration ("FDA") approved the sale of Axiron, by physician's prescription, to treat "abnormally low testosterone in men, a condition known as hypogonadism." *See In re Testosterone Replacement Therapy Prods. Liab. Litig.* ("*TRT*"), No. 1:14-cv-01748, Dkt. 526 at 2, 2014 WL 7365872, at*1 (N.D. Ill. Dec. 23, 2014). Lilly began selling Axiron in the first quarter of 2011. (Compl. ¶¶ 42, 56, 387.)

The Complaint alleges that, when Lilly began selling Axiron in 2011, the market for TRT prescription drugs already was "mature." (Compl. ¶ 391.) The Complaint further alleges that Lilly promoted Axiron as safe and appropriate for the treatment of medical conditions other than hypogonadism (so-called "off-label" uses)—specifically, as a treatment for declines in testosterone that are "age-related" and not abnormal. (Compl. ¶¶ 2, 3, 15, 17.) Lilly purportedly promoted Axiron for off-label use through three different RICO "enterprises," and conducted the affairs of each enterprise through multiple acts of mail and wire fraud. (Compl. ¶¶ 391-409, 410-18, 419-29.)

Despite its length, the Complaint fails to identify *any* statement made by Lilly or at Lilly's behest that was false, misleading, or medically unsound. (Compl. ¶¶ 387-429.) The

Complaint likewise does not identify (1) *any doctor* who was induced by an alleged false statement when prescribing Axiron to an MMO beneficiary; (2) *any MMO beneficiary* who was induced by an alleged false statement to fill an Axiron prescription and use Axiron; or (3) *any MMO representative* who was induced by an alleged false statement when deciding that MMO would pay for Axiron prescriptions. (*Id.*)

## ARGUMENT

### I. The Complaint Does Not State A Civil RICO Claim Against Lilly

#### A. The Complaint Fails To Allege Two Or More Actionable Acts Of Mail Or Wire Fraud With The Particularity Required By Rule 9(b)

Defendants' Joint Memorandum explains how the Complaint does not allege a predicate act of mail or wire fraud against any Defendant or Defendant group with the particularity required by Rule 9(b). (Jt. Mem. at 22-24.) A closer examination of the limited number of allegations concerning Lilly shows just how threadbare MMO's RICO claims against Lilly actually are. The Complaint does not allege a single actionable act of mail or wire fraud by Lilly with the particularity required by Rule 9(b), much less the pattern of actionable acts of mail or wire fraud that RICO requires.

#### 1. Allegations Concerning The "Axiron Publication Enterprise"

MMO asserts that, when Lilly began selling Axiron in 2011, it created an "Axiron Publication Enterprise," including scientists and physicians, medical marketing firms, and other third parties, for the purpose of publishing medical studies that would create the (allegedly false) impression that scientific research supported the prescription of Axiron and other TRT drugs for the treatment of "age-related" declines in testosterone and other off-label uses. (Compl. ¶ 410.) MMO alleges that Lilly conducted this enterprise's affairs through multiple acts of mail and wire fraud in violation of 18 U.S.C. § 1962(c). Yet, the Complaint contains no concrete allegations

that support this assertion. The Complaint refers to a series of exploratory studies and other clinical trials allegedly sponsored by Lilly to evaluate whether Axiron may be a safe and appropriate treatment for (1) low "sex drive and energy levels[,]" (2) "ejaculatory dysfunction[,]" and (3) patients who have responded "suboptimal[ly]" to TRT gel drugs "other than Axiron." (Compl. ¶¶ 411-12, 414.) But the Complaint makes it clear that the results of these clinical trials have ***not*** been published. (Compl. ¶¶ 413 ("no trial results have been published"), 414 ("[o]nce the (doubtless) favorable results for this study are published …."").) Allegations concerning studies whose results are ***unknown*** at present and that have ***not*** been published or publicized obviously cannot support MMO's claim that Lilly has conducted the affairs of an "Axiron Publication Enterprise[,]" through a pattern of mail and wire fraud, to create an impression that scientific research supported off-label prescriptions of Axiron.

The only published study referenced in the Complaint concerning Axiron is a multicenter, open-label, 120-day clinical trial of 155 men who were ***diagnosed*** with hypogonadism, ***not*** an off-label medical condition. (Compl. ¶¶ 415-16.) A published clinical trial of Axiron's effect on men who were diagnosed with hypogonadism also provides no support at all for MMO's claims. In addition, there are no allegations that any doctor relied on this published study or was induced by the study to prescribe Axiron under circumstances that were medically unnecessary or inappropriate or that MMO or its Pharmacy Benefits Manager ("PBM") relied on this study when deciding to pay for Axiron prescriptions regardless of on-label or off-label condition.

