# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE:  TESTOSTERONE REPLACEMENT | ) | |
| THERAPY PRODUCTS LIABILITY | ) | MDL No. 2545 |
| LITIGATION | ) | |
| ——————————————————— | ) | Master Docket No. 1:14-cv-01748 |
| This document relates to: | ) | |
| | ) | Hon. Matthew F. Kennelly |
| Medical Mutual of Ohio v. AbbVie Inc., *et al.*, | ) | |
| No. 1:14-cv-08857 | ) | |
| ——————————————————— | ) | |

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AUXILIUM PHARMACEUTICALS, INC.'S MOTION TO DISMISS THE COMPLAINT

William Hoffman (*pro hac vice*)
**KAYE SCHOLER LLP**
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Tel:  (202) 682-3550
Fax:  (202) 414-0355
william.hoffman@kayescholer.com

Andrew K. Solow (*pro hac vice*)
Robert M. Grass (*pro hac vice*)
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Tel:  (212) 836-7740
Fax:  (212) 836-6776
andrew.solow@kayescholer.com
robert.grass@kayescholer.com

Pamela J. Yates (*pro hac vice*)
**KAYE SCHOLER LLP**
1999 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Tel:  (310) 788-1000
Fax:  (310) 229-1878
pamela.yates@kayescholer.com

*Attorneys for Defendant Auxilium Pharmaceuticals, Inc.*

# TABLE OF CONTENTS

Page)

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 3

I.     MMO'S CLAIMS AGAINST AUXILIUM SHOULD BE DISMISSED FOR
FAILURE TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY
RULE 9(b) ................................................................................................................. 3

II.    MMO'S STATE LAW CLAIMS AGAINST AUXILIUM SHOULD BE
DISMISSED EVEN IF, CONTRARY TO CHOICE-OF-LAW PRINCIPLES,
PENNSYLVANIA LAW GOVERNED THOSE CLAIMS ............................................. 7

        A.     MMO Has Failed To Plausibly Allege a Claim Against Auxilium Under
the PUTPCPL ................................................................................................. 7

                1.     MMO Lacks Standing to Assert a Claim under the PUTPCPL .................. 7

                2.     MMO Has Not Plausibly Alleged The Element of Justifiable
Reliance, Which is Essential to a Claim Under the PUTPCPL ............... 10

        B.     MMO Has Not Plausibly Alleged that Auxilium Violated the
Pennsylvania Insurance Fraud Statute ................................................................. 11

        C.     MMO's State Law Claims Against Auxilium Should Be Dismissed For
Failure to Plausibly Allege Proximate Cause ....................................................... 13

        D.     MMO's State Law Claims Against Auxilium Should Be Dismissed For
Failure to Plausibly Allege Justifiable Reliance ................................................... 14

        E.     MMO's Claim for Unjust Enrichment Against Auxilium Should be
Dismissed as Duplicative of its Tort Claims .......................................................... 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albertson v. Wyeth Inc.*,
   No. 2944 Aug. Term 2002, 2003 WL 21544488 (Pa. Com. Pl. July 8, 2003) .......................10

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
   116 F. Supp. 2d 610 (W.D. Pa. 1999), *aff'd*, 228 F.3d 429 (3d Cir. 2000) ...........................15

*Amato v. Pennsylvania Office of Attorney General*,
   183 Fed. Appx. 260 (3d Cir. 2006) .......................................................................................12

*American Fed'n of State County & Municipal Employees v. Ortho-McNeil-Janssen Pharms., Inc.*,
   No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010) ..................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................14

*Balderston v. Medtronic Sofamor Danek, Inc.*,
   285 F.3d 238 (3d Cir. 2002)...................................................................................................8, 9

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................14

*Borsellino v. Goldman Sachs Grp., Inc.*,
   477 F.3d 502 (7th Cir. 2007) ....................................................................................................4

*C.M. Flowers v. Continental Grain Co.*,
   775 F.2d 1051 (8th Cir. 1985) ..................................................................................................2

*City of Philadelphia v. Beretta U.S.A. Corp.*,
   277 F.3d 415 (3d Cir. 2002).....................................................................................................13

*Commonwealth v. Goodson*,
   33 A.3d 611 (Pa. 2011) ...........................................................................................................12

*Cumberland Valley School Dist. v. Hall-Kimbrell Env'tl Servs., Inc.*,
   639 A.2d 1199 (Pa. Super. 1994)...............................................................................................8

*Defazio v. Gregory*,
   836 A.2d 935 (Pa. Super. 2003)..................................................................................................9

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) .....................................................................................................3

*Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mut. Automobile Ins. Co.*,
  40 F.3d 63 (3d Cir. 1994)...........................................................................................8

*Halper v. Jewish Family & Children's Serv. Of Greater Philadelphia*,
  963 A.2d 1282 (Pa. 2009) ...................................................................................13, 14

*Hunt v. U.S. Tobacco Co.*,
  538 F.3d 217 (3d Cir. 2008)......................................................................................10

*In re Actiq Sales & Marketing Pracs. Litig.*,
  790 F. Supp. 2d 313 (E.D. Pa. 2011) .....................................................................9, 11

*In re Avandia Marketing Sales Pracs. & Prods. Liab. Litig.*,
  No. 07-MD-01871, 2013 WL 3486907 (E.D. Pa. July 10, 2013).......................10, 15

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. Dec. 23, 2014) ...............................1, 7

*Joyce v. Erie Ins. Exchange*,
  74 A.3d 157 (Pa. Super. 2013)..................................................................................14

*Luke v. American Home Prods. Corp.*,
  No. 1998-C-01977, 1998 WL 1781624 (Pa. Com. Pl. Nov. 18, 1998) ....................11

*Ostrander v. Katsur*,
  No. GD 01-4420, 2006 WL 3899544 (Pa. Com. Pl. June 2, 2006) .........................8, 9

*Rosenstern v. Allergan, Inc.*,
  987 F. Supp. 2d 795 (N.D. Ill. 2013) ..........................................................................4

*Sears v. Likens*,
  912 F.2d 889 (7th Cir. 1990) .......................................................................................3

*SFRL Inc. v. Galena State Bank & Trust Co.*,
  No. 11 C 50277, 2012 WL 2839814 (N.D. Ill. July 10, 2012) ...................................4

*Smith v. Bristol-Myers Squibb Co.*,
  No. 3:06-cv-6053, 2009 WL 5216982 (D.N.J. Dec. 30, 2009) ................................10

*State Farm Mut. Automobile Ins. Co. v. Lincow*,
  715 F. Supp. 2d 617 (E.D. Pa. 2010), *aff'd*, 444 Fed. Appx. 617 (3d Cir. 2011)...................12

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
  171 F.3d 912 (3d Cir. 1999).......................................................................................15

*Toy v. Metropolitan Life Ins. Co.*,
  928 A.2d 186 (Pa. 2007) ............................................................................................10

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ............................................................................................4, 6

*V-Tech Servs., Inc. v. Street*,
  72 A.3d 270 (Pa. Super. 2013)........................................................................................13, 14

*Weinberg v. Sun Co., Inc.*,
  777 A.2d 442 (Pa. 2001) .....................................................................................................13

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
  536 F.3d 663 (7th Cir. 2008) ................................................................................................3

*Zafarana v. Pfizer Inc.*,
  724 F. Supp. 2d 545 (E.D. Pa. 2010) ............................................................................10, 15

## STATUTES

73 Pa. Stat. Ann. § 201-9.2(a)....................................................................................................7

18 Pa. C.S.A. § 4117(a)(2)........................................................................................................12

18 Pa. C.S.A. § 4117(g) ......................................................................................................11, 13

18 Pa. C.S.A. § 4117(l)........................................................................................................12, 13

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 8(a) .........................................................................................14

Federal Rule of Civil Procedure 9(b) .................................................................................. passim

Defendant Auxilium Pharmaceuticals, Inc. ("Auxilium") respectfully submits this memorandum of law to supplement the Defendants' Joint Memorandum in Support of their Motions to Dismiss the Complaint ("Joint Mem").  Plaintiff's claims against Auxilium should be dismissed for the reasons set forth in the Defendants' Joint Memorandum as well as the reasons set forth below.

Each of Plaintiff's claims against Auxilium is based on its allegation that Auxilium fraudulently promoted its testosterone replacement therapy ("TRT") medicines for off-label use and concealed information about alleged cardiovascular risks.  But Plaintiff has not alleged the content of any alleged misrepresentation that Auxilium made to it or to any doctor who prescribed its TRT medicines.  Plaintiff also has failed to allege that any such misrepresentation caused it to pay for Auxilium's TRT medicines or any doctor to prescribe those medicines to a patient insured by Plaintiff for a medically inappropriate use.  Accordingly, Plaintiff's RICO and state law claims should be dismissed for failure to plead fraud with particularity.

