# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION )))) | MDL No. 2545 |
| ) | Master Docket No. 1:14-cv-01748 |
| This document relates to: ) | |
| ) | Hon. Matthew F. Kennelly |
| Medical Mutual of Ohio v. AbbVie Inc., *et al.*, No. 1:14-cv-08857 ))) | |

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ENDO PHARMACEUTICALS INC.'S MOTION TO DISMISS THE COMPLAINT

William Hoffman (*pro hac vice*)
**KAYE SCHOLER LLP**
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Tel: (202) 682-3550
Fax: (202) 414-0355
william.hoffman@kayescholer.com

Andrew K. Solow (*pro hac vice*)
Robert M. Grass (*pro hac vice*)
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-7740
Fax: (212) 836-6776
andrew.solow@kayescholer.com
robert.grass@kayescholer.com

Pamela J. Yates (*pro hac vice*)
**KAYE SCHOLER LLP**
1999 Avenue of the Stars
Suite 1600
Los Angeles, CA 90067
Tel: (310) 788-1000
Fax: (310) 229-1878
pamela.yates@kayescholer.com

*Attorneys for Defendant Endo Pharmaceuticals Inc.*

## TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................ 4

I.    MMO'S CLAIMS AGAINST ENDO SHOULD BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(b) ................................................................................................................. 4

II.    MMO'S STATE LAW CLAIMS AGAINST ENDO SHOULD BE DISMISSED ........... 9

    A.    MMO's Claim Against Endo Under the OCSPA is Time Barred .......................... 9

    B.    MMO's State Law Claims Against Endo Should Be Dismissed Even if, Contrary to Choice-of-Law Principles, Pennsylvania Law Governed Those Claims ................................................................................................................. 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Borsellino v. Goldman Sachs Grp., Inc.*,
 477 F.3d 502 (7th Cir. 2007) ................................................................................................4

*C.M. Flowers v. Continental Grain Co.*,
 775 F.2d 1051 (8th Cir. 1985) ..............................................................................................2

*DiLeo v. Ernst & Young*,
 901 F.2d 624 (7th Cir. 1990) .............................................................................................1, 4

*Foster v. Wells Fargo Fin. Ohio, Inc.*,
 960 N.E.2d 1022 (Ohio App. 8th Dist. 2011) ........................................................................9

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
 No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. Dec. 23, 2014) ............................................2, 8

*Lloyd v. Buick Youngstown GMC*,
 686 N.E.2d 350 (Ohio App. 7th Dist. 1996) ..........................................................................9

*Rosenstern v. Allergan, Inc.*,
 987 F. Supp. 2d 795 (N.D. Ill. 2013) .....................................................................................4

*Sears v. Likens*,
 912 F.2d 889 (7th Cir. 1990) .................................................................................................4

*SFRL Inc. v. Galena State Bank & Trust Co.*,
 No. 11 C 50277, 2012 WL 2839814 (N.D. Ill. July 10, 2012) ..............................................4

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
 475 F.3d 824 (7th Cir. 2007) .............................................................................................4, 7

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
 536 F.3d 663 (7th Cir. 2008) .................................................................................................4

*Zaremba v. Marvin Lumber and Cedar Co.*,
 458 F. Supp. 2d 545 (N.D. Ohio 2006) ..................................................................................9

**STATUTES**

Ohio Rev. Code § 1345.10(C) .....................................................................................................9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) .............................................................................1, 4, 7, 8

Defendant Endo Pharmaceuticals Inc. ("Endo") respectfully submits this memorandum of law to supplement the Defendants' Joint Memorandum in Support of their Motions to Dismiss the Complaint ("Joint Mem."). Plaintiff's claims against Endo should be dismissed for the reasons set forth in Defendants' Joint Memorandum as well as the reasons set forth below.

Plaintiff's claims are based on its allegation that Endo and four other Defendants (or Defendant groups) each engaged in a "decade-long deceptive marketing scheme" with respect to the testosterone replacement therapy ("TRT") medicines that each markets. The complaint is replete with references to "Defendants" generally or to the activities of other Defendants well before the time that Endo entered the market for TRT medicines in 2011. It is devoid of specific allegations about what Endo itself supposedly did that might support Plaintiff's fraud-based claims against it.

