IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br><br>Master Docket Case No. 1:14-cv-01748<br><br>Hon. Judge Matthew F. Kennelly |
| This document relates to:<br><br>MEDICAL MUTUAL OF OHIO,<br><br>    Plaintiff,<br><br>v.<br><br>ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY NORTH AMERICA, LLC, SOLVAY PHARMACEUTICALS SARL, SOLVAY, S.A., AUXILIUM, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX LIMITED, ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC. WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC.,<br><br>    Defendants. | No. 1:14-cv-08857 |

## ABBVIE DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

ALLEGATIONS SPECIFIC TO THE ABBVIE DEFENDANTS ..................................................1

ARGUMENT .....................................................................................................................2

I.     MMO FAILS ADEQUATELY TO ALLEGE THAT IT WAS INJURED BY THE ABBVIE DEFENDANTS' ALLEGED MISCONDUCT. ....................................................2

II.    MMO'S COMPLAINT FAILS TO SATISFY RULE 9(b). ...............................................5

III.   MMO'S STATE-LAW CAUSES OF ACTION AGAINST THE ABBVIE DEFENDANTS FAIL TO STATE A CLAIM. ...................................................................9

     A.    Illinois Consumer Fraud Act ....................................................................10

     B.    Illinois Insurance Fraud Statute And Common-Law Misrepresentation ...............11

     C.    Unjust Enrichment ...................................................................................12

IV.   THERE ARE ADDITIONAL GROUNDS TO DISMISS ALL CLAIMS AGAINST THE "SOLVAY" DEFENDANTS WITH PREJUDICE. ...................................................13

     A.    All Claims Against Solvay North America And Solvay Pharmaceuticals Should Be Dismissed. ...........................................................................13

     B.    The Court Lacks Personal Jurisdiction Over Solvay, S.A., Solvay Pharmaceuticals, S.A.R.L., and Solvay America, Inc. ..........................................14

CONCLUSION ................................................................................................................15

7699182

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ................................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005) ..............................................................................................11

*Beck v. Prupis*,
529 U.S. 494 (2000).............................................................................................................6

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ............................................................................................7

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)...........................................................................................................7

*In re Bridgestone/Firestone Inc.*,
155 F. Supp. 2d 1069 (S.D. Ind. 2001) .............................................................................5

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ..........................................................................................13

*Cohen v. Am. Sec. Ins. Co.*,
735 F.3d 601 (7th Cir. 2013) ..........................................................................................13

*Comm. Union Assurance Co. PLC v. Milken*,
17 F.3d 608 (2d Cir. 1994)............................................................................................3, 4

*Concert Health Plan Ins. Co. v. Killian*,
2015 U.S. Dist. LEXIS 27479 (N.D. Ill. 2015) ..............................................................12

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)..................................................................................................14, 15

*DeBouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009) ..............................................................................................10

*In re Epogen & Aranesp*,
2009 U.S. Dist. LEXIS 58697 (C.D. Cal. 2009)...............................................................5

*Fox Assocs., Inc. v. Robert Half Int'l, Inc.*,
    777 N.E.2d 603 (Ill. App. 2002) ....................................................12

*Frye v. L'Oreal USA, Inc.*,
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ..........................................10

*Goren v. New Vision Int'l*,
    156 F.3d 721 (7th Cir. 1998) .........................................................1

*Health Care Serv. Corp. v. Olivares*,
    2011 U.S. Dist. LEXIS 117750 (E.D. Tex. Sept. 2, 2011) ............3

*Int'l Bhd. of Teamsters, Local 734 v. Philip Morris Inc.*,
    196 F.3d 818 (7th Cir. 1999) .....................................................3, 10

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*,
    634 F.3d 1352 (11th Cir. 2011) ..................................................2, 3

*United States ex rel. King v. Solvay S.A.*,
    2013 U.S. Dist. LEXIS 143658 (S.D. Tex. Oct. 2, 2013)........6, 15

*Knox Coll. v. Celotex Corp.*,
    430 N.E.2d 976 (Ill. 1981) .......................................................11, 12

*Limestone Dev. Corp. v. Vill. of Lemont*,
    473 F. Supp. 2d 858 (N.D. Ill. 2007) .............................................6

*Landau v. CAN Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. 2008) ..................................................10

*Maio v. Aetna*,
    221 F.3d 472 (3d Cir. 2000).............................................................5

*Malmsteen v. Berdon, LLP*,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007)...........................................13

*Md. Staffing Servs. v. Manpower, Inc.*,
    936 F. Supp. 1494 (E.D. Wis. 1996)................................................7

*Merrilees v. Merrilees*,
    998 N.E.2d 147 (Ill. App. 2013) ...................................................11

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*,
    854 A.2d 121 (Del. Ch. 2004)........................................................14

*Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*,
    692 N.E.2d 812 (Ill. App. 1998) ...................................................12

iii

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002) ........................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*
    631 F.3d 436 (7th Cir. 2011) ...................................................................8, 9

*Reynolds v. E. Dyer Dev. Co.*,
    882 F.2d 1249 (7th Cir. 1989) .....................................................................7

