IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-01748 <br><br> Hon. Judge Matthew F. Kennelly |
| This document relates to: <br><br> MEDICAL MUTUAL OF OHIO, <br><br>             Plaintiff, <br><br> v. <br><br> ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY PHARMACEUTICALS, INC., SOLVAY S.A., UNIMED PHARMACEUTICALS, LLC, BESINS INC., BESINS S.A., AUXILIUM, INC., GLAXOSMITHKLINE LLC, OSCIENT PHARMACEUTICALS, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX COMMERCIAL PARTY LTD., ACRUX DDS PARTY LTD., ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC., <br><br>             Defendants. | No. 1:14-cv-08857 |

**SUPPLEMENTAL MEMORANDUM OF
DEFENDANTS ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX
COMMERCIAL PTY LTD., AND ACRUX DDS PTY LTD. IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFF MEDICAL MUTUAL OF OHIO'S
SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

ALLEGATIONS AGAINST LILLY ........................................................................1

ARGUMENT ...........................................................................................................2

I.     The SAC Does Not State A Civil RICO Claim Against Lilly ..........................2

    A.     The SAC Fails To Allege Two Or More Actionable Acts Of Mail Or Wire Fraud With The Particularity Required By Rule 9(b)..............................2

        1.     "Axiron TPP Formulary Access Enterprise" Allegations.......................3

        2.     "Axiron Peer Selling Enterprise" Allegations .......................................4

        3.     "Axiron Publication Enterprise" Allegations .........................................5

        4.     "Axiron DTC Enterprise" Allegations....................................................6

    B.     The SAC Fails To Allege That Lilly's Purported Conduct Induced Any Doctor To Prescribe Axiron To A MMO Insured And Induced MMO To Reimburse For That Prescription ...............................................................7

    C.     The SAC Does Not State A RICO Conspiracy Claim ...............................8

II.    The SAC Does Not State A Claim Under Any State Law, Including The Indiana Deceptive Consumer Sales Act....................................................................9

    A.     The Indiana DCSA Claim Is Not Based On Allegations Of Injury In Indiana........9

    B.     The Indiana DCSA Claim Is Not Based On Allegations Of A "Consumer Transaction"..........................................................................................10

    C.     The Indiana DCSA Claim Does Not Satisfy Rule 9(b) And Relies On Allegations Of Omissions And Concealment That Are Not Actionable ..............11

    D.     MMO Fails To Plead Actual Damages Caused By Lilly's Alleged Conduct Under The Indiana DCSA..................................................................11

    E.     The Indiana DCSA Claim Is Time-Barred .............................................12

    F.     MMO's Claims For Common Law Fraud, Negligent Misrepresentation, Unjust Enrichment, And Equitable Relief Also Fail As A Matter Of Law ..........13

CONCLUSION......................................................................................................15

CERTIFICATE OF SERVICE ...............................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J.'s Auto. Sales, Inc. v. Freet*,
    725 N.E.2d 955 (Ind. Ct. App. 2000) ...................................................................................12

*Banks v. Jamison*,
    12 N.E.3d 968 (Ind. Ct. App. 2014) ....................................................................................10

*Doe v. United Methodist Church*,
    673 N.E.2d 839 (Ind. Ct. App. 1996) ..................................................................................13

*Greg Allen Constr. Co. v. Estelle*,
    798 N.E.2d 171 (Ind. 2003) ................................................................................................14

*Holmes v. SIPC*,
    503 U.S. 258 (1992) ............................................................................................................14

*Hughes v. Chattem, Inc.*,
    818 F. Supp. 2d 1112 (S.D. Ind. 2011) ..............................................................................14

*Ind. Harbor Belt R.R. Co. v. Pub. Serv. Comm'n*,
    263 N.E.2d 292 (Ind. Ct. App. 1970) ..................................................................................10

*Indianapolis Raceway Park, Inc. v. Curtiss*,
    386 N.E.2d 724 (Ind. Ct. App. 1979) ..................................................................................14

*Indus. Dredging & Eng'g Corp. v. S. Ind. Gas & Elec. Co.*,
    840 F. 2d 523 (7th Cir. 1988) .............................................................................................14

*In re K-Dur Antitrust Litig.*,
    2008 WL 2660783 (D.N.J. Mar. 19, 2008) ...........................................................................9

*Kesling v. Hubler Nissan, Inc.*,
    997 N.E.2d 327 (Ind. 2013) ...........................................................................................10, 11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    295 F. Supp. 2d 30 (D.D.C. 2003) ........................................................................................9

*Luis v. Smith Partners & Assocs.*,
    2012 WL 5077726 (N.D. Ill. Oct. 18, 2012) .......................................................................15