Unpublished clinical studies with unknown results and one published study of Axiron's approved uses cannot support MMO's allegations that Lilly conducted the affairs of an "Axiron

Publication Enterprise" through a pattern of mail and wire fraud. In short, MMO has failed to plead a violation of RICO stemming from the alleged "Axiron Publication Enterprise."

### 2. Allegations Concerning The "Axiron DTC Enterprise"

MMO asserts that, when Lilly began selling Axiron in 2011, it also created an "Axiron DTC Enterprise," including advertising firms and other third parties, for the purpose of developing television and print advertisements designed to expand the definition of hypogonadism, persuade the public that an age-related decline in testosterone is a "recognized disease state[,]" and promote Axiron as a treatment for age-related declines in testosterone and other off-label conditions. (Compl. ¶¶ 419-22.) Like the "Axiron Publication Enterprise," Lilly allegedly conducted this enterprise's affairs through multiple acts of mail and wire fraud in violation of 18 U.S.C. § 1962(c). (*Id.*)

Yet, the Complaint refers only to selected parts of three Axiron television commercials and does not identify any false statement in the commercials. The Complaint likewise does not allege that an MMO beneficiary ever (1) saw one these commercials, (2) was induced by the commercial to request an Axiron prescription from a doctor, and (3) obtained an Axiron prescription that was not medically necessary or appropriate to treat a diagnosed condition. In particular, the "Vacation" commercial quoted prominently in the Complaint does not support MMO's RICO claims against Lilly. The commercial depicts a man who (1) "saw [his] doctor" about symptoms commonly experienced by men with hypogonadism, (2) took a "blood test," which "showed" that his symptoms were the result of "low testosterone ***not age***[,]" and (3) talked with his doctor about Axiron before the drug was prescribed, purchased, or used. (Compl. ¶ 135 (emphasis added).) The other television commercials and print advertisements described in the Complaint are similar. Furthermore, there are no allegations that any of these advertisements were relied upon by a doctor who prescribed Axiron, an MMO beneficiary who

filled the prescription, or the PBM or MMO representative who decided to cover such a prescription. Simply put, none of the advertisements supports MMO's claim that Lilly has conducted the affairs of an "Axiron DTC Enterprise" through acts of mail and wire fraud designed to expand the definition of hypogonadism, persuade the public that an age-related decline in testosterone is a "recognized disease state[,]" and promote Axiron as a treatment for age-related declines in testosterone and other off-label conditions. (Compl. ¶¶ 419-22.) As with the "Axiron Publication Enterprise," MMO has failed to plead a violation of 18 U.S.C. §1962(c) regarding the conduct of the alleged "Axiron DTC Enterprise."

### 3. Allegations Concerning The "Axiron Peer Selling Enterprise"

Finally, MMO asserts that, when Lilly began selling Axiron in 2011, it created an "Axiron Peer Selling Enterprise," including medical marketing firms, thought-leaders in the medical profession, and other third parties, for the purpose of disseminating false and misleading information about hypogonadism, age-related declines in testosterone, and the prescription of Axiron for off-label uses. (Compl. ¶¶ 391-409.)

Yet, MMO's assertions are based on allegations about only a few continuing medical education courses and presentations. The Complaint does not identify *any* false or misleading statement made at Lilly's behest during those meetings. Nor does it allege that any doctor was induced by statements made during those meetings to prescribe Axiron to an MMO beneficiary under circumstances where the drug was not a medically necessary or appropriate treatment. Nor does it allege any representative of MMO or MMO's PBM was induced by statements made during those meetings to cover Axiron prescriptions for off-label uses.

The Complaint's allegations do not show that Lilly was engaged in mail or wire fraud. For example, the Complaint quotes one "Program Overview" allegedly used during a continuing medical education course. That "Program Overview" simply states that: hypogonadism is

associated with a well-documented increase in risk of mortality and detrimental effects on quality of life, including "loss of energy and libido, erectile dysfunction (ED), joint pain and stiffness, memory impairment, irritability, and depression;" hypogonadism "has links to age, obesity, type 2 diabetes, mellitus (T2DM), and metabolic syndromes;" and that, "in spite of [these facts,] hypogonadism remains an under diagnosed syndrome." (Compl. ¶ 401.) These statements, which MMO does not allege to be false, are inconsistent with MMO's claim that Lilly was engaged in a massive fraud to deceive doctors about hypogonadism and the benefits and risks of TRT drugs. Once again, the Complaint does not adequately allege the conduct of the affairs of an "Axiron Peer Selling Enterprise" through acts of mail and wire fraud and thus does not adequately plead a violation of 18 U.S.C. § 1962(c).