Auxilium is mindful that the Court denied a motion to dismiss personal injury complaints under Rule 9(b), holding that "[i]t would be unnecessarily burdensome to require the plaintiffs to identify, for pleading purposes, the exact date on which they heard or saw a particular representation." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014).  This case presents different circumstances. Unlike the individual plaintiffs seeking damages for personal injury allegedly caused by treatment with TRT medicines, Plaintiff here is a sophisticated business entity seeking damages for alleged economic injury.  Specific information concerning Plaintiff's communications with Auxilium, if any, should be readily available to it.  So too should be evidence about prescriptions, if any, for which Plaintiff actually paid.  There is nothing burdensome about

requiring a large, powerful health insurer like Plaintiff to plead the circumstances constituting fraud with particularity, especially where, as here, Plaintiff asserts that Auxilium has engaged in criminal conduct subjecting it to civil RICO liability.  *See C.M. Flowers v. Continental Grain Co.*, 775 F.2d 1051, 1054 (8th Cir. 1985) ("a plaintiff seeking civil recovery under RICO must plead that defendants have committed two or more of the predicate criminal offenses . . . and a defendant faced with allegations of criminal conduct is entitled to more clarity and specificity than was afforded in this rather vague complaint").  Alleging criminal conduct should be serious business, and a business like the Plaintiff needs to do so directly and explicitly.

## BACKGROUND

Plaintiff Medical Mutual of Ohio ("MMO") provides health insurance, including prescription drug coverage to individuals and groups.  (Compl. ¶ 30.)  In that capacity, MMO pays a portion of the price for medicines that are prescribed to its insureds.  (Compl. ¶¶ 1, 508-09.)  MMO alleges generally that each manufacturer of TRT medicines independently engaged in a "deceptive marketing scheme" by promoting those medicines for off-label uses and concealing information concerning alleged cardiovascular risks.  (Compl. ¶¶ 2-29.)  Absent Defendants' conduct, MMO alleges that it would have paid to fill fewer TRT prescriptions and reduced its costs either because it "would not have paid for any substitute product," or it would have paid for a "less expensive" substitute.  (Compl. ¶¶ 28, 610, 616.)

Auxilium markets Testim® and Testopel®.  (Compl. ¶¶ 54-55.)  Testim is a gel that "was approved by the US FDA on October 31, 2002 for the treatment of primary and hypogonadotrophic hypogonadism."  (Compl. ¶ 54.)  "Testopel is a generic product [in the form of pellets that are implanted subcutaneously] that was approved by the FDA on July 13, 1972 . . . to treat men with primary and hypogonadotrophic hypogonadism."  (Compl. ¶ 55.)

MMO asserts claims against Auxilium for (i) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Second, Seventh, and Twelfth Claims for Relief); (ii) civil RICO conspiracy (Seventeenth Claim for Relief); (iii) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") (Twenty-Fourth Claim for Relief); (iv) violation of the consumer protection laws of the remaining 49 states, the District of Columbia, and Puerto Rico (Twenty-Fifth Claim for Relief);[1] (v) violation of Pennsylvania's Insurance Fraud statute (Twenty-Sixth Claim for Relief); (vi) common law fraud (Thirty-Fifth Claim for Relief); (vii) negligent misrepresentation (Thirty-Sixth Claim for Relief); and (viii) unjust enrichment (Thirty-Seventh Claim for Relief).

## ARGUMENT

I.    **MMO'S CLAIMS AGAINST AUXILIUM SHOULD BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(b)**

Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead with particularity "the circumstances constituting fraud," which "means the who, what, when, where, and how . . . ." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *accord Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, to satisfy Rule 9(b), a plaintiff must plead "the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted). Additionally, a plaintiff must allege with particularity

---

[1] Although MMO purports to assert claims against Auxilium under the consumer protection statute of every state, the Complaint does not allege that Auxilium violated the consumer protection statutes of Alabama, Georgia, Maine, Massachusetts, Mississippi, Texas, or West Virginia.

"how [the Defendant's] fraud caused its losses." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007).

"Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). As a result, each of MMO's claims that is "premised upon a course of fraudulent conduct" is subject to Rule 9(b). *Id.*; *see also Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 806 (N.D. Ill. 2013) (applying Rule 9(b) to negligent misrepresentation claim); *SFRL Inc. v. Galena State Bank & Trust Co.*, No. 11 C 50277, 2012 WL 2839814, at *2 (N.D. Ill. July 10, 2012) (same). Each of MMO's claims against Auxilium is subject to Rule 9(b) because each is premised on the same alleged fraudulent marketing of Testim and Testopel. As demonstrated below, MMO has failed to satisfy its burden under Rule 9(b) to plead the content of any alleged misrepresentations concerning Testim and Testopel and how those alleged misrepresentations caused MMO's injury.