In particular, Plaintiff has failed to plead with particularity the content of any alleged misrepresentation that Endo made to it or to a doctor who prescribed Endo's TRT medicine to a patient insured by Plaintiff, much less that any such misrepresentation caused Plaintiff to pay for that medicine or any doctor to prescribe that medicine to a patient insured by Plaintiff for a medically inappropriate use. Absent such allegations, Plaintiff has failed to satisfy its obligation to plead "the who, what, when, where, and how" of the circumstances constituting the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Accordingly, Plaintiff's RICO and state law claims should be dismissed for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

Endo is mindful that the Court denied a motion to dismiss personal injury complaints under Rule 9(b), holding that "[i]t would be unnecessarily burdensome to require the plaintiffs to identify, for pleading purposes, the exact date on which they heard or saw a particular

representation." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014). This case presents different circumstances. Unlike the individual plaintiffs seeking damages for personal injury allegedly caused by treatment with TRT medicines, Plaintiff here is a sophisticated business entity seeking damages for alleged economic injury. Specific information concerning Plaintiff's communications with Endo, if any, should be readily available to it. So too should be evidence about prescriptions, if any, for which Plaintiff actually paid. There is nothing burdensome about requiring a large, powerful health insurer like Plaintiff to plead the circumstances constituting fraud with particularity, especially where, as here, Plaintiff asserts that Endo has engaged in criminal conduct subjecting it to civil RICO liability. *See C.M. Flowers v. Continental Grain Co.*, 775 F.2d 1051, 1054 (8th Cir. 1985) ("a plaintiff seeking civil recovery under RICO must plead that defendants have committed two or more of the predicate criminal offenses . . . and a defendant faced with allegations of criminal conduct is entitled to more clarity and specificity than was afforded in this rather vague complaint"). Alleging criminal conduct should be serious business, and a business like the Plaintiff needs to do so directly and explicitly.

## BACKGROUND

Plaintiff Medical Mutual of Ohio ("MMO") provides health insurance, including prescription drug coverage to individuals and groups. (Compl. ¶ 30.) In that capacity, MMO pays a portion of the price for medicines that are prescribed to its insureds. (Compl. ¶¶ 1, 508-09.) MMO alleges generally that each manufacturer of TRT medicines independently engaged in a "deceptive marketing scheme" by promoting those medicines for off-label uses and concealing information concerning alleged cardiovascular risks. (Compl. ¶¶ 2-29.) Absent Defendants' conduct, MMO alleges that it would have paid to fill fewer TRT prescriptions and

reduced its costs either because it "would not have paid for any substitute product," or it would have paid for a "less expensive" substitute. (Compl. ¶¶ 28, 610, 616.)

Endo markets Fortesta® Gel ("Fortesta"), which was approved by the FDA on December 29, 2010 as safe and effective "for treatment of primary or hypogonadotrophic hypogonadism." (Compl. ¶¶ 58, 461.) The bulk of MMO's allegations refer to "Defendants" or "TRT drugs" generally or to the activities of other Defendants, rather than to Endo or Fortesta specifically. Many of MMO's general allegations refer to events prior to the time that Endo began marketing Fortesta and cannot possibly support any claims against Endo. For example, Endo plainly has not engaged in "a decade-long deceptive marketing scheme" as MMO alleges. (Compl. ¶ 2). Endo did not even begin to market Fortesta until 2011 (Compl. ¶¶ 58, 462), by which time MMO alleges the TRT market was "mature." (Compl. ¶ 391.)

MMO asserts claims against Endo for (i) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Fifth, Tenth, and Fifteenth Claims for Relief); (ii) civil RICO conspiracy (Twentieth Claim for Relief); (iii) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") (Thirty-Second Claim for Relief); (iv) violation of the consumer protection laws of the remaining 49 states, the District of Columbia, and Puerto Rico (Thirty-Third Claim for Relief);[1] (v) violation of Pennsylvania's Insurance Fraud statute (Thirty-Fourth Claim for Relief); (vi) common law fraud (Thirty-Fifth Claim for Relief); (vii) negligent misrepresentation (Thirty-Sixth Claim for Relief); and (viii) unjust enrichment (Thirty-Seventh Claim for Relief).

---

[1] Although MMO purports to assert claims against Endo under the consumer protection statute of every state, the Complaint does not allege that Endo violated the consumer protection statutes of Alabama, Georgia, Maine, Massachusetts, Mississippi, Texas, or West Virginia.