*Rohrback v. Ill. Dep't of Employment Sec.*,
    835 N.E.2d 955 (Ill. App. 2005) ................................................................12

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    2009 U.S. Dist. LEXIS 58900 (D.N.J. 2009) ...........................................4, 5

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
    655 N.E.2d 1065 (Ill. App. 1995) ..............................................................13

*Seidel v. Byron*,
    405 B.R. 277 (N.D. Ill. 2009) ....................................................................14

*Slaney v. Int'l Amateur Athletic Fed'n*,
    244 F.3d 580 (7th Cir. 2001) .................................................................5, 6, 7

*Steadfast Ins. Co. v. Auto Mktg. Network*,
    1998 U.S. Dist. LEXIS 20286 (N.D. Ill. 1998) ........................................11

*Toney v. Quality Res., Inc.*,
    --- F. Supp. 3d ---, 2014 U.S. Dist. LEXIS 166253 (N.D. Ill. Dec. 1, 2014)...........................14

*Vector-Springfield Props. v. Cent. Ill. Light Co.*,
    108 F.3d 806 (7th Cir. 1997) .....................................................................11

*Verb v. Motorola*,
    672 N.E.2d 1287 (Ill. Ct. App. 1996) ........................................................10

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) .....................................................................1, 6

*Vill. of Bensenville v. City of Chicago*,
    906 N.E.2d 556 (Ill. App. 2009) ................................................................13

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)................................................................................15

*Yacub v. Sandoz Pharms. Corp.*,
    85 F. Supp. 2d 817 (S.D. Ohio 1999) ..........................................................5

7699182

*In re Zyprexa Prods. Liab. Litig.*,
253 F.R.D. 69 (E.D.N.Y. 2008) ..................................................8

**Statutes**

6 Del. C. § 18-803(b) ..................................................................14

720 ILCS 5/17-10.5 .....................................................................11

735 ILCS 5/13-205 .......................................................................13

Illinois Consumer Fraud Act, 815 ILCS 505/1 ....................10, 11

18 U.S.C. § 1341 ...........................................................................6

18 U.S.C. § 1343 ...........................................................................6

Ga. Code Ann. § 10-1-399(b) ........................................................9

Tex. Code Ann., Bus. & Comm. § 17.505(a) ................................9

**Other Authorities**

Fed R. Civ. P. 8 .............................................................................7

Fed. R. Civ. P. 9(b) ...............................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...............................................................13

Fed. R. Civ. P. 17(b)(2) ...............................................................14

7699182

Defendants Solvay, S.A., Solvay Luxembourg, S.A.R.L. f/k/a Solvay Pharmaceuticals S.A.R.L. ("Solvay Luxembourg"), Solvay America, Inc. ("SAI"), Abbott Products, Inc., AbbVie Inc., and Abbott Laboratories (together, "AbbVie" or the "AbbVie Defendants") respectfully submit this Supplemental Memorandum of Law in support of their Motion to Dismiss the Complaint of Plaintiff Medical Mutual of Ohio ("MMO").

## INTRODUCTION

As the Defendants' Joint Memorandum explains, MMO's entire lawsuit is flawed in multiple respects. Here, the AbbVie Defendants write separately to elaborate on several additional reasons why MMO's claims against them must be dismissed. <u>First</u>, the Complaint does not allege that MMO experienced any cognizable injury attributable to the AbbVie Defendants. <u>Second</u>, the Complaint fails to satisfy Rule 9(b) as to the AbbVie Defendants. <u>Third</u>, the state-law causes of action pled as to the AbbVie Defendants fail to state a claim. <u>Fourth</u>, this Court lacks personal jurisdiction over Solvay, S.A., Solvay Luxembourg, and SAI.

## ALLEGATIONS SPECIFIC TO THE ABBVIE DEFENDANTS

The Complaint attempts to "lump together" an entire industry and impute one company's conduct to all the others. (*E.g.*, Compl. ¶¶ 110, 134–37, 144–46.) Under Rule 9(b), however, the sufficiency of MMO's claims against the AbbVie Defendants must be measured by the particularity of MMO's allegations as to *each individual AbbVie Defendant*. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (Rule 9(b) "prohibit[s] ... lumping defendants together"); *Goren v. New Vision Int'l*, 156 F.3d 721, 726 (7th Cir. 1998).

As illustrated by the redline in **Appendix A**, most of MMO's allegations as to the AbbVie Defendants are drawn near-verbatim from the complaint in a *qui tam* lawsuit brought in 2003 against Solvay, S.A. (*See* Fifth Am. Compl. ("5AC") in *United States ex rel. King v.*

*Solvay S.A.*, No. 4:06-cv-02662, Dkt. 54 (S.D. Tex. Dec. 7, 2009) (Ex. 2 to Declaration of

William F. Cavanaugh, Jr. in Support of Joint Memorandum).)[1]  Specifically, MMO alleges that:

- The AbbVie Defendants promoted AndroGel for off-label uses to physicians through seminars and conferences whose content was controlled by AbbVie.  (Compl. ¶¶ 149–80; *cf. King* 5AC ¶¶ 183, 186–202, 237, 242–68.)