*McKinney v. State*,
    693 N.E.2d 65 (Ind. 1998) ..................................................................................................11

*Midwest Title Loans, Inc. v. Ripley*,
  616 F. Supp. 2d 897 (S.D. Ind. 2009) ................................................................. 10

*Morgan v. Koch*,
  419 F.2d 993 (7th Cir. 1969) ............................................................................... 12

*Noah v. Enesco Corp.*,
  911 F. Supp. 305 (N.D. Ill. 1995) ....................................................................... 15

*Pitts v. Unarco, Inc.*,
  712 F.2d 276 (7th Cir. 1983) ............................................................................... 12

*In re Rezulin*,
  392 F. Supp. 2d 597 (S.D.N.Y. 2005) ................................................................... 9

*Ruse v. Bleeke*,
  914 N.E.2d 1 (Ind. Ct. App. 2009) ...................................................................... 14

*S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*,
  2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) ..................................................... 14

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
  782 F.3d 922 (7th Cir. 2015) ............................................................................... 13

*Teamsters Local 237 Welfare Fund v. Astrazeneca Pharm. LP*,
  2015 WL 4111826 (Del. Super. July 8, 2015) ....................................................... 9

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  2014 WL 7365872 (N.D. Ill. Dec. 23, 2014) ......................................................... 1

*Tolen v. A.H. Robins Co.*,
  570 F. Supp. 1146 (N.D. Ind. 1983) .................................................................... 12

*Trytko v. Hubbell, Inc.*,
  28 F.3d 715 (7th Cir. 1994) ................................................................................. 14

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010)................................................................................. 13

*W.H. Barber Co. v. Hughes*,
  63 N.E.2d 417 (Ind. 1945) .................................................................................... 9

*Wright-Moore Corp. v. Ricoh Corp.*,
  794 F. Supp. 844 (N.D. Ind. 1991), *aff'd*, 980 F.2d 432 (7th Cir. 1992)................. 10

*Young v. Harbor Motor Works, Inc.*,
  2009 WL 187793 (N.D. Ind. Jan. 27, 2009) ........................................................ 11

*In re Zyprexa Prods. Liab. Litig.*,
253 F.R.D. 69 (E.D.N.Y. 2008), *rev'd on other grounds*, *UFCW Local 1776 v.
Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010).........................................................13

**Statutes**

18 U.S.C. § 1962(c) .........................................................................................4, 5, 6, 7

18 U.S.C. § 1962(d) ...............................................................................................8, 9

Ind. Code § 24-5-0.5-2(a)(1)....................................................................................10

Ind. Code § 24-5-0.5-3(a) ........................................................................................11

Ind. Code § 24-5-0.5-4(a) ........................................................................................11

Ind. Code § 24-5-0.5-5(b)........................................................................................12

**Rules**

Fed. R. Civ. P. 9(b) .........................................................................................3, 4, 11

## INTRODUCTION

Defendants Eli Lilly and Company, Lilly USA, LLC, Acrux Commercial Pty Ltd., and Acrux DDS Pty Ltd. (collectively "Lilly") adopt Defendants' Joint Memorandum in Support of their Motion to Dismiss (the "Joint Memorandum") and submit this Supplemental Memorandum to highlight why Plaintiff Medical Mutual of Ohio's ("MMO") claims against Lilly should be dismissed.

MMO's original Complaint contained only a handful of allegations directed at Lilly. (Compl. ¶¶ 42, 56, 387-429.) After Lilly and the other Defendants moved to dismiss the Complaint, MMO chose not to defend its pleading but instead to amend it. Although MMO's Second Amended Complaint ("SAC") is voluminous (spanning 1359 paragraphs and 433 pages), it still lacks basic factual allegations suggesting that MMO has *any* claim against Lilly. Simply put, the SAC does not allege any facts that make it plausible that (1) Lilly engaged in predicate acts of mail or wire fraud required to state a claim for a violation of RICO, (2) Lilly conspired with its competitors and rivals in the industry to violate RICO, or (3) Lilly violated any applicable state law. Given the lack of factual allegations pertaining to Lilly and MMO's multiple opportunities to allege facts supporting its claim against Lilly, Lilly should not be subjected to MMO's ill-conceived effort to sue an entire industry.

## ALLEGATIONS AGAINST LILLY

The SAC alleges that, in March 2010, Eli Lilly and Company and Lilly USA, LLC, licensed a testosterone replacement therapy ("TRT") drug known as "Axiron" from Acrux Commercial Pty Ltd. and Acrux DDS Pty Ltd. (SAC ¶¶ 57, 612.) In November 2010, the U.S. Food and Drug Administration ("FDA") approved the sale of Axiron, by physician's prescription, to treat "abnormally low testosterone in men, a condition known as hypogonadism," *see In re Testosterone Replacement Therapy Prods. Liab. Litig.* ("*TRT*"), 2014 WL 7365872, at

*1 (N.D. Ill. Dec. 23, 2014). (SAC ¶¶ 57, 71, 844.) Lilly began selling Axiron in the first quarter of 2011. (SAC ¶¶ 71, 624, 792.)