**B.     The Complaint Fails To Allege That Lilly's Purported Conduct Induced Any Doctor To Prescribe Axiron To An MMO Beneficiary And Induced MMO To Pay For That Prescription.**

In addition, the Complaint fails to allege that any act of mail or wire fraud by Lilly was a "but-for" and proximate cause of MMO's purported injuries. In particular, MMO fails to allege facts indicating that Lilly's conduct misled and induced (1) a doctor to write a medically inappropriate off-label prescription for Axiron or (2) MMO to pay for that Axiron prescription.

The Complaint alleges that Lilly began selling Axiron in the first quarter of 2011—at a time when the market for TRT prescription drugs was "mature[.]" (Compl. ¶¶ 387, 391.) Thus, the Complaint admits that, before Lilly began selling Axiron, physicians had attained more than ten years of experience (1) making medical decisions about whether and under what circumstances to prescribe a TRT drug to a patient, and (2) observing the real-world consequences of their medical decisions for their patients' health. (Compl. ¶¶ 54-64; Declaration of William F. Cavanaugh, Jr. ("Cavanaugh Decl."), Exs. 1, 26, 28, 55 (public reports from 2000 through 2010).) MMO and other TPPs also had similar experience paying for TRT drugs

prescribed by physicians and, notwithstanding a substantial increase in TRT prescriptions from 2000 through 2010, elected to pay for TRT without regard for whether the prescription was on-label or off-label.  (*Id.*)

This sort of practical experience renders the Complaint's vague and bald allegations of causation directed at Lilly highly implausible.  Simply put, the Complaint does not allege any facts that plausibly suggest that a prudent doctor could have been deceived and induced by the alleged misrepresentations of Lilly to prescribe Axiron for the treatment of an off-label medical condition for which Axiron was not (in the doctor's experience and professional judgment) medically appropriate.  Nor does it allege any facts that plausibly suggest that a prudent TPP could have been deceived and induced by the alleged misrepresentations of Lilly to cover TPP prescriptions that were not (in the experience and professional judgment of the prescribing doctor) medically appropriate.  Without such allegations, the Complaint fails to allege facts that make it plausible that an act of mail or wire fraud by Lilly was a "but-for" and proximate cause of MMO's purported injuries.  (Jt. Mem. at 8-19.)

### C.     Given The Defects, MMO's RICO Claims Against Lilly Must Be Dismissed

MMO fails to support its claim that Lilly engaged in multiple predicate acts of mail and wire fraud with particular factual allegations, as required by Rule 9(b).  It also cannot demonstrate that Lilly's alleged conduct was a "but-for" and proximate cause of MMO's purported injuries.  Accordingly, MMO's RICO claims against Lilly must be dismissed.

### II.    The Complaint Does Not State A Claim Under Any State Law, Including The Indiana Deceptive Consumer Sales Act

The Complaint also asserts claims against Lilly under various state laws in Counts 27, 28, and 35 through 38.  As discussed in Defendants' Joint Memorandum, the Complaint fails to allege facts that could implicate the laws of any state other than Ohio, and it also fails to state

any claim under Ohio law.  (Jt. Mem. 33-40.)  However, because the Complaint includes a specific claim directed only at Lilly based on the Indiana Deceptive Consumer Sales Act (the "DCSA") Ind. Code § 24-5-0.5 *et seq.* (Compl. ¶¶ 980-988), Lilly wishes to note that there are additional reasons for dismissing MMO's state law claims under Indiana law.

**A.     The Indiana DCSA Claim Is Not Based On Allegations Of Conduct Or Injury In Indiana**

The Complaint does not allege that Lilly engaged in any wrongdoing *in Indiana*, that MMO, its beneficiaries, or its beneficiaries' physicians were deceived *in Indiana*, or that MMO's purported injury occurred *in Indiana*.  (Compl. ¶ 984.)  Indeed, it is highly implausible that MMO, an Ohio corporation with its principal place of business in Ohio, could have been deceived or injured in Indiana.  Instead, MMO appears to claim the DCSA should be applied extraterritorially.  Indiana law prohibits that result.