For its allegations against Auxilium specifically (as distinct from Defendants generally or other Defendants), MMO alleges that Auxilium participated in three enterprises that fraudulently promoted Testim and Testopel. The first is a so-called "Testim and Testopel Peer Selling Enterprise." As part of that enterprise, MMO alleges that Auxilium entered into a co-promotion agreement relating to Testim with GlaxoSmithKline LLC ("GSK") in 2012, which the parties terminated in late July 2013. (Compl. ¶¶ 54, 321.) MMO further alleges that "GSK has a long history of aggressively promoting its own products for off-label uses" and "a documented history of promoting [another manufacturer's] TRT drugs off-label prior to being engaged by Defendant Auxilium." (Compl. ¶¶ 323, 325.) However, MMO does not allege any statements attributable to Auxilium or GSK to promote Testim to doctors for off-label uses.

Similarly, MMO alleges that Auxilium retained Lathian Health ("Lathian") to provide "pharmaceutical marketing services" relating to Testim, including a "Virtual Detailing program" that was allegedly "highly successful in influencing prescribing behavior."  (Compl. ¶¶ 327, 331.)  Although MMO alleges in conclusory terms that the program "encouraged off-label prescribing and label expansion with respect to the Testim product's clinical uses" (Compl. ¶ 332), MMO does not allege what specific information the initiative conveyed to doctors to accomplish that purpose.  Nor does MMO allege that any doctor who prescribed Testim to any of its insureds participated in the program, much less that any such doctor's decision to prescribe Testim was influenced by the program.

The second enterprise is a so-called "Testim and Testopel Publication Enterprise" by which Auxilium and its associates allegedly ghostwrote scientific articles "to ensure their off-label marketing messages were prominently included in seemingly unbiased clinical studies which were in fact the opposite."  (Compl. ¶ 333.)   MMO identifies a series of articles authored by unidentified "physician participants in the Peer Selling Enterprise" and Auxilium employees.  (Compl. ¶¶ 335-38.)  MMO alleges with respect to only one of these articles that the "article promotes TRT use among opioid users regardless of whether they suffer from hypogonadism."  (Compl. ¶ 336.)  Even as to that article, MMO does not allege what specific information in the article supports that general conclusion.  MMO also does not allege that it, its Pharmacy Benefit Manager ("PBM"), any member of a Pharmacy & Therapeutics ("P&T") Committee that made recommendations to it, or any doctor who prescribed Testim or Testopel to one of its insureds saw or read any of the articles.[2]  Nor does MMO allege that any alleged misrepresentation in any

---

[2] MMO alleges that it "contractually outsources aspects of the pharmacy benefits it provides to its members to a [PBM.]"  (Compl. ¶ 30.)  MMO further alleges generally that P&T Committees
(continued...)

of the articles influenced any decision to pay for Testim or Testopel or influenced a doctor to prescribe Testim or Testopel to any MMO insured for a medically inappropriate use.

The third enterprise is a so-called "Testim and Testopel DTC Enterprise" by which Auxilium allegedly "engaged in DTC marketing, promotional, and comprehensive educational campaigns through a variety of educational, advertising, and informational multimedia platforms, including Internet-based dedicated 'Low T,' 'Testim' and 'Testopel' websites." (Compl. ¶ 340.) MMO identifies several advertisements for Testim and Testopel created with the help of outside vendors, and also alleges that the FDA sent Auxilium a warning letter in 2010 in connection with certain representations in promotional materials concerning Testopel. (Compl. ¶¶ 341-85.) MMO does not allege that any doctor was influenced to prescribe Testim or Testopel to any MMO insured or that any MMO insured was influenced to seek such a prescription from a doctor based on any such advertisement.

In sum, the complaint does not identify a single alleged misrepresentation that Auxilium made to MMO, its PBM, or any doctor who prescribed Testim or Testopel to a patient insured by MMO. Nor does the complaint allege that any such representation caused MMO to pay for any particular Testim or Testopel prescription, any doctor to prescribe Testim or Testopel to any MMO insured, or any MMO insured to fill a Testim or Testopel prescription. *See Tricontinental Indus., Ltd.*, 475 F.3d at 844 (affirming dismissal under Rule 9(b) where plaintiff "has not set forth any facts showing that the losses it suffered are proximately linked to the alleged misstatements").

---

are entities "established by TPPs and/or PBMs for the purpose of evaluating products that are being considered for formulary placement and developing programs to promote appropriate utilization of pharmaceuticals." (Compl. ¶ 516.) MMO does not allege what advice, if any, it received from its PBM and/or a P&T Committee with respect to Testim or Testopel.