**ARGUMENT**

**I. MMO'S CLAIMS AGAINST ENDO SHOULD BE DISMISSED FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY RULE 9(b)**

Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead with particularity "the circumstances constituting fraud," which "means the who, what, when, where, and how . . . ." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *accord Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). In other words, to satisfy Rule 9(b), a plaintiff must plead "the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted). Additionally, a plaintiff must allege with particularity "how [the Defendant's] fraud caused its losses." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007).

"Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). As a result, each of MMO's claims that is "premised upon a course of fraudulent conduct" is subject to Rule 9(b). *Id.*; *see also Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 806 (N.D. Ill. 2013) (applying Rule 9(b) to negligent misrepresentation claim); *SFRL Inc. v. Galena State Bank & Trust Co.*, No. 11 C 50277, 2012 WL 2839814, at *2 (N.D. Ill. July 10, 2012) (same). Each of MMO's claims against Endo is subject to Rule 9(b) because each is premised on the same alleged fraudulent marketing of Fortesta.

MMO's sparse allegations against Endo fail to satisfy its burden under Rule 9(b). As demonstrated below, MMO has failed to allege with particularity the specific content of any

alleged off-label promotion regarding Fortesta or misrepresentation about Fortesta's safety profile. It also has failed to allege with particularity how any off-label promotion or misrepresentation about Fortesta's safety profile caused MMO's alleged injury by resulting in its decision to pay for a Fortesta prescription for any of its insureds, or in any doctor prescribing Fortesta to any of its insureds for a medically inappropriate use.

MMO alleges that Endo participated in three "enterprises" that fraudulently promoted Fortesta. The first is a so-called "Fortesta Peer Selling Enterprise" involving Endo and "medical marketing firms and several dozen physicians who routinely promoted Fortesta to other physicians in venues all across the country." (Compl. ¶ 466.) In support of that alleged enterprise, MMO alleges that Endo sponsored three continuing medical education ("CME") programs that included medical faculty with disclosed connections to Endo and/or other Defendants. (Compl. ¶¶ 468-70.) Aside from reciting the titles of the CME programs, MMO does not allege any specific misrepresentation about Fortesta that was allegedly conveyed at the CME programs.

MMO does not even allege that anyone employed by it, its Pharmacy Benefit Manager ("PBM"), or a member of a Pharmacy & Therapeutics ("P&T") Committee even attended any of the CME programs or otherwise was aware of any information conveyed at the programs.[2] Nor does MMO allege that any doctor who prescribed Fortesta to any MMO insured attended any of

---

[2] MMO alleges that it "contractually outsources aspects of the pharmacy benefits it provides to its members to a [PBM.]" (Compl. ¶ 30.) MMO further alleges generally that P&T Committees are entities "established by TPPs and/or PBMs for the purpose of evaluating products that are being considered for formulary placement and developing programs to promote appropriate utilization of pharmaceuticals." (Compl. ¶ 516.) MMO does not allege what advice, if any, it received from its PBM and/or a P&T Committee with respect to Fortesta.

the CME programs, much less that any such doctor's decision to prescribe Fortesta was influenced by any information conveyed at the programs.[3]

The second enterprise is a so-called "Fortesta Publication Enterprise" by which Endo and its associates allegedly ghostwrote scientific articles "to ensure that their off-label marketing messages were prominently included in seemingly unbiased clinical studies when, in fact, the opposite was true." (Compl. ¶ 481.) As its sole example, MMO identifies an article that was published in the Journal of Andrology in 2012, which MMO alleges "purports to present the results of an independent study involving Fortesta's 'novel' 2% testosterone gel for hypogonadal males." (Compl. ¶ 483.) Surprisingly, MMO admits — in its complaint — that "[t]he article discloses that the 'study was funded by ProStrakan Pharmaceuticals, Inc.,' and that '[w]riting and editorial assistance was supported by Endo Pharmaceuticals.'" (Compl. ¶ 484.[4]) Indeed, two of the listed authors on the article "were ProStrakan employees and one was an Endo employee." (Compl. ¶ 485.) The article also discloses that employees of Watermeadow Medical, a medical communications firm, provided "'writing and editorial assistance.'" (Compl. ¶ 486.)