- The AbbVie Defendants paid "kickbacks" to respected physicians and thought leaders for presenting at these conferences and lending their names to AbbVie-sponsored research. (Compl. ¶¶ 234–83; *cf. King* 5AC ¶¶ 302–34, 345–61.)

- The AbbVie Defendants placed information supporting off-label use of AndroGel in medical journals and clinical studies.  (Compl. ¶¶ 284–312; *cf. King* 5AC ¶¶ 180, 192, 223–23, 242–46, 270–76.)

- The AbbVie Defendants sought to turn the normal aging process into a treatable condition by marketing AndroGel for "andropause." (Compl. ¶¶ 2, 8–9, 17, 20, 138, 166, 181–203, 287; *cf. King* 5AC  ¶¶ 176–202, 215, 252.)

- The AbbVie Defendants strategically targeted their promotion based on unapproved uses. These include treatment of diabetes (Compl. ¶¶ 165, 176, 222–26; *cf. King* 5AC ¶¶ 267, 275, 216), obesity (Compl. ¶ 227; *cf. King* 5AC ¶ 217), women (Compl. ¶¶ 214–19; cf. *King* 5AC ¶¶ 210–14), HIV (Compl. ¶¶ 157, 231–33, 242–43; cf. *King* 5AC ¶¶ 183, 219–21, 310–11); depression (Compl. ¶¶ 205–11; cf. *King* 5AC ¶¶ 190, 204–07); osteoporosis (Compl. ¶ 212; *cf. King* 5AC ¶ 208); and sexual dysfunction (Compl. ¶¶ 157, 178, 213, 220, 257, 298; *cf. King* 5AC ¶¶ 183, 209, 215, 237, 273, 328).

## ARGUMENT

## I.    MMO FAILS ADEQUATELY TO ALLEGE THAT IT WAS INJURED BY THE ABBVIE DEFENDANTS' ALLEGED MISCONDUCT.

The Complaint asserts that MMO and other TPPs were injured each time they reimbursed

for an "off-label" prescription for a TRT drug.  (Compl. ¶¶ 648, 717, 792, 793.)  However, as the

Eleventh Circuit explained in a similar off-label RICO case, TPPs do not pay for prescriptions

out of "their own" funds.  *See Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634

F.3d 1352, 1368 (11th Cir. 2011).  They "charge their enrollees an up-front fee, i.e., a

---

[1] For the avoidance of confusion: Defendants' Joint Memorandum refers to the *Second* Amended Complaint in *King* (unsealed Dec. 7, 2009), which was sufficient to put MMO on notice of its potential claims.  But the allegations in MMO's Complaint appear to be copied from the *Fifth* Amended Complaint in *King* (filed Nov. 22, 2011).

'premium,' in exchange for [prescription-drug] coverage." *Id.* at 1364. Using sophisticated actuarial methods, TPPs set premiums such that the total funds collected will cover the cost of all beneficiaries' prescriptions—"including medically unnecessary or inappropriate prescriptions"— plus overhead. *Id.* at 1364-65, 1368. The higher the total cost of beneficiaries' prescriptions, the higher the premiums charged. Thus, payments for prescriptions are borne collectively by the beneficiaries—not by the TPP itself. *Id.* at 1369 (dismissing TPPs' claims for lack of a "plausibl[e] ... economic injury"); *Health Care Serv. Corp. v. Olivares*, 2011 U.S. Dist. LEXIS 117750, at *18 (E.D. Tex. Sept. 2, 2011) (following *Ironworkers* in off-label RICO case).

The Seventh Circuit employed the same reasoning in affirming the dismissal of a TPP RICO case involving fraudulent cigarette marketing:

> Plaintiffs say that they are injured by the amount they pay to provide medical care for smokers….[However,] it is necessary to consider both the income and the expenditure sides of the insurer's balance sheet….**Having collected extra money *from the smokers…*, an insurer can't turn around and collect from the tobacco manufacturer for the same outlay**….[TPPs] are just financial intermediaries. They collect the premiums and spend them to provide the contracted-for care; **their books balance whether the costs of care are high or low**….**[P]urchasers of insurance, not the [TPPs], foot the medical bill in the end.**

*Int'l Bhd. of Teamsters, Local 734 v. Philip Morris Inc.*, 196 F.3d 818, 823-24 (7th Cir. 1999) (emphasis added).

These holdings comport with the principle that RICO damages are intended to "place [plaintiffs] in the same position they would have been in but for the illegal conduct." *Comm. Union Assurance Co. PLC v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994). But for AbbVie's alleged scheme to boost off-label sales of AndroGel, prescription rates would have remained at their "proper" level. MMO, in turn, would have set its premiums so that its books balanced on the basis of that "proper" figure (rather than the higher, "inflated" figure that it allegedly used). In

other words, MMO would have ended up exactly where it is now.  Thus, awarding MMO the "millions of dollars [it made] in payments for AndroGel" (Compl. ¶ 647) would not place it "in the same position [it] would have been in but for [AbbVie's allegedly] illegal conduct."  *Milken*, 17 F.3d at 612.  Instead, it would give MMO an enormous windfall.