The SAC alleges that, when Lilly began selling Axiron in 2011, the market for TRT prescription drugs already was "mature." (SAC ¶¶ 624, 792.) The SAC alleges that Lilly promoted Axiron for off-label use through four different RICO "enterprises," and conducted the affairs of each enterprise through multiple acts of mail and wire fraud. (SAC ¶¶ 612-62.) The SAC also alleges, when Lilly entered the mature market, Lilly also entered into a conspiracy with its competitors to violate RICO. (SAC ¶¶ 756-98.)

Despite its length, the SAC fails to identify *any* Axiron prescription for which MMO reimbursed. The SAC also does not identify *any* statement made by Lilly or at Lilly's behest that was allegedly false or misleading. The SAC likewise does not identify (1) *any doctor* who was induced by any alleged false statement to prescribe Axiron to a MMO beneficiary; (2) *any MMO insured* who was induced by any alleged false statement to fill an Axiron prescription and use Axiron; or (3) *any agent of MMO* who was induced by any allegedly false statement when deciding that MMO would pay for Axiron prescriptions. There also are nothing but vague and conclusory allegations of any agreement among Lilly and the other defendants to violate RICO—an essential factual element of MMO's claim of a RICO conspiracy among Lilly and the other Defendant groups.

## ARGUMENT

### I.    The SAC Does Not State A Civil RICO Claim Against Lilly

#### A.    The SAC Fails To Allege Two Or More Actionable Acts Of Mail Or Wire Fraud With The Particularity Required By Rule 9(b)

Defendants' Joint Memorandum explains how the SAC does not allege a predicate act of mail or wire fraud against any Defendant or Defendant group with the particularity required by

Rule 9(b). (Jt. Mem. at 12-13 & n.6, 21-23.) A closer examination of the limited number of allegations concerning Lilly shows just how threadbare MMO's RICO claims against Lilly actually are. The SAC does not allege a single actionable act of mail or wire fraud by Lilly with the particularity required by Rule 9(b), much less the pattern of actionable acts of mail or wire fraud that RICO requires. MMO's failure to plead facts concerning Lilly is particularly striking given (1) MMO's unprecedented ambition to sue nearly every company that has sold a TRT drug in the United States in the last 15 years, (2) the information it possesses about decisions it made to pay for certain TRT drugs, and (3) its multiple opportunities to plead a claim.

### 1.     "Axiron TPP Formulary Access Enterprise" Allegations

MMO asserts that, when Lilly began selling Axiron in 2011, Lilly created an "Axiron TPP Formulary Access Enterprise," including medical marketing firms and others, for the purpose of persuading MMO and other third party payors ("TPPs") to include Axiron on their formularies and pay for Axiron. (SAC ¶¶ 616-23.) MMO further alleges that Lilly conducted the enterprise's affairs through multiple acts of mail and wire fraud. (*Id.*)

The SAC, however, does not identify *any* meeting or communication between Lilly personnel and MMO concerning Axiron. Indeed, the SAC does not even allege specifically that MMO included Axiron on its formulary and paid for Axiron prescriptions. (SAC ¶ 37 (alleging only that "[a]t all times material hereto, MMO reimbursed for *one or more* of Defendants' drug products") (emphasis added).) The SAC does allege that, according to a marketing survey by the Zitter Group, Lilly personnel discussed the safety and efficacy of Axiron during meetings in 2012 with other TPPs. (SAC ¶ 620.) However, these hearsay allegations concerning *other TPPs* cannot support any claim against Lilly *by MMO*. Furthermore, the SAC does not identify any false or misleading statement allegedly made by Lilly personnel during these meetings; nor does it contend that these statements caused the TPPs to include Axiron on their formularies or pay for

Axiron. (*Id.*) Thus, the allegations fall far short of what is required under Rule 9(b). Because the SAC does not adequately allege that Lilly conducted the affairs of the "Axiron Formulary Access Enterprise" through multiple acts of mail and wire fraud, the SAC does not adequately plead a violation of 18 U.S.C. § 1962(c).