Indiana statutes are typically not applied extraterritorially to conduct and injuries occurring outside the state.  *See, e.g., W.H. Barber Co. v. Hughes,* 63 N.E.2d 417, 424 (Ind. 1945); *Ind. Harbor Belt R.R. Co. v. Pub. Serv. Comm'n,* 263 N.E.2d 292, 298 (Ind. Ct. App. 1970); *accord Wright-Moore Corp. v. Rocoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991) ("Indiana has a general policy of refusing to give statutes extraterritorial effect.") (construing Indiana's Deceptive Franchise Practices Act).  Indeed, federal courts sitting in Indiana have recognized that the extraterritorial application of Indiana's statutes can raise problems under the dormant Commerce Clause.  *See Wright-Moore Corp,* 794 F. Supp. at 860 ("[G]iving Indiana's franchise statute extraterritorial effect raises Commerce Clause issues."); *Midwest Title Loans, Inc. v. Ripley,* 616 F. Supp. 2d 897, 903, 908 (S.D. Ind. 2009) (finding that extraterritorial application of Indiana Uniform Consumer Credit Code is in violation of dormant Commerce

Clause).  Given the Complaint's failure to allege wrongful conduct in Indiana, MMO's claim under the DCSA must be dismissed.

**B.**     **The Indiana DCSA Claim Is Not Based On Allegations Of A "Consumer Transaction"**

The DCSA applies only to a deceptive act, omission, or practice "in connection with a ***consumer transaction***."  Ind. Code § 24-5-0.5-2(a)(1) (emphasis added).  A "consumer transaction," in turn, must constitute a sale or service "to a person ***for purposes that are primarily personal, familial, charitable, agricultural, or household*** …."  *Id.* (emphasis added). This is consistent with the purpose of the Indiana DCSA to protect "***consumers***."  *Kesling v. Hubler Nissan., Inc.,* 997 N.E.2d 327, 332 (Ind. 2013); *Banks v. Jamison,* 12 N.E.3d 968, 974 n.1 (Ind. Ct. App. 2014).  Here, MMO does not allege a "consumer transaction."

MMO is a health insurance company that purchased Axiron for a commercial purpose—namely to fulfill contractual obligations to cover certain prescription drug expenses incurred by its beneficiaries.  Since MMO cannot allege that Lilly purchased Axiron for purposes that were personal, familial, charitable, agricultural, or household in nature, it cannot state a claim under the DCSA.

**C.**     **The Indiana DCSA Claim Does Not Satisfy Rule 9(b) And Relies On Allegations Of Omissions And Concealment That Are Not Actionable Under The Statute**

MMO's DCSA claim rests on allegations that Lilly "knowingly and intentionally misrepresented" facts about Axiron.  (Compl. ¶ 982.)  Because the claim is that Lilly knowingly and intentionally engaged in deception, MMO must satisfy Rule 9(b); *Young v. Harbor Motor Works, Inc.,* 2009 WL 187793, at *6 (N.D. Ind. Jan. 27, 2009) (citing *McKinney v. State,* 693 N.E.2d 65, 67, 68 (Ind. 1998)).  Yet, for the reasons stated above (pp. 2-7) and in the Joint Memorandum (at 22-24), MMO does not satisfy Rule 9(b).

MMO's claim also fails to the extent it relies on allegations of omissions or concealment. MMO appears to believe that it can sustain a DCSA claim based on alleged omissions. (Compl. ¶¶ 419 (alleging that Lilly "concealed and minimized serious health risks"), 980 (incorporating that allegation into the DCSA claim).) MMO is wrong.

The Indiana Supreme Court has held that the Indiana DCSA does not apply to "nondisclosures" that are alleged to constitute a "deceptive act." In *Kesling v Hubler Nissan, Inc.*, the court stated "But even when a seller's failure to disclose known problems is sufficiently deceptive to be actionable on grounds such as fraud, it is not actionable as a 'deceptive act' ***because a nondisclosure is not a 'representation' of any fact*.**" 997 N.E.2d 327, 332 (Ind. 2013) (interpreting Ind. Code § 24-5-0.5-3(a)) (emphasis added); *see also Lawson v. Hale*, 902 N.E.2d 267, 274 (Ind. Ct. App. 2009) ("Indiana Code section 24-5-0.5-3(a), which requires an oral or written act or representation, does not apply to non-disclosures.") *cited with approval in Kesling*, 997 N.E.2d at 332. Accordingly, MMO may not assert a claim under the DCSA based on Lilly's alleged conduct amounting to 'nondisclosure,' omission or concealment.