This Court previously has held that personal injury plaintiffs' complaints satisfied Rule 9(b) because "[i]t would be unnecessarily burdensome to require the plaintiffs to identify, for pleading purposes, the exact date on which they heard or saw a particular representation." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014). This is different. There is nothing burdensome about requiring MMO to identify, for pleading purposes, the alleged misrepresentations that it, its PBM, a doctor who prescribed Testim or Testopel, or an insured who was treated with Testim or Testopel actually saw, read, or heard. Accordingly, MMO's claims against Auxilium should be dismissed for failure to satisfy Rule 9(b).

## II. MMO'S STATE LAW CLAIMS AGAINST AUXILIUM SHOULD BE DISMISSED EVEN IF, CONTRARY TO CHOICE-OF-LAW PRINCIPLES, PENNSYLVANIA LAW GOVERNED THOSE CLAIMS

As explained in Defendants' Joint Memorandum, under applicable choice-of-law principles, Ohio law governs MMO's state law claims against Auxilium. *See* Joint Mem. at 33-35. For the reasons set forth in Defendants' Joint Memorandum, each of MMO's state law claims against Auxilium under governing Ohio law should be dismissed. *See* Joint Mem. at 33-40. As explained below, each of MMO's state law claims against Auxilium should be dismissed even if, contrary to choice-of-law principles, Pennsylvania law governed those claims.

### A. MMO Has Failed To Plausibly Allege a Claim Against Auxilium Under the PUTPCPL

#### 1. MMO Lacks Standing to Assert a Claim under the PUTPCPL

The PUTPCPL affords standing to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes." 73 Pa. Stat. Ann. § 201-9.2(a). Applying that provision, courts have held that parties that have not purchased goods or services for personal, family, or household purposes lack standing under the PUTPCPL. For example, in

*Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002), the Third

Circuit held that a doctor lacked standing under the PUTPCPL to recover damages from a

medical device manufacturer because the doctor did not purchase the medical device.  The Court

rejected the doctor's argument — that he was a purchaser due to the fact that he allegedly had

been "targeted by defendants' marketing plans" and "was the 'decisionmaker in the 'purchase

transactions'" — because the doctor "brought suit not as the 'legal representative' of his patients,

but on his own behalf for personal losses."  *Id.* at 240-41.  Moreover, the Court held that even if

the doctor could be considered a purchaser of the medical device, he lacked standing because he

had not purchased it for personal, family, or household purposes.  *Id.* at 242; *accord Gemini*

*Physical Therapy & Rehabilitation, Inc. v. State Farm Mut. Automobile Ins. Co.*, 40 F.3d 63, 65

(3d Cir. 1994) (medical provider that had been assigned patient's insurance claim lacked

standing because "it is not a purchaser or consumer of goods or services"); *Cumberland Valley*

*School Dist. v. Hall-Kimbrell Env'tl Servs., Inc.*, 639 A.2d 1199, 1201 (Pa. Super. 1994) (school

district lacked standing to assert PUTPCPL claim against asbestos removal service because "the

primary purpose of the purchase was not for personal, family or household use").

The court's holding in *Ostrander v. Katsur*, No. GD 01-4420, 2006 WL 3899544 (Pa.

Com. Pl. June 2, 2006), is consistent with these authorities.  In that case, plaintiffs sought to

recover damages for dental services performed by an individual who had obtained his dental

license through fraud.  Plaintiffs sought "to represent a class of individuals as well as dental

insurance companies and the Pennsylvania Department of Welfare" who had been billed for the

suspect dental services.  *Id.* at 4.  The court held that individuals who had received dental

services could not represent dental insurance companies, among other reasons, because

"[p]laintiffs make a claim for consumer fraud [under the PUTPCPL], but the insurance carriers

are not consumers within the purview of the consumer protection laws." *Id.*; *see also Defazio v. Gregory*, 836 A.2d 935, 939 (Pa. Super. 2003) ("a 'consumer' is 'one that utilizes economic goods'" (citation omitted)).

Here, like the doctor in *Balderston* and the dental insurance carriers in *Ostrander*, MMO lacks standing under the PUTPCPL to assert a claim against Auxilium to recover amounts it allegedly paid for Testim and Testopel prescriptions. MMO did not purchase Testim or Testopel. Rather, it provided an insurance benefit in exchange for premiums by paying a cost of prescriptions for those medicines filled by its insureds. Regardless of the role MMO allegedly played in those "'purchase transactions,'" it does not purport to bring its claims "as the 'legal representative' of [its insureds.]" *Balderston*, 285 F.3d at 240. Instead, MMO has done so "on [its] own behalf for [its] losses." *Id.* Moreover, even if, contrary to fact and law, MMO could be considered to have purchased Testim and Testopel, it did not do so for personal, family, or household use. Accordingly, even if the PUTPCPL governed MMO's consumer fraud claim, MMO's claim against Auxilium under that statute should be dismissed for lack of standing.[3]