Significantly, MMO does not allege that the article contained any "off-label marketing messages" (Compl. ¶ 481), or any other misrepresentation about Fortesta. MMO also does not

---

[3] Similarly without any supporting detail is MMO's conclusory allegation that "Endo's drug sales representatives detailed and marketed Fortesta to physicians as a product approved and indicated for the treatment of age-related declines in testosterone levels and age-related symptoms." (Compl ¶ 472.) MMO does not allege the content of any such statement, when it was made, who made it, or to whom it was made, much less that any doctor subsequently prescribed Fortesta to any MMO insured for a medically inappropriate use based on such a statement.

[4] Endo obtained the right to market Fortesta in the United States from Strakan International Limited, a subsidiary of ProStrakan Group plc. (Compl. ¶¶ 58, 459.)

allege that it, its PBM, any P&T Committee that made recommendations to it, or any doctor who prescribed Fortesta to one of its insureds saw or read the article. Nor does MMO allege that any alleged misrepresentation in the article influenced any decision to pay for Fortesta or influenced a doctor to prescribe Fortesta to any MMO insured for a medically inappropriate use.

The third enterprise is a so-called "Fortesta DTC Enterprise" by which Endo and its associates allegedly "engaged in aggressive, direct-to-consumer and physician marketing and advertising campaigns for Fortesta." (Compl. ¶ 493.) MMO identifies a handful of advertisements for Fortesta that appeared on its website, in medical journals, or in other publications that MMO alleges "sought to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy were actually attributable to 'Low-T.'" (Compl. ¶¶ 494-98, 502.) MMO does not allege that any doctor who prescribed Fortesta to any MMO insured saw or read the advertisements, much less that any such doctor was influenced to prescribe Fortesta to any MMO insured based on any such advertisement.

In sum, there is not a single allegation in the 1,071 paragraph complaint that identifies any specific alleged misrepresentation that Endo made to MMO, its PBM, or any doctor who prescribed Fortesta to a patient insured by MMO. Nor is there a single allegation in the complaint that any such representation caused MMO to pay for any particular Fortesta prescription, any doctor to prescribe Fortesta to any MMO insured, or any MMO insured to fill a Fortesta prescription. *See Tricontinental Indus., Ltd.*, 475 F.3d at 844 (affirming dismissal under Rule 9(b) where plaintiff "has not set forth any facts showing that the losses it suffered are

proximately linked to the alleged misstatements").[5] MMO cannot satisfy Rule 9(b) simply by alleging that Endo sponsored certain CME programs, ghostwrote scientific articles, and published advertisements that promoted Fortesta for off-label uses. Rather, MMO must allege with particularity the specific statements that MMO contends promoted Fortesta for off-label uses or otherwise misrepresented Fortesta's risk/benefit profile. MMO has failed to do so.

This Court previously has held that personal injury plaintiffs' complaints satisfied Rule 9(b) because "[i]t would be unnecessarily burdensome to require the plaintiffs to identify, for pleading purposes, the exact date on which they heard or saw a particular representation." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014). But there is nothing burdensome about requiring MMO to identify, for pleading purposes, the alleged misrepresentations that it, its PBM, a doctor who prescribed Fortesta, or an insured who was treated with Fortesta actually saw, read, or heard and that allegedly influenced a decision to pay for, prescribe, or fill a prescription for Fortesta. To the contrary, that information should be within MMO's knowledge and is critical to MMO's fraud-based claims against Endo. Because MMO has failed to plead that information, its claims against Endo should be dismissed for failure to satisfy Rule 9(b).

---

[5] Indeed, MMO does not even offer any concrete allegation that it paid to fill a Fortesta prescription for any of its insureds, which is a necessary prerequisite for any plausible allegation of injury. MMO alleges only generally that "[a]t all material times hereto, MMO reimbursed for one or more of Defendants' drug products" and that "Plaintiff and the Class Members have been injured in their property . . . in that they have made millions of dollars in payments for Fortesta that they otherwise would have not have made . . . ." (Compl. ¶¶ 30, 703.) But MMO does not identify a single payment that it made for Fortesta or when it supposedly made that payment in relation to any alleged fraudulent marketing, much less that any such payment was proximately caused by any alleged misrepresentation attributable to Endo.

## II. MMO'S STATE LAW CLAIMS AGAINST ENDO SHOULD BE DISMISSED

For the reasons set forth in Defendants' Joint Memorandum, MMO's state law claims against Endo should be dismissed. *See* Joint Mem. at 32-40. In addition to those reasons, MMO's claim against Endo under the Ohio Consumer Sales Practices Act ("OCSPA") should be dismissed because it is time barred.[6] Moreover, MMO's state law claims against Endo should be dismissed even if, contrary to choice-of-law principles, Pennsylvania law governed those claims.