But this is not the only flaw with MMO's allegations of injury.  As set out in the Defendants' Joint Memorandum, payment for a prescription is not injurious simply because that prescription was for an "off-label" use.  As MMO acknowledges, off-label uses are often beneficial, and doctors may choose to prescribe FDA-approved drugs for whatever uses they wish—on-label or off.  (Compl. ¶ 52.)  The Complaint occasionally appears to acknowledge that a purchaser could be financially injured only by paying "for TRT drugs that *did not work* as advertised and promoted."  (Compl. ¶¶ 2, 27 (emphasis added).)  For the most part, however, it elides the crucial distinction between off-label prescriptions and injurious prescriptions, suggesting—if not outright claiming—that payment for any off-label AndroGel prescription is *per se* injurious.  (*E.g.*, Compl. ¶¶ 7, 18, 28.)  This is problematic for at least two reasons.

First, the Complaint's few allegations concerning AndroGel's *effectiveness* are hedged and ambiguous.  MMO claims "the efficacy of testosterone has long been an *open question* for non-hypogonadal men," and that "*many* experts now believe TRT drugs are of *negligible* value for the marketed off-label uses."  (Compl. ¶ 15 (emphasis added).)  Even taking this as true, if the most MMO can allege is that "many" (not "most") experts believe that AndroGel is of "negligible" (not "no") value for some "off-label" uses, the Court cannot conclude that every off-label prescription causes injury.  Moreover, even these few allegations are "naked assertion[s]" that should be disregarded.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 U.S. Dist. LEXIS 58900, at *53

(D.N.J. 2009) (rejecting "conclusory allegations ... that the Subject Drugs were ineffective"); *In re Epogen & Aranesp*, 2009 U.S. Dist. LEXIS 58697, at *21–22 (C.D. Cal. 2009) (similar).[2]

Second, in any class action, the named plaintiff "must allege and show that [it] personally ha[s] been injured, not that injury has been suffered by ... unidentified members of the class." *Intron/Temodar*, 2009 U.S. Dist. LEXIS 58900, at *53. MMO has not pled concrete facts showing that *even one* of *its* beneficiaries received a medically inappropriate AndroGel prescription, or was physically injured by AndroGel. *See Maio v. Aetna*, 221 F.3d 472, 487–88 (3d Cir. 2000) (insureds could not show a "tangible" RICO injury by alleging that they had paid for "inferior" insurance plans; they were required to allege that the "health care they received" as a result of their plans "was actually compromised"); *In re Bridgestone/Firestone Inc.*, 155 F. Supp. 2d 1069, 1092-94 (S.D. Ind. 2001) (plaintiffs could not plead a "cognizable RICO injury" "absent particularized allegations of the inferior performance" of the tires *they* purchased; allegation that defendant's tires had a high defect rate was insufficient). MMO's Complaint, however, does not contain a single allegation of fact to show that any of *its* beneficiaries was injured by AndroGel, or received an AndroGel prescription that was medically inappropriate.

## II.    MMO'S COMPLAINT FAILS TO SATISFY RULE 9(b).

RICO claims "are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b)." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Thus, a RICO complaint must "describe the predicate acts of fraud" with "specificity," and must "state the

---

[2] Notably, payment for a drug of *unproven* effectiveness is not a cognizable RICO injury. *See Yacub v. Sandoz Pharms. Corp.*, 85 F. Supp. 2d 817, 819 (S.D. Ohio 1999) (the manufacturer "maintain[s] the burden of proof" as to effectiveness before the FDA, while "the *[p]laintiff* bears the burden of proof" as to *in*effectiveness "in [tort] litigation" (emphasis added)); *Intron/Temodar*, 2009 U.S. Dist. LEXIS 58900, at *46–49 (to state a RICO claim, "[i]t is simply not enough to claim that [a drug] had not been *proven* to be effective"; rather, "[p]laintiffs must allege" that the drug was actually "*in*effective" (emphasis added)).

time, place, and content of the alleged false representations, the method by which [they] were communicated, and the identities of the parties to [them]." *Id.*; *see also Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 873 (N.D. Ill. 2007) (because "[RICO] liability is limited to persons who have 'personally committed' at least two predicate acts of racketeering," a complaint "must, at a minimum, describe two predicate acts of fraud *by each Defendant* with some specificity") (emphasis added). MMO's generic allegations of purported misconduct committed by the "AbbVie Defendants" do not satisfy Rule 9(b) for this reason alone (*see Vicom, supra*, 20 F.3d at 777–78) and at least four others.[3]