### 2. "Axiron Peer Selling Enterprise" Allegations

MMO asserts that Lilly also created an "Axiron Peer Selling Enterprise," including medical marketing firms and "peer-influencing physicians," for the purpose of marketing Axiron to prescribing physicians. (SAC ¶¶ 624-42.) MMO alleges that Lilly conducted this enterprise's affairs through multiple acts of mail and wire fraud, too. (*Id.*)

Although some of MMO's assertions against Lilly are based on allegations about several continuing medical education courses, the SAC does not allege that any physician who prescribed Axiron to a MMO insured ever attended these courses, much less relied upon any allegedly false information disseminated at these courses when deciding to prescribe Axiron (SAC ¶ 633-41.) For example, the SAC alleges that Lilly was responsible for a continuing medical education program in 2014 by AccelMed LLC. (SAC ¶¶ 633-35.) According to the SAC, the "Program Overview" allegedly used during the course stated that hypogonadism: "is associated with a well-documented increase in risk of mortality and detrimental effects on quality of life [including] loss of energy and libido, erectile dysfunction (ED), joint pain and stiffness, memory impairment, irritability, and depression"; "has links to age, obesity, type 2 diabetes, mellitus (T2DM), and metabolic syndromes"; and "remains an under diagnosed syndrome." (SAC ¶ 634.) Yet, the SAC does not expressly allege that these statements are false.[1] Moreover, it does not allege that these statements induced any doctor to prescribe Axiron

---

[1] MMO's claims are that Lilly and other defendants fraudulently depicted TRT drugs as safe and effective treatments for *normal* declines in testosterone associated with age and for

to a MMO insured for a medically inappropriate "off-label" condition or induced MMO to pay for an Axiron prescription. Because the SAC lacks particularized allegations concerning the who, what, when, where, and how of Lilly's supposed mail and wire fraud, the SAC does not adequately plead a violation of 18 U.S.C. § 1962(c) with respect to the conduct of the "Axiron Peer Selling Enterprise."

### 3. "Axiron Publication Enterprise" Allegations

Next, MMO asserts that Lilly created an "Axiron Publication Enterprise," including scientists, physicians, medical marketing firms, and others, for the purpose of publishing medical studies that would create the (allegedly false) impression that scientific research supported the prescription of Axiron for the treatment of normal "age-related" declines in testosterone and other off-label uses. (SAC ¶ 643.) MMO again alleges that Lilly conducted this enterprise's affairs through multiple acts of mail and wire fraud. (*Id.*)

Yet, the SAC contains no concrete allegations that support this assertion. The SAC refers to a series of exploratory studies and other clinical trials allegedly sponsored by Lilly to evaluate whether Axiron may be a safe and appropriate treatment for (1) low "sex drive and energy levels[,]" (2) "ejaculatory dysfunction[,]" and (3) patients who have responded "suboptimal[ly]" to TRT gel drugs "other than Axiron." (SAC ¶¶ 644-47.) But the SAC makes it clear that the results of these clinical trials have *not* been published. (SAC ¶¶ 646 ("no trial results have been published"), 647 ("[o]nce the (doubtless) favorable results for this study are published…").) Allegations concerning studies whose results are *unknown* at present and that have *not* been

---

diseases *other than* hypogonadism. But the Program Overview does not support that claim. The Program Overview simply states that cases of *abnormally low testosterone* (*i.e.*, hypogonadism) historically have been underdiagnosed, that they correlate with age, obesity, type 2 diabetes, mellitus (T2DM), and metabolic syndromes, that their symptoms include loss of energy and libido, erectile dysfunction, joint pain and stiffness, memory impairment, irritability, and depression. MMO does not actually allege that these statements are false, nor could it.

published or publicized obviously cannot support MMO's claim that Lilly has conducted the affairs of an "Axiron Publication Enterprise[,]" through a pattern of mail and wire fraud, to create an impression that scientific research supported off-label prescriptions of Axiron.

The only published study referenced in the SAC concerning Axiron is a multicenter, open-label, 120-day clinical trial of 155 men who were *diagnosed* with hypogonadism, *not* an off-label medical condition. (SAC ¶¶ 648-49.) A published clinical trial of Axiron's effect on men who were diagnosed with hypogonadism also provides no support at all for MMO's claims. In addition, there are no allegations that any doctor relied on this published study or that MMO relied on this study. Because the SAC does not adequately allege that Lilly conducted the affairs of the alleged "Axiron Publication Enterprise" through a pattern of mail and wire fraud, it fails to adequately plead a violation of 18 U.S.C. § 1962(c).