### D.      MMO Fails To Plead Actual Damages That Were Caused By Lilly's Alleged Conduct Under The DCSA

MMO's DCSA claim also must be dismissed because MMO fails to allege "damages actually suffered as a consumer as a result of the deceptive act," which is required under the DCSA. *See* Ind. Code § 24-5-0.5-4(a). In support of its DCSA claim, MMO incorporates all of the purported RICO claim allegations (Compl. ¶ 980). Accordingly, Lilly adopts the arguments in the Joint Memorandum, which establish that MMO fails to allege a cognizable injury under RICO. (Jt. Mem. at 19-21.) Just as the Complaint fails to state a cognizable injury under RICO, it fails to allege the necessary "damages actually suffered … as a result of the deceptive act" required by the DCSA. Ind. Code § 24-5-0.5-4(a).

### E.    The Indiana DCSA Claim Is Time-Barred

Finally, MMO's claim is untimely.  The statute of limitations for a DCSA claim is two years from the occurrence of the deceptive act, Ind. Code § 24-5-0.5-5(b), and the discovery rule does **not** apply.  *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964-65 (Ind. Ct. App. 2000) ("Because the [DCSA] has an occurrence statute of limitation, rather than a discovery statute of limitation, the statutory period commences to run at the occurrence of the deceptive act.").  MMO filed its complaint on November 5, 2014, which is more than two years after Lilly began marketing and selling Axiron and MMO began making payments for claims related to use of Axiron.

MMO cannot avoid the statute of limitations based on its conclusory allegations that "Defendants' fraudulent concealment of their unlawful, conspiratorial deceit" (Compl. ¶ 596), tolled the applicable statutes of limitations.  Tolling the statute of limitations based on fraudulent concealment requires (1) affirmative acts of concealment on the part of the defendant; and (2) due diligence on the part of the plaintiff.  *See Morgan v. Koch*, 419 F.2d 993, 998-99 (7th Cir. 1969) (Indiana law narrowly defines doctrine of fraudulent concealment).  "The concealment must be active and intentional; passive silence is insufficient to trigger the fraudulent concealment doctrine, absent allegations that the defendant was in a continuing fiduciary relationship with the plaintiff."  *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1151 (N.D. Ind. 1983) (citing *Pitts v. Unarco, Inc.*, 712 F.2d 276 at 279 (7th Cir. 1983)).  Further, "there must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry."  *Id.* at 1152 (citations omitted).  Moreover, "[w]hen the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence, the statute of limitations begins to run, regardless of any fraudulent concealment perpetrated by defendant."  *Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct. App. 1996) (citations omitted).

Here, MMO fails to allege anything beyond a conclusory assertion of concealment. Furthermore, MMO did not exercise reasonable care and due diligence in discovering its purported cause of action against Lilly. TPPs such as MMO have a "continuing duty … to inquire and be aware of the value of drugs for which they are paying." *Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 76, 196 (E.D.N.Y. 2008), *rev'd on other grounds UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010). In light of that duty, the statute of limitations begins at the latest when the first reimbursement for the drug at issue was paid. *See Sidney Hillman Health Ctr., of Rochester v. Abbott Labs.*, --- F. Supp. 2d ---, 2014 WL 4057439 at *4 (N.D. Ill. Aug. 14, 2014) (TPPs "are sophisticated entities with a fiduciary duty to their beneficiaries to monitor the prescriptions for which they pay" and it is "at the alleged first payments[] that the [third-party payors] either did or should have discovered that they were reimbursing the cost of Depakote for off-label uses.") (citations omitted), *appeal pending* at No. 14-2282. The statute of limitations for MMO's DCSA claim against Lilly began when MMO made its first reimbursement for Axiron in 2011, well outside of the two-year limitations period.

Indeed, it is clear that plausible factual allegations of fraudulent concealment by Lilly are not possible here. When Lilly began selling Axiron in 2011, a number of individuals already had challenged the promotion of TRT drugs, making many of the same allegations MMO has made here. (*See* Jt. Mem. at 26-30, 31-32; Cavanaugh Decl. Exs. 1, 26, 28, 55 (*qui tam* complaint and publications.) There can be no plausible factual allegation of fraudulent concealment when MMO plainly had reason to be aware of public filings making the same charges as the Complaint at the time when Lilly entered the market.

In sum, MMO's DCSA claim is time-barred and cannot be saved by allegations of fraudulent concealment.