---

[3] Two courts have held that TPPs have standing to assert claims against pharmaceutical manufacturers under the PUTPCPL to recover amounts paid for prescription medicines. *See In re Actiq Sales & Marketing Pracs. Litig.*, 790 F. Supp. 2d 313, 326-27 (E.D. Pa. 2011); *American Fed'n of State County & Municipal Employees v. Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-cv-5904, 2010 WL 891150, at *4 (E.D. Pa. Mar. 11, 2010). Those cases purported to distinguish the Third Circuit's decision in *Balderston* on the ground that "payments for the [medical device] were made solely by the surgeon's patients, and not by the surgeon." *In re Actiq*, 790 F. Supp. 2d at 327. That ignores the Third Circuit's alternative holding that even if the doctor did purchase the medical device, he did so for purposes of his surgical practice, and not for his "'personal, family or household use.'" *Balderston*, 285 F.3d at 242. Moreover, the Third Circuit rejected the argument that the doctor could base standing under the PUTPCPL on the ground that "he 'purchased' the [medical device] for his patients' 'personal use'" because "we have uncovered no Pennsylvania decision finding actionable a non-representative plaintiff's claim based on others' 'personal uses.'" *Id.*

2. **MMO Has Not Plausibly Alleged The Element of Justifiable Reliance, Which is Essential to a Claim Under the PUTPCPL**

Numerous courts have "note[d] that the existence of the 'learned intermediary' doctrine in Pennsylvania makes it difficult, if not impossible, for plaintiffs to successfully bring a [P]UTPCPL claim based on a prescription drug." *Zafarana v. Pfizer Inc.*, 724 F. Supp. 2d 545, 557 (E.D. Pa. 2010). That result follows because plaintiffs cannot plausibly plead justifiable reliance on a pharmaceutical manufacturer's representations, which is an essential element of a PUTPCPL claim. *See Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 201 (Pa. 2007) ("justifiable reliance is an element of the claims . . . under the [PUTPCPL]"). To establish justifiable reliance, a plaintiff must "show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 223 n.4 (3d Cir. 2008).

As the *Zafarana* court explained, under the learned intermediary doctrine, "the drug manufacturer owes a duty of disclosure to the prescribing physician," who, in turn, owes a duty "to communicate any risks or other information about the drug to the patient." 724 F. Supp. 2d at 558. As a result, "a patient in Pennsylvania cannot justifiably rely on the prescription drug manufacturer; instead, it is the prescribing physician who provides the grounds for justifiable reliance." *Id.*; *accord In re Avandia Marketing Sales Pracs. & Prods. Liab. Litig.*, No. 07-MD-01871, 2013 WL 3486907, at *3 (E.D. Pa. July 10, 2013) (dismissing PUTPCPL claim seeking to recover amounts paid for prescription medicine from pharmaceutical manufacturer); *Smith v. Bristol-Myers Squibb Co.*, No. 3:06-cv-6053, 2009 WL 5216982, at *5-*6 (D.N.J. Dec. 30, 2009) (same); *Albertson v. Wyeth Inc.*, No. 2944 Aug. Term 2002, 2003 WL 21544488, at *11-

*12 (Pa. Com. Pl. July 8, 2003) (same); *Luke v. American Home Prods. Corp.*, No. 1998-C-01977, 1998 WL 1781624, at *8 (Pa. Com. Pl. Nov. 18, 1998) (same).[4]

If a patient has no claim under the PUTPCPL to recover amounts paid for a prescription medicine from a pharmaceutical manufacturer in light of the learned intermediary doctrine, it stands to reason that an insurer, like MMO, that is obligated to pay some part of the cost of the prescription medicine on behalf of the patient also has no claim under the PUTPCPL. Accordingly, even if Pennsylvania law governed MMO's claims against Auxilium, MMO's claim under the PUTPCPL should be dismissed for the independent reason that it has failed to plausibly allege justifiable reliance.

### B. MMO Has Not Plausibly Alleged that Auxilium Violated the Pennsylvania Insurance Fraud Statute

MMO purports to assert a claim against Auxilium for alleged violation of Pennsylvania's Insurance Fraud statute. (Compl., Thirty-Fourth Claim for Relief.) Even assuming Pennsylvania law governed MMO's claim, by its plain terms, the Insurance Fraud statute does not apply to the conduct alleged by MMO.