### A. MMO's Claim Against Endo Under the OCSPA is Time Barred

MMO's claim against Endo under the OCSPA is governed by a two-year statute of limitations running from the date of the alleged violation. *See Foster v. Wells Fargo Fin. Ohio, Inc.*, 960 N.E.2d 1022, 1024 (Ohio App. 8th Dist. 2011); Ohio Rev. Code § 1345.10(C). Where, as here, MMO "seeks recovery of damages under the [O]CSPA, the limitations period is absolute, and the discovery rule does not apply." *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006) (citing *Lloyd v. Buick Youngstown GMC*, 686 N.E.2d 350, 353 (Ohio App. 7th Dist. 1996)).

MMO filed its complaint on November 5, 2014. MMO alleges that Endo did not begin marketing Fortesta until March 2011. (Compl. ¶¶ 58, 462.) MMO further alleges that "[t]he conduct and patterns of conduct alleged herein, relating to Defendant Endo's sale and marketing of Fortesta, occurred between December 29, 2010 . . . and before to the extent that Defendant Endo's animal and premarketing studies demonstrated cardiovascular adverse effects and engaged in pre-approval marketing, up to the present day." (Compl. ¶ 627; *see id.* ¶¶ 462, 495.)

---

[6] Endo offers this argument in this supplemental memorandum to emphasize that MMO's OCSPA claim against it is time-barred even if the arguments in Defendants' Joint Memorandum regarding the four-year or longer statutes of limitations for MMO's other claims do not apply to Endo because Fortesta had not been on the market for four years when MMO filed its complaint. *See* Joint Mem. at 31.

In other words, MMO alleges that Endo violated the OCSPA more than two years before MMO filed its complaint.

Accordingly, MMO's OCSPA claim against Endo is barred by the two year statute of limitations that applies to that claim.

**B.    MMO's State Law Claims Against Endo Should Be Dismissed Even if, Contrary to Choice-of-Law Principles, Pennsylvania Law Governed Those Claims**

As explained in Defendants' Joint Memorandum, under applicable choice-of-law principles, Ohio law governs MMO's state law claims against Endo.  *See* Joint Mem. at 33-35. For the reasons set forth in Defendants' Joint Memorandum, each of MMO's state law claims against Endo under governing Ohio law should be dismissed.  *See id.* at 33-40.  But MMO's state law claims against Endo should be dismissed even if, contrary to choice-of-law principles, Pennsylvania law governed those claims for the reasons set forth in Point II of the Supplemental Memorandum of Law in Support of Defendant Auxilium Pharmaceuticals, Inc.'s Motion to Dismiss the Complaint ("Auxilium Memorandum").  The arguments in Point II of the Auxilium Memorandum apply equally to MMO's state law claims against Endo regarding its marketing of Fortesta and are incorporated by reference.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' joint memorandum, the Court should dismiss each of MMO's claims against Endo.

Dated:  March 16, 2015

Respectfully submitted,

*/s/ Andrew K. Solow*
William Hoffman (*pro hac vice*)
**KAYE SCHOLER LLP**
The McPherson Building
901 Fifteenth Street, NW
Washington, DC 20005-2327
Tel:  (202) 682-3550
Fax:  (202) 414-0355
william.hoffman@kayescholer.com

Andrew K. Solow (*pro hac vice*)
Robert M. Grass (*pro hac vice*)
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Tel:  (212) 836-7740
Fax:  (212) 836-6776
andrew.solow@kayescholer.com
robert.grass@kayescholer.com

Pamela J. Yates (*pro hac vice*)
**KAYE SCHOLER LLP**
1999 Avenue of the Stars
Suite 1600
Los Angeles, CA 90067
Tel:  (310) 788-1000
Fax:  (310) 229-1878
pamela.yates@kayescholer.com

*Attorneys for Defendant Endo Pharmaceuticals Inc.*

**CERTIFICATE OF SERVICE**

    I, Andrew K. Solow, an attorney, hereby certify that on March 16, 2015, I caused a copy of the foregoing document to be filed via the Court's EM/ECF system, which will automatically serve and send e-mail notification of such filing to all registered attorneys of record.

                                         */s/ Andrew K. Solow*
                                         Andrew K. Solow