First, MMO never explains *which* of the alleged predicate acts of mail or wire fraud caused its injury. *See Beck v. Prupis*, 529 U.S. 494, 495-96 (2000) (it is not enough that a plaintiff was "injured by an overt act done in furtherance of a RICO conspiracy"; the plaintiff must have been injured by a specific, indictable "act of racketeering"). Rather, after going on for hundreds of pages about the Defendants' alleged wrongdoing, without connecting it to MMO, the Complaint's causes-of-action section merely states that each AbbVie Defendant engaged in a "pattern of racketeering activity ... which includes multiple instances of mail fraud in violation of 18 U.S.C. § 1341, and multiple instances of wire fraud in violation of 18 U.S.C. § 1343, as described above." (Compl. ¶¶ 641, 711, 786, 882.) But it is "[im]proper" to "attempt to satisfy"

---

[3] In particular, MMO's resort to allegations against the "AbbVie Defendants" collectively is a transparent attempt to obscure the dearth of allegations against each separate entity named as a defendant in this action. Indeed, MMO does not claim that Solvay, S.A. or Solvay Luxembourg had **any** direct participation in the sale or marketing of AndroGel—much less in any alleged *off-label* promotion of the drug. (*See* Compl. ¶¶ 31, 34.) And MMO's conclusory assertion that SAI participated in the sale and marketing of AndroGel "at all times relevant" (*id.* ¶ 32) finds no support in the putative "Factual Allegations" (*id.* ¶¶ 52–619) that follow. Moreover, MMO's claims against SAI arise from a simple case of mistaken identity. As the District Court recognized in *U.S. ex rel. King v. Solvay S.A.*, 2013 U.S. Dist. LEXIS 143658 (S.D. Tex. Oct. 2, 2013), the "Solvay America, Inc." described in the Complaint was renamed Solvay Pharma U.S. Holdings, Inc. in 2005 and later acquired by Abbott Laboratories in 2010. *See also infra* at n.10.

Rule 9(b) by "incorporat[ing] ... [an] entire complaint" worth of facts into that complaint's RICO count, and doing so is "grounds enough" for dismissal. *Slaney*, 244 F.3d at 599 n.10.

Second, MMO fails to allege with sufficient particularity that anyone in the causal chain—*e.g.*, MMO or any of its insureds' physicians—*relied on* any particular allegedly false statement made by any AbbVie Defendant (let alone by *all* of them). *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (pleading predicate act of mail fraud requires plaintiff to "show[] that *someone* relied" on the defendant's misrepresentations). Moreover, the alleged off-label marketing and the debate over "andropause" were already a matter of public record at the time AndroGel was first released. (*See generally* Cavanaugh Decl.; Joint Mem. at 26-29.) *See Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1253 (7th Cir. 1989) (RICO claim failed because facts allegedly concealed were a matter of public record; a RICO plaintiff "may not rely on misrepresentations when he has sufficient information to call [them] into question").

Third, MMO fails to plead the scienter element of mail or wire fraud with particularity— or even with the minimum plausibility required by Rule 8. *See Md. Staffing Servs. v. Manpower, Inc.*, 936 F. Supp. 1494, 1499 (E.D. Wis. 1996) ("In order to adequately allege mail or wire fraud as RICO predicate acts, the plaintiffs must plead scienter; they must allege that the defendants intentionally deceived the plaintiffs."); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (fraud complaint "must afford some [factual] basis for believing that plaintiffs can prove scienter"). MMO alleges that the "efficacy of testosterone ... for non-hypogonadal men" has "long been an *open question*," and that certain "experts" have come to believe *only recently* that it is "of negligible value." (Compl. ¶ 15 (emphasis added).) Taking this as true, because AndroGel's efficacy for off-label uses was "an open question" at the time of AbbVie's alleged predicate acts, those acts cannot constitute mail or wire fraud.

Fourth and finally, a plaintiff cannot simply crib allegations of misconduct from other lawsuits, without "bolster[ing] its complaint" with "firsthand facts or data" showing that *it* was injured by the alleged misconduct. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443-44 (7th Cir. 2011). In *Pirelli*, the Seventh Circuit affirmed the dismissal of a TPP's claims on Rule 9(b) grounds where the plaintiff copied allegations from an earlier *qui tam* lawsuit without pleading additional facts to corroborate that it, too, was a victim of the practices alleged in the *qui tam* suit. The TPP in *Pirelli* did point to some preliminary data suggesting that a few of its insureds had had prescriptions filled improperly by the defendant pharmacy. 631 F.3d at 445-46. Without more "context for the data," however, this "small-*n* analysis" did not demonstrate sufficient pre-complaint "investigation." *Id.*[4]

Here, too, MMO's allegations are largely cribbed from an earlier *qui tam* complaint. (*See* **Appendix A**.) But MMO's pre-complaint investigation was apparently even more meager than the TPP's investigation in *Pirelli*. MMO alleges that "one or more" of the various Defendants' drug products was on its approved formulary at all relevant times, and that MMO has "paid for thousands of TRT drug prescriptions" during the Class Period. (Compl. ¶ 30.) But MMO does not specifically allege anywhere in its 334-page Complaint that it actually reimbursed *for AndroGel*—let alone that any such prescriptions were off-label or medically inappropriate. Indeed, as far as the Complaint shows, MMO has not reviewed its records to determine:

- whether it reimbursed for AndroGel absent a testosterone level test (*cf.* Compl. ¶ 19);

- whether it paid for any AndroGel prescriptions for women (*cf.* Compl. ¶¶ 214–19);

- whether there was any increase in AndroGel prescriptions for insureds suffering from the

---

[4] Unlike beneficiaries, TPPs are "sophisticated institutions" with considerable "expertise in merchandising of [p]harmaceuticals." *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 195-96 (E.D.N.Y. 2008), *rev'd on other grounds*, 620 F.3d 121 (2d Cir. 2010). Thus, sophisticated TPPs like MMO are required to conduct a more thorough pre-complaint investigation.