### 4. "Axiron DTC Enterprise" Allegations

Finally, MMO asserts that Lilly created an "Axiron DTC Enterprise," including advertising firms and others, for the purpose of developing television and print advertisements to promote Axiron. (SAC ¶¶ 652-53.) As with the other enterprises, MMO alleges that Lilly conducted the enterprise's affairs through multiple acts of mail and wire fraud. (*Id.*)

Yet, the SAC refers only to selected parts of three Axiron television commercials and a print advertisement and does not identify any false statement in the advertisements. The SAC likewise does not allege that a MMO insured ever (1) saw one of these advertisements, (2) was induced by the advertisement to request an Axiron prescription from a doctor, and (3) obtained an Axiron prescription for which MMO reimbursed. The SAC also does not allege that any of these advertisements were relied upon by any physician when deciding to prescribe Axiron to a MMO insured or by MMO when deciding to reimburse for Axiron. Simply put, none of the advertisements supports MMO's claim that Lilly has conducted the affairs of an "Axiron DTC

6

Enterprise" through acts of mail and wire fraud. Again, MMO has failed to plead a violation of 18 U.S.C. §1962(c) regarding the conduct of the alleged "Axiron DTC Enterprise."

### B. The SAC Fails To Allege That Lilly's Purported Conduct Induced Any Doctor To Prescribe Axiron To A MMO Insured And Induced MMO To Reimburse For That Prescription

The SAC also fails to allege that any act of mail or wire fraud by Lilly was a "but-for" and proximate cause of MMO's purported injuries. In particular, MMO fails to allege facts indicating that Lilly's conduct misled and induced (1) a doctor to write a medically inappropriate off-label prescription for Axiron or (2) MMO to reimburse for that Axiron prescription.

The SAC alleges that Lilly began selling Axiron in the first quarter of 2011—at a time when the market for TRT prescription drugs was "mature[.]" (SAC ¶¶ 624, 792.) Thus, the SAC admits that, before Lilly began selling Axiron, physicians had more than ten years of experience (1) making medical decisions about whether and under what circumstances to prescribe a TRT drug to a patient, and (2) observing the real-world consequences of their medical decisions for their patients' health. (SAC ¶¶ 10, 15; Declaration of William F. Cavanaugh, Jr. ("Cavanaugh Decl."), Exs. 1, 26, 28, 55 (public reports from 2000 through 2010).) TPPs, including MMO, also had similar experience paying for TRT drugs prescribed by physicians. Notwithstanding a substantial increase in TRT prescriptions from 2000 through 2010, MMO and other TPPs elected to reimburse for certain TRT drugs, whenever they were prescribed by a physician, without regard for whether the prescription was on-label or off-label. (*Id.*) Moreover, they did so because they viewed hypogonadism as a serious medical condition and did not want to do anything that would impede access to TRT drugs in circumstances where a physician deemed the TRT drug to be medically appropriate. (SAC ¶ 175.)

This sort of practical experience renders the SAC's vague and bald allegations of causation directed at Lilly highly implausible. Simply put, the SAC does not allege any facts

that plausibly suggest that any prudent doctor could have been deceived and induced by the alleged misrepresentations of Lilly to prescribe Axiron for the treatment of an off-label medical condition for which Axiron was not (in the doctor's experience and professional judgment) medically appropriate. Nor does it allege any facts that plausibly suggest that a prudent TPP could have been deceived and induced by the alleged misrepresentations of Lilly to cover TPP prescriptions that were not (in the experience and professional judgment of the prescribing doctor) medically appropriate. Without such allegations, the SAC fails to allege facts that make it plausible that an act of mail or wire fraud by Lilly was a "but-for" and proximate cause of MMO's purported injuries. (Jt. Mem. at 12-13 & n.6, 21-23.)

### C.    The SAC Does Not State A RICO Conspiracy Claim

In the SAC, MMO has asserted a claim against Lilly for conspiracy to violate RICO under 18 U.S.C. § 1962(d). Specifically MMO claims that Lilly conspired with other Defendant groups to promote awareness of testosterone deficiency and TRT drugs through an "unbranded advertising" campaign. (SAC ¶¶ 756-98, 1164-1229.) As explained in Defendants' Joint Memorandum (pp. 23-25), MMO's conspiracy claims must be dismissed because the SAC does not allege facts that make the conspiracy claim plausible as to any Defendant group. MMO's claim that Lilly conspired with other Defendant groups is particularly ill-pleaded and implausible. As the SAC admits, Lilly entered the market for TRT drugs in 2011, almost eleven years after the AbbVie Defendants introduced AndroGel, when the market for TRT drugs was "mature" and exceeding $2 billion in annual sales. The SAC itself makes clear that Lilly's objective was not to "make a bigger pie" but to compete for market share with incumbents. (SAC ¶¶ 181 (alleging that "growth" and "maintenance" of its market share was "critical" to Lilly), 614 (alleging that Lilly spent $122 million to promote Axiron in 2013 but realized only $178 million in sales).) There are no concrete allegations that Lilly ever agreed with any of its

competitors to engage in any conduct that violates RICO. Given the lack of factual allegations, MMO's claims of a conspiracy under § 1962(d) must be dismissed.