### F.    MMO's Claims For Common Law Fraud, Negligent Misrepresentation, Unjust Enrichment, And Equitable Relief Also Fail As A Matter Of Law

As set forth in Defendants' Joint Memorandum, MMO's state law claims for common law fraud, negligent misrepresentations, unjust enrichment, and equitable injunctive relief fail under Ohio law.  The claims also would fail under Indiana law.

**Common Law Fraud.**  Indiana's common law of fraud follows the same proximate cause standard that applies to MMO's RICO claims—a standard that requires a "direct relation between the injury asserted and the injurious conduct alleged."  *Ruse v. Bleeke*, 914 N.E.2d 1, 10-11 (Ind. Ct. App. 2009) (citing *Holmes v. SIPC*, 503 U.S. 258, 268 (1992)).  MMO's common law fraud claims fail to meet this standard for the reasons stated in Defendants' Joint Memorandum (pp. 8-16).

**Negligent Misrepresentation.**  MMO cannot, as a matter of law, bring an action for negligent misrepresentation under Indiana law because that claim is recognized "only in the context of a relationship between an employer and an employee."  *S. Ill. Laborers And Employers Health And Welfare Fund v. Prizer, Inc.*, 2009 WL 3151807, at *11 (S.D.N.Y. Sept. 30, 2009); *see also Trytko v. Hubbell, Inc.*, 28 F.3d 715, 720-21 (7th Cir. 1994) (holding that Indiana would only recognize the cause of action in an employment setting); *Indus. Dredging & Eng'g v. S. Ind. Gas & Elec. Co.*, 840 F. 2d 523, 526 (7th Cir. 1988) ("Indiana courts have consistently refused to extend … negligent misrepresentation beyond the employment context."); *Greg Allen Constr. Co. v. Estell*, 798 N.E.2d 171, 174 (Ind. 2003) (negligent misrepresentation has been recognized "only in very limited employment cases").

**Unjust Enrichment.**  MMO's claim for unjust enrichment is predicated upon allegations of fraudulent conduct.  (Compl. ¶¶ 1054, 1055, 1057, 1058, 1061-1062.)   But the claims are not pled with particularity and, perhaps more importantly, the pleadings do not demonstrate "an

actual wrong or misleading conduct[,]" which is required to support an unjust enrichment claim. *See Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124 (S.D. Ind. 2011) (dismissing an unjust enrichment claim based on allegations that the defendant drug manufacturer had misrepresented its drug's safety profile and received excessive revenues from the drug's sales); *Indianapolis Raceway Park, Inc. v. Curtiss*, 386 N.E.2d 724, 726 (Ind. Ct. App. 1979) (in discussing unjust enrichment and holding: "[a]bsent a wrong, intervention by equity is inappropriate").

    ***Equitable, Injunctive Relief.*** Finally, MMO's last claim for equitable, injunctive relief fails because it is completely derivative and duplicative of MMO's other causes of action. *Noah v. Enesco Corp.,* 911 F. Supp. 305, 307 (N.D. Ill. 1995) ("An injunction is a remedy, not a cause of action."); *Luis v. Smith Partners & Associates,* 2012 WL 5077726, at *9 (N.D. Ill. Oct. 18, 2012) ("Injunctive relief is not a valid cause of action."). MMO identifies no statute or common law rule that would allow it to maintain an independent cause of action for permanent, mandatory injunctive relief. Given MMO's failure to state a claim under federal or state statutes or common law, there is no legal basis for this claim either.

## CONCLUSION

    For all the reasons stated herein and in Defendants' Joint Memorandum, the Court should dismiss all of MMO's claims against Lilly for failure to state a claim.

Dated: March 16, 2015

Respectfully submitted,

*/s/ David E. Stanley*
David E. Stanley (*pro hac vice*)
Janet H. Kwuon (*pro hac vice*)
Robert D. Phillips, Jr. (*pro hac vice*)
Margaret M. Grignon (*pro hac vice*)
**REED SMITH LLP**
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 457-8000
Fax: (213) 457-8080
dstanley@reedsmith.com
jkwuon@reedsmith.com
rphillips@reedsmith.com
magrignon@reedsmith.com

*Attorneys for Defendants Eli Lilly and Company, Lilly USA, LLC, and Acrux Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered attorneys of record.

*/s/ David E. Stanley*
David E. Stanley
*Attorneys for Defendants Eli Lilly and Company, Lilly USA, LLC, and Acrux Limited*