Pennsylvania's Insurance Fraud statute is a penal law that permits a civil remedy to "[a]n insurer damaged as a result of a violation of" the statute. 18 Pa. C.S.A. § 4117(g). To recover

---

[4] In *In re Actiq Sales & Marketing Pracs. Litig.*, the court attempted to distinguish these authorities on the ground that they "relate to patients bringing personal injury claims rather than third party payors bringing suit for economic recovery under the [P]UTCPL." 790 F. Supp. 2d at 327-28. But the application of the learned intermediary doctrine is the same in both contexts. A patient can obtain a prescription medicine only after a doctor exercises independent medical judgment based on all information known to the doctor regarding the relative risks and benefits of treatment with that medicine. (*See* Compl. ¶ 52 ("it is not unlawful for physicians to prescribe approved drugs for indications or at dosages different than those set forth in a drug's labeling").) MMO's obligation to pay part of the cost to fill a prescription for an insured arises only after a doctor has made the medical judgment to treat that insured's medical condition with a particular medicine. (*See* Compl. ¶ 518 ("P&T Committee members do not control prescribing nor do they prevent or mandate the prescribing of any drug for a specific condition").)

under the statute, an insurer is required to plead and prove that the defendant "[k]nowingly and with the intent to defraud any insurer, present[ed] or cause[d] to be presented to an insurer or self-insured any *statement forming a part of, or in support of, a claim* that contains any false, incomplete or misleading information concerning any fact or thing material to a claim."  18 Pa. C.S.A. § 4117(a)(2) (emphasis added).  A "statement" is defined as *"[a]ny oral or written presentation or other evidence of loss, injury or expense*, including, but not limited to, any notice, statement, proof of loss, bill of lading, receipt for payment, invoice account, estimate of property damages, bill for services, diagnosis, prescription, hospital or doctor records, X-ray, test result or computer-generated documents."  18 Pa. C.S.A. § 4117(l) (emphasis added).

The statute applies only to allegedly fraudulent statements made in connection with an insurance claim — not to every fraud allegedly directed at an insurer.  *See Commonwealth v. Goodson*, 33 A.3d 611, 614 (Pa. 2011) (reversing insurance fraud conviction where defendant "made no insurance claim, nor a proffer to an insurer" even though defendant committed a fraud against an insurer by depositing a forged check).  Consistent with that principle, the statute has been applied to the conduct of insureds and medical providers who allegedly provide false information, bills or invoices in connection with an insurance claim.  *See*, *e.g.*, *State Farm Mut. Automobile Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 632-33 (E.D. Pa. 2010) (doctors liable for insurance fraud for billing insurers for medical services that they never provided or provided unnecessarily), *aff'd*, 444 Fed. Appx. 617 (3d Cir. 2011); *Amato v. Pennsylvania Office of Attorney General*, 183 Fed. Appx. 260, 263 (3d Cir. 2006) (finding probable cause to file criminal complaint for insurance fraud based on insured's "specific statements [to insurer] regarding the source and type of injuries sustained").

MMO does not allege that Auxilium made any "oral or written presentation or other evidence of loss, injury or expense" in connection with any particular insurance claim by any of its insureds. 18 Pa. C.S.A. § 4117(l). Accordingly, MMO has not plausibly alleged that Auxilium violated Pennsylvania's Insurance Fraud statute.

### C. MMO's State Law Claims Against Auxilium Should Be Dismissed For Failure to Plausibly Allege Proximate Cause

As set forth in the Joint Memorandum, MMO's RICO claims and state law claims under Ohio law against Auxilium should be dismissed because MMO has failed to plausibly allege the essential element of proximate cause. *See* Joint Mem. at 8-17, 39. Proximate cause is an essential element of claims for consumer fraud, insurance fraud, common law fraud, and negligent misrepresentation under Pennsylvania law.[5] Pennsylvania employs the same proximate cause analysis that applies to MMO's RICO claims. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422-25 (3d Cir. 2002) (applying remoteness doctrine to common law claims under Pennsylvania law). Accordingly, even if MMO's state law claims were governed by Pennsylvania law, its claims for consumer fraud, insurance fraud, common law fraud, and negligent misrepresentation should be dismissed for failure to plausibly allege proximate cause.

---

[5] *See Halper v. Jewish Family & Children's Serv. Of Greater Philadelphia*, 963 A.2d 1282, 1286 (Pa. 2009) (proximate cause is an essential element of negligent misrepresentation); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001) ("Nothing in the legislative history [of the PUTPCPL] suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation."); *V-Tech Servs., Inc. v. Street*, 72 A.3d 270, 275 (Pa. Super. 2013) (proximate cause is an essential element of common law fraud);18 Pa. C.S.A. § 4117(g) ("An insurer damaged as a result of a violation of [the Insurance Fraud statute] may sue").