8

conditions for which AbbVie allegedly marketed AndroGel "off-label" (*cf.* Compl. ¶¶ 165, 176, 222–226 (diabetics); ¶ 228 (men on long-term opioids); ¶¶ 157, 231–33, 242–43 (HIV); ¶ 227 (obesity); ¶ 212 (osteoporosis));

- whether any of its insureds who took AndroGel later developed heart disease or other injuries allegedly associated with AndroGel (*cf.* Compl. ¶¶ 3, 27, 145).

Notably, this information "would not be the product of discovery but of a more fulsome look at [MMO's] own data." *Pirelli*, 631 F.3d at 444.

In sum, MMO does not provide even "preliminary" data from its own records suggesting that the off-label promotional tactics alleged in the *King* suit, which form the basis of MMO's Complaint here, actually resulted in injury to MMO. Especially given the many years that have passed since the allegations of off-label promotion became public (*see* Joint Mem. at 26-29), MMO "could ... easily have done more." *Pirelli*, 631 F.3d at 445-46.

## III. MMO'S STATE-LAW CAUSES OF ACTION AGAINST THE ABBVIE DEFENDANTS FAIL TO STATE A CLAIM.

MMO purports to sue each Defendant under the laws of almost every state. As the Defendants' Joint Memorandum explains, this is impermissible, as the relationship between MMO and each of the Defendants is centered in Ohio. (Joint Mem. at 33-35.)

Even assuming *arguendo* that the relationship between MMO and the AbbVie Defendants could be centered somewhere other than Ohio, that place could only be Illinois, Texas, or Georgia, where the AbbVie Defendants are allegedly based. (Compl. ¶¶ 32-38.) However, the Complaint fails to cite the relevant Texas and Georgia statutes. (*See* Compl. ¶ 953(a)-(rr) (omitting Texas, Georgia, and several other states from the list of statutes sued under).)[5] Accordingly, the AbbVie Defendants focus on Illinois law here.

---

[5] The reason why is apparent: the omitted states' consumer-protection statutes all require pre-suit notice, *see, e.g.*, Ga. Code Ann. § 10-1-399(b); Tex. Code Ann., Bus. & Comm. § 17.505(a), but MMO failed to give such notice before it filed its Complaint (and it does not allege otherwise).

### A.    Illinois Consumer Fraud Act

MMO attempts to sue AbbVie under the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1.  (Compl., 21st Claim for Relief.)  That claim fails for at least four reasons.

First, MMO cannot invoke the ICFA because that statute is "without extraterritorial effect."  *Landau v. CAN Fin. Corp.*, 886 N.E.2d 405, 407 (Ill. App. 2008).  Allegations of misrepresentations "disseminated from Illinois" or that AbbVie is "headquartered" in Illinois are irrelevant; the place where MMO received the representations and suffered injury controls.  *Id.*

Second, for the reasons discussed above and in Defendants' Joint Memorandum, MMO has failed to plead "actual damage" cognizable under the ICFA.  *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008).  As with RICO, an ICFA plaintiff's injury must be "concrete" and "ascertainable," rather than "[t]heoretical."  *Id.* at 957-58; *cf. Verb v. Motorola*, 672 N.E.2d 1287, 1295 (Ill. App. 1996) (dismissing ICFA claim where plaintiffs alleged they were injured by purchasing a product whose safety was "unproven").

Third, for the reasons discussed in Defendants' Joint Memorandum, MMO has failed to plead "but-for" and proximate causation.  *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002).  Notably, the Illinois Supreme Court has considered and rejected an ICFA claim in very similar circumstances.  *DeBouse v. Bayer AG*, 922 N.E.2d 309, 319 (Ill. 2009) (no viable ICFA claim where plaintiff "fail[ed] to allege that *her particular doctor* was actually deceived by any of Bayer's advertisements"; allegation of "general deception of ... the medical community" was insufficient (emphasis added)); *see also Teamsters*, 196 F.3d at 827-28 ("Illinois would apply the federal remoteness approach," under which "a third-party payor may recover as a subrogee or not at all").