## II. The SAC Does Not State A Claim Under Any State Law, Including The Indiana Deceptive Consumer Sales Act

The SAC also asserts claims against Lilly under various state laws in Counts 32, 33, and 40 through 43. As discussed in Defendants' Joint Memorandum, the SAC fails to allege facts that could implicate the laws of any state other than Ohio, and it also fails to state any claim under Ohio law. (Jt. Mem. at 34-40.) However, because the SAC includes a specific claim directed only at Lilly based on the Indiana Deceptive Consumer Sales Act (the "DCSA") Ind. Code § 24-5-0.5 *et seq*. (SAC ¶¶ 1268-76), Lilly identifies the following additional reasons for dismissing MMO's state law claims under the DCSA.

### A. The Indiana DCSA Claim Is Not Based On Allegations Of Injury In Indiana

The SAC does not allege that MMO's purported injury occurred *in Indiana*. (SAC ¶ 1268-76.) Indeed, it is highly implausible that MMO, an Ohio corporation with its principal place of business in Ohio, could have been deceived or injured in Indiana.[2] Instead, MMO appears to claim the DCSA should be applied extraterritorially. Indiana law prohibits that result.

Indiana statutes typically are not applied extraterritorially to conduct and injuries occurring outside the state. *See, e.g., W.H. Barber Co. v. Hughes,* 63 N.E.2d 417, 424 (Ind.

---

[2] The SAC alleges that MMO reimbursed for unspecified TRT drugs for beneficiaries in 44 states, including Indiana. (SAC ¶ 38.) This does not alter the analysis. When a TPP alleges economic injuries sustained as a result of a purported tort, claims for such injuries are governed by the laws of the state where the TPP is headquartered, not where a TPP insured may have purchased a drug. *In re K-Dur Antitrust Litig.*, 2008 WL 2660783, at *5 (D.N.J. Mar. 19, 2008); *In re Rezulin*, 392 F. Supp. 2d 597, 611 n. 85 (S.D.N.Y. 2005) (same); *In re Lorazepam & Clorazepate Antitrust Litig.*, 295 F. Supp. 2d 30, 50 (D.D.C. 2003) (same); *Teamsters Local 237 Welfare Fund v. Astrazeneca Pharm. LP*, 2015 WL 4111826, at *6 (Del. Super. July 8, 2015) (same in TPP action alleging violations of state consumer protection statutes in connection with marketing of prescription heartburn medication).

9

1945); *Ind. Harbor Belt R.R. Co. v. Pub. Serv. Comm'n,* 263 N.E.2d 292, 298 (Ind. Ct. App. 1970); *accord Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991) ("Indiana has a general policy of refusing to give statutes extraterritorial effect.") (construing Indiana's Deceptive Franchise Practices Act), *aff'd*, 980 F.2d 432 (7th Cir. 1992). Indeed, federal courts sitting in Indiana have recognized that the extraterritorial application of Indiana's statutes can raise problems under the dormant Commerce Clause. *See Wright-Moore Corp.,* 794 F. Supp. at 860 ("[G]iving Indiana's franchise statute extraterritorial effect raises Commerce Clause issues."); *Midwest Title Loans, Inc. v. Ripley,* 616 F. Supp. 2d 897, 903, 908 (S.D. Ind. 2009) (finding that extraterritorial application of Indiana Uniform Consumer Credit Code is in violation of dormant Commerce Clause). Given the SAC's failure to allege an injury in Indiana, MMO's claim under the DCSA must be dismissed.

### B. The Indiana DCSA Claim Is Not Based On Allegations Of A "Consumer Transaction"

The DCSA applies only to a deceptive act, omission, or practice "in connection with a *consumer transaction*." Ind. Code § 24-5-0.5-2(a)(1) (emphasis added). A "consumer transaction," in turn, must constitute a sale or service "to a person *for purposes that are primarily personal, familial, charitable, agricultural, or household* …." *Id.* (emphasis added). This is consistent with the purpose of the Indiana DCSA to protect "*consumers*." *Kesling v. Hubler Nissan, Inc.,* 997 N.E.2d 327, 332 (Ind. 2013); *Banks v. Jamison,* 12 N.E.3d 968, 974 n.1 (Ind. Ct. App. 2014). Here, MMO does not allege a "consumer transaction."

For starters, the SAC does not actually allege that MMO ever reimbursed for any Axiron prescription. To the extent MMO did, it could only have done so for a commercial purpose— namely to fulfill contractual obligations to cover certain prescription drug expenses incurred by its insureds. Since MMO cannot allege that it reimbursed for any Axiron prescription for

purposes that were personal, familial, charitable, agricultural, or household in nature, it cannot state a DCSA claim.