**D.  MMO's State Law Claims Against Auxilium Should Be Dismissed For Failure to Plausibly Allege Justifiable Reliance**

It is well-settled that justifiable reliance is an essential element of common law fraud and negligent misrepresentation claims under Pennsylvania law.  *See Halper*, 963 A.2d at 1286 (negligent misrepresentation); *V-Tech Servs.*, 72 A.3d at 275 (fraud).  Moreover, "[f]or a *prima facie* case of fraud, the *recipient* of the misrepresentation must be the one to reasonably rely upon the misrepresentation and to be damaged as a proximate cause of that reliance."  *Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 167 (Pa. Super. 2013) (emphasis by court).

Despite its general allegations that "Plaintiff and the Class Members did rely on each Defendant's false representations" (Compl. ¶ 1039) and that "TPPs through P&T Committees and PBMs" did so (Compl. ¶ 1048), MMO has not identified a single specific alleged misrepresentation on which it, or its PBM supposedly relied in paying for Testim or Testopel prescriptions.  Nor has MMO identified any doctor who justifiably relied on any alleged misrepresentation in prescribing Testim or Testopel to one of MMO's insureds, or even any of its insureds who justifiably relied on any alleged misrepresentation in seeking such a prescription.  MMO's general allegations of justifiable reliance are insufficient to satisfy its burden under Rule 8(a).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusion' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  In addition, as explained above in connection with MMO's PUTPCPL claim, the learned intermediary doctrine renders implausible any allegation that MMO relied on representations by Auxilium in making payments for Testim and Testopel.  *See* Point II.A.2, *supra*.

**E.    MMO's Claim for Unjust Enrichment Against Auxilium Should be Dismissed as Duplicative of its Tort Claims**

Courts applying Pennsylvania law have dismissed unjust enrichment claims that are duplicative of failed tort claims.  *See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999); *In re Avandia*, 2013 WL 3486907, at * 3; *Zafarana*, 724 F. Supp. 2d at 560-61; *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 116 F. Supp. 2d 610, 621 (W.D. Pa. 1999), *aff'd*, 228 F.3d 429 (3d Cir. 2000).  As the court in *Zafarana* put it, "unjust enrichment is not a substitute for failed tort claims in Pennsylvania, but, instead, will generally be used to imply quasi-contract liability." *Zafarana*, 724 F. Supp. 2d at 560 (citations omitted).  Quasi-contract liability should not be implied where "the allegation is that Defendants misled Plaintiffs into desiring a product, which Defendants then provided to Plaintiffs in exchange for payment." *Id.* at 561 (dismissing claim for unjust enrichment brought against pharmaceutical manufacturer to recover payments for prescription medicine).  Accordingly, MMO's claim for unjust enrichment against Auxilium should be dismissed even if Pennsylvania law governed that claim.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Joint Memorandum, the

Court should dismiss each of MMO's claims against Auxilium.

Dated:  March 16, 2015                          Respectfully submitted,

                                                */s/ Andrew K. Solow*
                                                William Hoffman (*pro hac vice*)
                                                **KAYE SCHOLER LLP**
                                                The McPherson Building
                                                901 Fifteenth Street, NW
                                                Washington, DC 20005-2327
                                                Tel:  (202) 682-3550
                                                Fax:  (202) 414-0355
                                                william.hoffman@kayescholer.com

                                                Andrew K. Solow (*pro hac vice*)
                                                Robert M. Grass (*pro hac vice*)
                                                **KAYE SCHOLER LLP**
                                                250 West 55th Street
                                                New York, NY 10019-9710
                                                Tel:  (212) 836-7740
                                                Fax:  (212) 836-6776
                                                andrew.solow@kayescholer.com
                                                robert.grass@kayescholer.com

                                                Pamela J. Yates (*pro hac vice*)
                                                **KAYE SCHOLER LLP**
                                                1999 Avenue of the Stars
                                                Suite 1600
                                                Los Angeles, CA 90067
                                                Tel:  (310) 788-1000
                                                Fax:  (310) 229-1878
                                                pamela.yates@kayescholer.com

                                                *Attorneys for Defendant Auxilium Pharmaceuticals,*
                                                *Inc.*

## CERTIFICATE OF SERVICE

I, Andrew K. Solow, an attorney, hereby certify that on March 16, 2015, I caused a copy of the foregoing document to be filed via the Court's EM/ECF system, which will automatically serve and send e-mail notification of such filing to all registered attorneys of record.

*/s/ Andrew K. Solow*
Andrew K. Solow