Fourth, MMO's ICFA claim is untimely.  The ICFA's statute of limitations is three years. *See* 815 ILCS 505/10a(e).  It accrues upon "notice ... of a *possible* invasion of one's legally

protected interests," which does not require specific knowledge of the defendant's conduct, or awareness of a valid cause of action. *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980-81 (Ill. 1981) (emphasis added). Accrual requires only "sufficient information concerning [the] injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Vector-Springfield Props. v. Cent. Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir. 1997). As discussed in the Joint Memorandum (pp. 26-29), MMO either knew or should have known of "a possible invasion" of its interests by 2002, if not earlier—many years before the critical date of November 5, 2011 (*i.e.*, three years before this suit was filed).

### B. Illinois Insurance Fraud Statute And Common-Law Misrepresentation

MMO asserts a claim under the Illinois Insurance Fraud Statute, 720 ILCS 5/17-10.5 (Compl., 23rd Claim for Relief), which requires a plaintiff to plead and prove all "six elements of common law fraud." *Steadfast Ins. Co. v. Auto Mktg. Network*, 1998 U.S. Dist. LEXIS 20286, at *48 (N.D. Ill. 1998). MMO also asserts common-law claims for fraudulent and negligent misrepresentation (35th and 36th Claims for Relief). These claims all fail as well.

First, like the ICFA, the Insurance Fraud Statute lacks extraterritorial effect. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852–53 (Ill. 2005) (rule against extraterritorial application is a "long-standing rule of construction in Illinois" with general application).

Second, for the reasons discussed above, MMO fails to plead reliance, and any such reliance would have been unreasonable. *See Merrilees v. Merrilees*, 998 N.E.2d 147, 159 (Ill. App. 2013) (complaint "fail[ed] to sufficiently allege fraud because plaintiff's conclusory allegations d[id] not identify misstatements of material fact on which she reasonably relied").

**Third**, the Complaint does not adequately plead damages. As set forth in the Joint Memorandum, and as discussed above, MMO does not concretely allege that it paid for a single AndroGel prescription that was ineffective or caused injury.

**Fourth**, as to the Insurance Fraud Statute and the intentional fraud claim, the Complaint fails to plausibly allege scienter, for the reasons already discussed. *See Rohrback v. Ill. Dep't of Employment Sec.*, 835 N.E.2d 955, 965 (Ill. App. 2005) ("A fraudulent statement is a statement one *knew* to be false *when one made [it]*." (emphasis added)).

**Fifth**, a defendant "[can]not be held liable under a negligent misrepresentation theory for economic losses," except where it "is in the *business of supplying information* for the guidance of others in their business transactions." *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 692 N.E.2d 812, 818 (Ill. App. 1998). Here, AbbVie is in the business of selling pharmaceuticals, not supplying information.[6]

**Sixth** and lastly, these claims are time-barred. They are governed by a five-year statute of limitations that accrues when the plaintiff "knows or reasonably should know of his injury and ... that it was wrongfully caused." *Concert Health Plan Ins. Co. v. Killian*, 2015 U.S. Dist. LEXIS 27479, at *3-4 (N.D. Ill. 2015); *Knox Coll.*, 430 N.E.2d at 979. As explained in the Joint Memorandum, MMO reasonably should have had such knowledge many years before the November 5, 2009 cutoff (*i.e.*, five years before it filed suit).

## C. Unjust Enrichment

To plead unjust enrichment, a plaintiff "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit

---

[6] Although AbbVie provides information about its drugs, "[w]hen the information offered by the defendant relates to the defendant's tangible goods…, [it] is considered merely ancillary or incidental, and the defendant is not deemed to be in the business of providing information." *Fox Assocs., Inc. v. Robert Half Int'l, Inc.*, 777 N.E.2d 603, 607 (Ill. App. 2002).

violates the fundamental principles of justice, equity, and good conscience." *Vill. of Bensenville v. City of Chicago*, 906 N.E.2d 556, 593 (Ill. App. 2009) (citation omitted). Because the Complaint fails to allege causation or injury, no such "unjust" circumstances exist here. *See Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim…will stand or fall with the related claim."). Moreover, "unjust enrichment is only available when there is no adequate remedy at law." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *see Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill. App. 1995) (dismissing unjust enrichment claim where plaintiff "ha[d] an adequate remedy at law" but did "not properly pursue[]" it). MMO fails to explain how a timely pursued claim under some other legal theory would have been insufficient to remedy its alleged injury.

In any event, the unjust enrichment claim is time-barred. "[I]f [an] unjust enrichment claim is merely incidental to or duplicative of another claim with a shorter limitations period, the Court will not allow a plaintiff to avail himself of the longer limitations period" for an unjust enrichment claim, and thereby evade the statute of limitations. *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 667 (S.D.N.Y. 2007). Thus, the three-year ICFA statute of limitations should apply. But even if Illinois' five-year "catch-all" period governed, *see* 735 ILCS 5/13-205, this suit would still have been filed much too late.