### C. The Indiana DCSA Claim Does Not Satisfy Rule 9(b) And Relies On Allegations Of Omissions And Concealment That Are Not Actionable

MMO's DCSA claim rests on allegations that Lilly "knowingly and intentionally misrepresented" facts about Axiron. (SAC ¶¶ 1268-76.) Because the claim is that Lilly knowingly and intentionally engaged in deception, MMO must satisfy Rule 9(b); *Young v. Harbor Motor Works, Inc.,* 2009 WL 187793, at *6 (N.D. Ind. Jan. 27, 2009) (citing *McKinney v. State,* 693 N.E.2d 65, 67, 68 (Ind. 1998)). Yet, for the reasons stated above (pp. 2-7) and in the Joint Memorandum (pp. 12-13 & n.6, 21-23), MMO does not satisfy Rule 9(b).

MMO's claim also fails to the extent it relies on allegations of omissions or concealment. MMO appears to believe that it can sustain a DCSA claim based on alleged omissions. (SAC ¶¶ 652 (alleging that Lilly "concealed and minimized serious health risks"), 1268 (incorporating that allegation into the DCSA claim).) MMO is wrong. The Indiana DCSA does not apply to "nondisclosures" that are alleged to constitute a "deceptive act." In *Kesling*, the Indiana Supreme Court stated, "But even when a seller's failure to disclose known problems is sufficiently deceptive to be actionable on grounds such as fraud, it is not actionable as a 'deceptive act' *because a nondisclosure is not a 'representation' of any fact.*" 997 N.E.2d at 332 (interpreting Ind. Code § 24-5-0.5-3(a)) (emphasis added). Accordingly, MMO may not assert a claim under the DCSA based on Lilly's alleged conduct amounting to 'nondisclosure,' omission, or concealment.

### D. MMO Fails To Plead Actual Damages Caused By Lilly's Alleged Conduct Under The Indiana DCSA

MMO's DCSA claim also must be dismissed because MMO fails to allege "damages actually suffered as a consumer as a result of the deceptive act." *See* Ind. Code § 24-5-0.5-4(a).

In support of its DCSA claim, MMO incorporates all of the purported RICO claim allegations. (SAC ¶ 1268.)  Accordingly, Lilly adopts the Joint Memorandum's arguments (pp. 8-11), which establish that MMO fails to allege a cognizable RICO injury.

### E.     The Indiana DCSA Claim Is Time-Barred

Finally, MMO's claim is untimely.  The statute of limitations for a DCSA claim is two years from the occurrence of the allegedly deceptive act, Ind. Code § 24-5-0.5-5(b), and the discovery rule does *not* apply.  *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964-65 (Ind. Ct. App. 2000) ("Because the [DCSA] has an occurrence statute of limitation, rather than a discovery statute of limitation, the statutory period commences to run at the occurrence of the deceptive act.").  MMO filed its complaint on November 5, 2014, which is more than two years after Lilly began marketing Axiron and MMO began reimbursing for claims related to Axiron.

MMO cannot avoid the statute of limitations based on its generic allegations of fraudulent concealment (SAC ¶¶ 805-26).  Tolling the statute of limitations based on fraudulent concealment requires (1) affirmative acts of concealment on the part of the defendant; and (2) due diligence on the part of the plaintiff.  *See Morgan v. Koch*, 419 F.2d 993, 998-99 (7th Cir. 1969) (Indiana law narrowly defines doctrine of fraudulent concealment).  "The concealment must be active and intentional; passive silence is insufficient to trigger the fraudulent concealment doctrine, absent allegations that the defendant was in a continuing fiduciary relationship with the plaintiff."  *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146, 1151 (N.D. Ind. 1983) (citing *Pitts v. Unarco, Inc.*, 712 F.2d 276, 279 (7th Cir. 1983)).  Further, "there must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry."  *Id.* at 1152 (citations omitted).  Moreover, "[w]hen the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence, the statute of

limitations begins to run, regardless of any fraudulent concealment perpetrated by defendant." *Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct. App. 1996) (citations omitted).

Here, MMO fails to allege anything beyond conclusory assertions of concealment. Furthermore, there are no allegations indicating that MMO exercised reasonable care and due diligence in discovering its purported cause of action against Lilly. TPPs such as MMO have a "continuing duty … to inquire and be aware of the value of drugs for which they [are] paying." *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 76, 196 (E.D.N.Y. 2008), *rev'd on other grounds*, *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010). TPPs cannot extend a statute of limitations based on principles of equitable tolling or equitable estoppel absent factual allegations showing that extraordinary circumstances far beyond the plaintiff's control prevented timely filing despite the plaintiff's exercise of reasonable care and due diligence. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930-31 (7th Cir. 2015). Indeed, it is clear that plausible factual allegations of fraudulent concealment by Lilly are not possible here. When Lilly began selling Axiron in 2011, a number of individuals already had challenged and raised questions about the promotion of TRT drugs, making many of the same allegations MMO has made here. (*See* Jt. Mem. at 26-34; Cavanaugh Decl. Exs. 1, 26, 28, 55 (*qui tam* complaint and publications.) There can be no plausible factual allegation of fraudulent concealment when MMO plainly had reason to be aware of public filings and publications making the same charges as the SAC when Lilly entered the market.