## IV. THERE ARE ADDITIONAL GROUNDS TO DISMISS ALL CLAIMS AGAINST THE "SOLVAY" DEFENDANTS.

### A. Solvay North America, LLC Is A Nonexistent Entity.

All claims against Solvay North America, LLC ("SNA") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because SNA no longer exists and thus is not amenable to suit. Under Delaware law, the filing of a certificate of cancellation terminates a

limited liability company's capacity to be sued. *See* 6 Del. C. § 18-803(b); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs., Inc.*, 854 A.2d 121, 138-39 (Del. Ch. 2004).[7] Because SNA filed a certificate of cancellation effective as of December 31, 2012 (*see* Certificate of Cancellation, Ex. 1 hereto),[8] it is no longer amenable to suit.[9]

### B. The Court Lacks Personal Jurisdiction Over Solvay, S.A., Solvay Luxembourg, and SAI.

It is the plaintiff's burden to show that *each* defendant is subject to personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). MMO has not made—and cannot make—such a showing here as to Solvay, S.A., Solvay Luxembourg, or SAI.

A corporation is subject to general jurisdiction only if its affiliations with the forum state are "so constant and pervasive 'as to render [it] essentially at home'" in that state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). *Daimler* makes clear that, absent unusual circumstances not alleged here, a corporation is subject to general jurisdiction only in its "place of incorporation and principal place of business." *Id.* at 760. Here, Solvay, S.A. is incorporated and has its principal place of business in Belgium; Solvay Luxembourg is incorporated and has its principal place of business in Luxembourg; and SAI is incorporated in Delaware and has its principal place of business in Texas. (*See* Affidavit of Paul Vanderhoeven Regarding Solvay, S.A.

---

[7] A corporation's capacity to be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2).

[8] The Court may take judicial notice of and consider official corporate documents publicly filed with responsible state entities. *E.g., Toney v. Quality Res., Inc.*, 2014 U.S. Dist. LEXIS 166253, at *8 (N.D. Ill. Dec. 1, 2014); *Seidel v. Byron*, 405 B.R. 277, 284 (N.D. Ill. 2009).

[9] In addition, MMO expressly alleges that Defendant Abbott Laboratories acquired "Solvay Pharmaceuticals" in February 2010 and renamed it "Abbott Products, Inc." which itself is a named defendant in this action. (Compl. ¶ 36.) Thus, there is no basis for MMO to pursue claims against "Solvay Pharmaceuticals," which is not a separate entity.

("Vanderhoeven S.A. Aff.") ¶ 3; Affidavit of Paul Vanderhoeven Regarding Solvay Luxembourg S.A.R.L. ("Vanderhoeven Luxembourg Aff.") ¶ 3; Affidavit of Edwin J. Buckingham III ("Buckingham Aff.") ¶ 3.) Accordingly, none is subject to *general* jurisdiction under *Daimler*.

Thus, MMO must establish *specific* personal jurisdiction. For the exercise of specific jurisdiction to comport with due process, "the defendant's *suit-related conduct* must create a *substantial connection* with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis added). Moreover, the due process requirement "must be met as to *each defendant*." *Id.* at 1123 (emphasis added; internal quotation marks omitted).

MMO has not pleaded—and cannot plead—the requisite "suit related conduct" in the forum state (*Walden*, 134 S. Ct. at 1121) for Solvay, S.A. or Solvay Luxembourg because neither entity ever developed, designed, manufactured, tested, labeled, distributed, marketed, promoted, or sold the AndroGel product that is at issue in this litigation. (Vanderhoeven S.A. Aff. ¶ 8; Vanderhoeven Luxembourg Aff. ¶ 9). The same is true for SAI. (Buckingham Aff. ¶ 16.)[10] Accordingly, MMO cannot show that there were any "in-state activities" by these entities that were "not only…continuous and systematic, but also g[a]ve rise to the liabilities sued on.'" *Daimler*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

## CONCLUSION

For the reasons above, as well as those set forth in the Defendants' Joint Memorandum, MMO's Complaint should be dismissed with prejudice as to the AbbVie Defendants.

---

[10] Indeed as discussed above (*supra* at n.3), courts have recognized that SAI is a wholly separate and distinct entity from "Solvay America, Inc." described in MMO's Complaint. *See generally King*, 2013 U.S. Dist. LEXIS 143658. SAI had no involvement at all in the sale or marketing of AndroGel. (*See* Buckingham Aff. ¶¶ 7–17.)

Dated: March 16, 2015

Respectfully submitted,

/s/ William F. Cavanaugh, Jr.

William F. Cavanaugh, Jr. (*pro hac vice*)
Jonah M. Knobler (*pro hac vice*)
Scott C. Caplan (*pro hac vice*)
**PATTERSON BELKNAP WEBB**
**& TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
jknobler@pbwt.com
scaplan@pbwt.com

*Attorneys for Defendants AbbVie Inc., Abbott*
*Laboratories, Abbott Products, Inc., Solvay,*
*S.A., Solvay Luxembourg, S.A.R.L. f/k/a Solvay*
*Pharmaceuticals S.A.R.L., and Solvay*
*America, Inc.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2015, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered attorneys of record.

  /s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr.

*Attorney for AbbVie Inc., Abbott Laboratories, Abbott Products, Inc., Solvay, S.A., Solvay Luxembourg, S.A.R.L. f/k/a Solvay Pharmaceuticals S.A.R.L., and Solvay America, Inc.*

17