### F.     MMO's Claims For Common Law Fraud, Negligent Misrepresentation, Unjust Enrichment, And Equitable Relief Also Fail As A Matter Of Law

As set forth in Defendants' Joint Memorandum, MMO's state law claims for common law fraud, negligent misrepresentation, unjust enrichment, and equitable injunctive relief fail under Ohio law. The claims also would fail under Indiana law.

***Common Law Fraud.*** Indiana's common law of fraud follows the same proximate cause standard that applies to MMO's RICO claims—a standard that requires a "direct relation between the injury asserted and the injurious conduct alleged." *Ruse v. Bleeke*, 914 N.E.2d 1, 10-11 (Ind. Ct. App. 2009) (citing *Holmes v. SIPC*, 503 U.S. 258, 268 (1992)). MMO's common law fraud claims fail to meet this standard for the reasons stated in Defendants' Joint Memorandum (pp. 14-20).

***Negligent Misrepresentation.*** MMO cannot, as a matter of law, bring an action for negligent misrepresentation under Indiana law because that claim is recognized "only in the context of a relationship between an employer and an employee." *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807, at *11 (S.D.N.Y. Sept. 30, 2009); *see also Trytko v. Hubbell, Inc.*, 28 F.3d 715, 720-21 (7th Cir. 1994) (holding that Indiana would only recognize the cause of action in an employment setting); *Indus. Dredging & Eng'g Corp. v. S. Ind. Gas & Elec. Co.*, 840 F. 2d 523, 526 (7th Cir. 1988) ("Indiana courts have consistently refused to extend … negligent misrepresentation beyond the employment context."); *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003) (negligent misrepresentation has been recognized "only in very limited employment cases").

***Unjust Enrichment.*** MMO's claim for unjust enrichment is predicated upon allegations of fraudulent conduct. (SAC ¶¶ 1341-51.) But the claims are not pled with particularity and, perhaps more importantly, the pleadings do not demonstrate "an actual wrong or misleading conduct[,]" which is required to support an unjust enrichment claim. *See Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124 (S.D. Ind. 2011) (dismissing an unjust enrichment claim based on allegations that the defendant drug manufacturer had misrepresented its drug's safety profile and received excessive revenues from the drug's sales); *Indianapolis Raceway Park, Inc. v.*

*Curtiss*, 386 N.E.2d 724, 726 (Ind. Ct. App. 1979) (discussing unjust enrichment and holding, "[a]bsent a wrong, intervention by equity is inappropriate").

**Equitable, Injunctive Relief.** Finally, MMO's last claim for equitable, injunctive relief fails because it is completely derivative and duplicative of MMO's other causes of action. *Noah v. Enesco Corp.,* 911 F. Supp. 305, 307 (N.D. Ill. 1995) ("An injunction is a remedy, not a cause of action."); *Luis v. Smith Partners & Assocs.,* 2012 WL 5077726, at *9 (N.D. Ill. Oct. 18, 2012) ("Injunctive relief is not a valid cause of action."). MMO identifies no statute or common law rule that would allow it to maintain an independent cause of action for permanent, mandatory injunctive relief. Given MMO's failure to state a claim under federal or state statutes or common law, there is no legal basis for this claim either.

## CONCLUSION

For all the reasons stated herein and in Defendants' Joint Memorandum, the Court should dismiss all of MMO's claims against Lilly for failure to state a claim.

Dated: July 31, 2015

Respectfully submitted,

/s/ David E. Stanley
David E. Stanley (*pro hac vice*)
Janet H. Kwuon (*pro hac vice*)
Robert D. Phillips, Jr. (*pro hac vice*)
Margaret M. Grignon (*pro hac vice*)
**REED SMITH LLP**
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 457-8000
Fax: (213) 457-8080
dstanley@reedsmith.com
jkwuon@reedsmith.com
rphillips@reedsmith.com
magrignon@reedsmith.com

*Attorneys for Defendants Eli Lilly and Company, Lilly USA, LLC, Acrux Commercial Pty Ltd., and Acrux DDS Pty Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered attorneys of record.

> */s/ David E. Stanley*
> David E. Stanley
> *Attorneys for Defendants Eli Lilly and Company,*
> *Lilly USA, LLC, Acrux Commercial Pty Ltd., and*
> *Acrux DDS Pty Ltd.*