IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 Master Docket Case No. 1:14-cv-01748 Hon. Judge Matthew F. Kennelly |
| This document relates to: MEDICAL MUTUAL OF OHIO, Plaintiff, v. ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY NORTH AMERICA, LLC, SOLVAY PHARMACEUTICALS SARL, SOLVAY, S.A., AUXILIUM, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX LIMITED, ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC., Defendants. | No. 1:14-cv-08857 |

**SUPPLEMENTAL MEMORANDUM OF THE ACTAVIS DEFENDANTS
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

STANDARD OF REVIEW .........................................................................................................4

ARGUMENT ............................................................................................................................5

I.     MMO's RICO And Fraud-Based Claims Must Be Dismissed For Failure To
Satisfy The Pleading Requirement Of Rule 9(b) ..................................................................5

II.    The SAC Fails To Allege Plausible Claims Under New Jersey's Consumer
Fraud Act Or The Insurance Fraud Protection Act ...........................................................10

    A.     MMO Cannot State A Plausible Claim Under The NJCFA .................................10

          1.     MMO Lacks Standing To Sue Under The NJCFA ...................................10

          2.     MMO Has Not Sufficiently Alleged Ascertainable Loss Or Causation ....12

    B.     MMO Cannot State A Plausible Claim Under The NJIFPA ................................13

    C.     The SAC Does Not State A Claim For Violation Of The Consumer
Protection Statutes Of Any Jurisdiction .............................................................14

    D.     MMO Cannot State A Plausible Claim For Unjust Enrichment ...........................14

    E.     The SAC Should Be Dismissed With Prejudice ...................................................15

CONCLUSION .......................................................................................................................15

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Alizadeh v. Tellabs, Inc.*,
No. 13 C 537,
2015 WL 557249 (N.D. Ill. Feb. 9, 2015)........................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................4, 5

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013)...............................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................4, 5

*Borsellino v. Goldman Sachs Gr. Inc.*,
477 F.3d 502 (7th Cir. 2007).................................................................................5

*Bracco v. Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
226 F. Supp. 2d 557 (D.N.J. 2002).....................................................................10

*Central Reg'l Employees Ben. Fund v. Cephalon, Inc.*,
No. 09-3418 (MLC),
2009 WL 3245485 (D.N.J. Oct. 7, 2009).............................................................11

*Chan v. Daimler AG*,
No. 11-5391 (JLL),
2012 WL 5827448 (D. N.J. Nov. 9, 2012).............................................................11

*Cooper v. Samsung Elecs. Am., Inc.*,
374 F. App'x 250 (3d Cir. 2010).........................................................................11

*Costigan v. CitiMortgage, Inc.*,
No. 10 Civ. 8776(SAS),
2011 WL 3370397 (S.D.N.Y. Aug. 2, 2011)..........................................................5

*District 1199P Health & Welfare Plan v. Janssen, L.P.*,
784 F. Supp. 2d 508 (D.N.J. 2011)...............................................................passim

*Enger v. Chicago Carriage Cab Co.*,
    No. 14-cv-02117,
    2014 WL 7450434 (N.D. Ill. Dec. 29, 2014)....................................14

*Government Employees Ins. Co. v. MLS Med. Gr. LLC*,
    No. 12-7281 (SRC),
    2013 WL 6384652 (D.N.J. Dec. 6, 2013).........................................5

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011)........................................................12

*Indiana/Kentucky/Ohio Reg'l Counsel of Carpenters*
*Welfare Fund v. Cephalon, Inc.*,
    No. 13-7167,
    2014 WL 2115498 (E.D. Pa. May 21, 2014)....................................8

*In re Actimmune Mktg. Litig.*,
    No. C08-02376 MHP,
    2010 WL 3463491 (N.D. Cal. Sep. 1, 2010)....................................5

*In re Actimmune Mktg. Litig.*,
    No. C08-02376 MHP,
    2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)..................................14

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    No. MDL 08-1934 PSG (AGRx),
    2009 WL 1703285 (C.D. Cal. June 17, 2009)..................................8

*In re Gerber Probiotic Sales Practices Litig.*,
    No. 12-835 (JLL),
    2014 WL 3446667 (D.N.J. July 11, 2014)......................................13

*In re Riddell Concussion Reduction Litig.*,
    No. 13-7585 (JBS/JS),
    2015 WL 224429 (D.N.J. Jan. 15, 2015)........................................12

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06–cv–5774 (SRC),
    2010 WL 2346624 (D.N.J. June 9, 2010)........................................15

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC),
    2009 WL 2043604 (D.N.J. July 10, 2009)..................................passim

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   No. 08-939 (DRD),
   2009 WL 2940081 (D.N.J. Sep. 10, 2009)......................................................12


*In re Yasmin & Yaz (Drospirenone) Mktg.,*
*Sales Practices & Prods. Liab. Litig.*,
   Nos. 3:09–md–02100–DRH–PMF, 3:09–cv–20071–DRH–PM,
   2010 WL 3119499 (S.D. Ill. Aug. 5, 2010)......................................................14


*Jepson, Inc. v. Makita Corp.*,
   34 F.3d 1321 (7th Cir. 1994)......................................................5, 6


*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011)......................................................5


*Nieman v. Nationwide Mut. Ins. Co.*,
   706 F. Supp. 2d 897 (C.D. Ill. 2010)......................................................14


*Nirmul v. BMW of N. Am., LLC*,
   No. 10-cv-5586 (SDW),
   2011 WL 5195801 (D.N.J. Oct. 31, 2011)......................................................11


*Southern Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*,
   No. 08 CV 5175 (KMW),
   2009 WL 3151807 (S.D.N.Y. Sep. 30, 2009)......................................................6, 11


*Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*,
   No. 07-3827 (GEB),
   2009 WL 2568199 (D.N.J. Aug. 13, 2009)......................................................10


*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010)......................................................5


*Sypala v. Mortgage Elec. Reg. Sys., Inc.*,
   655 F. Supp. 2d 451 (D.N.J. 2009)......................................................10


*Travelers Indem. Co. v. Cephalon*,
   32 F. Supp. 3d 538 (E.D. Pa. 2014)......................................................7

## State Statutes

New Jersey Consumer Fraud Act,
   N.J.S.A. § 56:8-1, *et seq.*......................................................passim

New Jersey Insurance Fraud Protection Act,
   N.J.S.A. § 17:33A-1, *et seq.*......................................................passim

N.J.S.A. § 2A:14-1......................................................................................................11

N.J.S.A. § 17:33A-7e..................................................................................................11

## **Federal Rules**

Fed. R. Civ. P. 8................................................................................................passim

Fed. R. Civ. P. 9................................................................................................passim

Fed. R. Civ. P. 12...................................................................................................4

## PRELIMINARY STATEMENT

Defendants Actavis plc, Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc., Actavis Pharma, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., and Anda, Inc. (the "Actavis Defendants") submit this Supplemental Memorandum in support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint ("SAC") filed by Plaintiff Medical Mutual of Ohio ("MMO"). As set forth in Defendants' Joint Motion to Dismiss, in which the Actavis Defendants join, the SAC fails to state plausible claims for relief against any defendant. MMO's claims against the Actavis Defendants also fail for the reasons below.

MMO broadly alleges that five separate defendant groups, all competitors alleged to manufacture and distribute testosterone replacement therapy ("TRT") drugs, engaged in allegedly fraudulent marketing schemes to promote their respective products for treatment of "off-label" (non-FDA approved) conditions. MMO, an insurer and third-party payor ("TPP"), claims that, as a result, it has paid the costs of TRT prescriptions written for its beneficiaries, including prescriptions for the Actavis Defendants' Androderm product, that were allegedly unnecessary, ineffective, or unsafe for the prescribed use.

Similar to MMO's deficient original complaint, apart from sweeping allegations of industry-wide marketing schemes, the SAC alleges comparatively little about the Actavis Defendants collectively and nothing specific as to the individual Actavis Defendants. Instead, the allegations against the Actavis Defendants are generic and lack the detail and particularity required by the pleading standards of Rules 8(a) and 9(b). The SAC lacks concrete allegations regarding any specific misrepresentations by (or attributable to) the Actavis Defendants, the time, place or content of any such misrepresentations, or the identity of the individuals who made any misrepresentations, and provides no detail as to what each or any Actavis Defendant did in furtherance of the alleged scheme. Nor does the SAC identify any representations

received and relied on by MMO, its pharmacy benefit managers or its pharmacy and therapeutics committees, or by any physician or patient. Indeed, while the SAC purports to identify a single patient who allegedly received an Androderm prescription, it does not allege whether that patient or his physician ever received, reviewed, or relied on any specific representations made by the Actavis Defendants or whether the prescription was off-label, unnecessary, or ineffective.

Based solely on generalized allegations, MMO asserts claims against the Actavis Defendants for: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (SAC ¶¶ 896-909, 966-79, 1036-49, 1124-43); (2) conspiracy to violate RICO (*id.* ¶¶ 1204-16); (3) violation of the New Jersey Consumer Fraud Act ("NJCFA") (*id.* ¶¶ 1281-90); (3) violation of the consumer protection statutes of 49 states (*id.* ¶¶ 1291-94); (4) violation of the New Jersey Insurance Fraud Protection Act ("NJIFPA") (*id.* ¶¶ 1295-1303); (5) common law fraud (*id.* ¶¶ 1323-31); (6) negligent misrepresentation (*id.* ¶¶ 1332-40); (7) unjust enrichment (*id.* ¶¶ 1341-51); and (8) equitable relief (*id.* ¶¶ 1352-59). As set forth in Defendants' Joint Memorandum, MMO's claims fail because, among other reasons, MMO has not alleged facts to support injury-in-fact or causation to establish Article III standing or RICO standing, MMO's RICO and state-law claims are time-barred, and MMO cannot bring statutory or common law claims under the laws of states other than Ohio. *See* Joint Memo. at 8-21, 25-34, 35-38, 39.

MMO's claims against the Actavis Defendants are also subject to dismissal for the following additional reasons. First, MMO's fraud-based claims – for violations of RICO, the NJCFA, the NJIFPA, common law fraud, and negligent misrepresentation – fail to describe the alleged conduct of the Actavis Defendants with the particularity required by Rule 9(b). Second, MMO lacks statutory standing to assert a claim under the NJCFA, and it has failed to sufficiently allege an ascertainable loss caused by the Actavis Defendants. Third, MMO's NJIFPA is

deficient because the SAC fails to identify a single specific statement made by the Actavis Defendants to MMO or an insurance claim that MMO reimbursed as a result, and, thus, does not state a plausible claim for relief under Rule 8(a). Fourth, MMO has failed to allege a plausible claim for relief under any jurisdiction's consumer protection statutes or for unjust enrichment.

## BACKGROUND[1]

MMO is an Ohio insurance company that reimburses the medical costs, including prescription drug expenses, of its beneficiaries. (*See* SAC ¶ 36.) The Actavis Defendants allegedly manufactured and/or distributed the TRT drug Androderm. (*See id.* ¶¶ 72, 663.)

MMO alleges that the collective Defendants engaged in similar marketing schemes to create a disorder – labeled "Andropause," "Low T," or low testosterone – and expand the diagnoses of hypogonadism. (*Id.* ¶¶ 1-2, 4-16, 24.) Specifically, MMO alleges that Defendants marketed TRT drugs for off-label uses and that Defendants' TRT drugs were ineffective, unsafe, or otherwise more expensive than alternative drugs for those uses. (*Id.* ¶¶ 17-22.) MMO claims that these off-label marketing practices improperly: (1) convinced patients that they could benefit from TRT drugs; (2) caused physicians to write prescriptions for TRT drugs; (3) caused MMO and other TPPs to include TRT drugs on their formularies without restriction; and (4) caused MMO to reimburse claims for TRT drugs that were unnecessary, ineffective, and/or unsafe for the prescribed off-label uses and pay for medical services for unnamed beneficiaries that may result from adverse events associated with TRT drug use. (*Id.* ¶¶ 25-30.)

As to the Actavis Defendants, the SAC makes only sweeping and conclusory allegations of misconduct. MMO baldly alleges that the Actavis Defendants formed four enterprises to promote Androderm for off-label use, but provides almost no detail regarding these alleged

---

[1]     Additional background regarding MMO's SAC is set forth in the Defendants' Joint Memorandum, which the Actavis Defendants have joined and which they incorporate by reference herein.

schemes or their participants.  (SAC ¶¶ 667-70, 671-76, 677-83, 684-99.)  MMO claims that the

Actavis Defendants:  (1) developed an "Androderm TPP Formulary Access Enterprise" to

provide false and misleading materials to TPP pharmacy directors and P&T Committees to

convince them to add Androderm as a formulary drug (*id.* ¶ 667); (2) participated in an

"Androderm Peer Selling Enterprise" to promote Androderm through the use of seminars,

speaking events and other presentations and publications (*id.* ¶ 671); (3) created an "Androderm

Publication Enterprise" through which they convinced physicians and researchers to publish

articles promoting off-label use of Androderm (*id.* ¶ 678); and (4) engaged in an "Androderm

DTC (Direct-to-Consumer) Enterprise" to promote off-label use of Androderm directly to

consumers (*id.* ¶ 684).  MMO's allegations against the Actavis Defendants fall short of both the

pleading standards under Rule 8(a) and Rule 9(b).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a) and 12(b)(6), a complaint must be dismissed for failure to state

a claim upon which relief may be granted where it fails to set forth sufficient factual allegations

to support a plausible right to recovery.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In assessing a motion to dismiss, the

Court must ignore allegations that merely offer "labels and conclusions," "'a formulaic recitation

of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual

enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  The Court

may credit only allegations that are pled with sufficient factual content to raise a plausible, not

merely a "probable," right to recovery.  *Id.*  Where "the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n] – that the pleader is entitled to relief'" and must be dismissed.  *Id.* at 678-79.

The Seventh Circuit "ha[s] interpreted *Twombly* and *Iqbal* to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint," recognizing that "[t]he required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616-617 (7th Cir. 2011) (citations and internal quotation marks omitted). "A more complex case . . . will require more detail, both to give the opposing party notice of what the case is about and to show how . . . the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Moreover, because MMO's claims for relief sound in fraud, those claims must be pled with particularity under Rule 9(b). *See Borsellino v. Goldman Sachs Gr. Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2010 WL 3463491, at *9 (N.D. Cal. Sep. 1, 2010) (applying Rule 9(b) to fraud-based claims alleging off-label marketing). At a minimum, Rule 9(b) "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (internal citations and quotation marks omitted).

## ARGUMENT

### I.     MMO's RICO And Fraud-Based Claims Fail To Satisfy Rule 9(b)

MMO's statutory claims under RICO, the NJCFA, and the NJIFPA, and its common law claims for fraud and negligent misrepresentation all sound in fraud and are subject to the heightened pleading requirement of Rule 9(b). *See Jepson*, 34 F.3d at 1327; *Gov't Employees Ins. Co. v. MLS Med. Gr. LLC*, No. 12-7281 (SRC), 2013 WL 6384652, at *8 (D.N.J. Dec. 6, 2013) (dismissing NJIFPA claim "for failure to meet even the basic pleading requirement of Rule 8(a), much less the heightened standard applicable to fraud claims"); *Costigan v. CitiMortgage, Inc.*, No. 10 Civ. 8776(SAS), 2011 WL 3370397, at *9 (S.D.N.Y. Aug. 2, 2011)

(dismissing NJCFA claim under Rule 9(b)); *In re Schering-Plough Corp. Intron/Temodar Cons. Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at \*24-26, 32-33 (D.N.J. July 10, 2009) (dismissing RICO, fraud, and negligent misrepresentation claims under Rule 9(b)).

MMO does not satisfy Rule 9(b); it asserts generic allegations of fraudulent marketing enterprises and pleads no concrete, particularized facts as to the Actavis Defendants' alleged conduct or its interactions with MMO, physicians, or patients.  Like similar TPP plaintiffs that have alleged off-label marketing based claims, MMO also fails to allege the details of a pattern of racketeering activity based on predicate acts of mail or wire fraud under RICO with the requisite particularity.  *See District 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527-28 (D.N.J. 2011) (dismissing TPP's RICO and fraud claims based on alleged off-label marketing for failure to satisfy Rule 9(b)); *Southern Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175 (KMW), 2009 WL 3151807, at \*4 (S.D.N.Y. Sep. 30, 2009) (same); *In re Schering-Plough*, 2009 WL 2043604, at \*24-26 (same).

First, the SAC makes no effort to distinguish the specific alleged conduct of each of the Actavis Defendants and simply lumps all six entities together.  This deficiency alone warrants dismissal.  *See Jepson, Inc.*, 34 F.3d at 1328 (lumping corporations together does not satisfy Rule 9(b)); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A complaint based on a theory of collective responsibility must be dismissed.").

Second, the SAC does not allege the existence of any specific misrepresentations made by (or attributable to) the Actavis Defendants, when or where any such misrepresentations were made, the manner in which they were made, or the specific individuals who made them. Critically, MMO fails to identify a single patient or physician who received an alleged misrepresentation from the Actavis Defendants regarding Androderm, or a single specific and

particular representation or statement that MMO itself received from the Actavis Defendants. *See Janssen*, 784 F. Supp. 2d at 531 ("Plaintiffs do not plead that they, or any of their prescribing doctors, received a misrepresentation"); *In re Schering-Plough*, 2009 WL 2043604, at *26, 33 (TPPs "plainly failed" to satisfy Rule 9(b) for RICO claims where "[t]hey never once allege that any of the Defendants communicated with any of the individual consumer or [TPP] plaintiffs").

Instead, the SAC cites only to a few alleged statements contained on Actavis related websites (*see* SAC ¶¶ 673, 682, 686-90, 695), and two studies that allegedly "published selective results" (*id.* ¶ 679). Yet, MMO does not identify when those statements were made, how those statements or studies were fraudulent, whether those statements or studies were provided to or seen by MMO, its beneficiaries, or any prescribing physician, or how those statements and studies specifically impacted MMO or any particular physician or beneficiary. *See Travelers Indem. Co. v. Cephalon*, 32 F. Supp. 3d 538, 551 (E.D. Pa. 2014) ("allegations that at some point in the last thirteen years unidentified members of the defendants' sales team made unspecified false statements or misrepresentations about [the subject drugs] to unidentified doctors somewhere in the United States are insufficient under even a generous construction of Rule 9(b)"); *Janssen*, 784 F. Supp. 2d at 528.

Similarly, while the SAC devotes numerous paragraphs to generically describing the alleged TPP Formulary Access, Peer Selling, Publication, and DTC Enterprises, it fails to allege the specific details of those enterprises. For example, MMO alleges that the enterprises were comprised of the Actavis Defendants, physicians, and medical marketing firms. (*See* SAC ¶¶ 667, 671, 678, 684.) But, the SAC identifies only six physicians and two alleged marketing firms with any alleged connection to the Actavis Defendants, and provides no detail whatsoever as to any specific conduct by or the role of those physicians and firms in the alleged enterprises.

(*See id.* ¶¶ 164, 208, 225.)  Nor does the SAC plead with any specificity one particular seminar, continuing medical education program, publication (whether ghostwritten or not), or other medium through which the alleged Actavis enterprises allegedly disseminated false representations regarding Androderm.  Instead, MMO relies on general allegations regarding unspecific information disseminated to unnamed individuals through unidentified programs, publications, and direct advertisements.  And, although MMO contends that the Actavis Defendants provided benefits to "thought leaders" to promote off-label use of Androderm, it does not identify the "thought leaders," the specific conduct of the "thought leaders," or provide any detail as to what benefits were provided, who provided them, or how the recipients acted upon receiving them. *See Indiana/Kentucky/Ohio Reg'l Counsel of Carpenters Welfare Fund v. Cephalon, Inc.*, No. 13-7167, 2014 WL 2115498, at *5 (E.D. Pa. May 21, 2014) ("it is simply insufficient to allege off-label promotion . . . without describing the 'who, what, when, where and how' of any scheme to defraud"); *Janssen*, 784 F. Supp. 2d at 528 (rejecting general allegations of fraudulent  programs and dissemination of false information through alleged thought leaders); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285, at *6 (C.D. Cal. June 17, 2009) ("Rule 9(b) requires TPPs to explain how specific information booklets, CME programs, and promotional materials that [were] provided to physicians were false or deceptive").

Third, MMO's fraud-based claims are deficient because the SAC does not provide any detail regarding MMO's alleged injuries or describe how the Actavis Defendants caused such alleged injuries.  While MMO lists the alleged total of payments made by it for all defendants' TRT drugs over an almost 14 year period (SAC ¶ 38), it does not identify, or even suggest, which, if any, of those payments were for Androderm prescriptions, which, if any, of those

payments were for "off-label" uses, which, if any, of those payments were for a prescription that was unnecessary, ineffective, or unsafe, or which, if any, of those payments were for a prescription traceable to a specific representation or act of the Actavis Defendants.

MMO's sole allegation as to a specific patient - that it allegedly reimbursed prescriptions for "Androgel and Androderm" for Patient 2 between 2007 and 2011 (SAC ¶ 831) - is similarly deficient. Indeed, the SAC does not allege any concrete facts regarding the basic details such as the number of Androderm prescriptions it reimbursed for Patient 2, the specific costs of the Androderm prescription or prescriptions, whether the prescription was for off-label use, or was unsafe, unnecessary, or ineffective, or whether the patient or the named physician ever received a specific representation from the Actavis Defendants, yet alone a representation that caused them to seek out or issue the Androderm prescription.

Simply put, the SAC fails because it does not allege or identify a single specific payment made by MMO for an Androderm prescription that was actually unnecessary, ineffective, or unsafe (*see Janssen*, 784 F. Supp. 2d at 522-22 (finding no injury where plaintiffs "d[id] not identify any [beneficiary] who received an ineffective or unsafe off-label Risperdal prescription"); *In re Schering-Plough*, 2009 WL 2043604, at *13), does not identify a physician who issued a prescription or an MMO beneficiary who sought a prescription as a result of or in reliance on the Actavis Defendants' alleged marketing practices, and does not identify a specific Actavis representation made to, received by, or relied upon by MMO in placing Androderm on its formulary (*see Janssen*, 784 F. Supp. 2d at 530 ("Plaintiffs do not plead that they, or any of their prescribing doctors, . . . relied on [Defendant's] misrepresentation in deciding to prescribe Risperdal or in deciding to place Risperdal on their formulary")). MMO's allegations against the Actavis Defendants "resemble prefabricated claims lacking any detail." *In re Schering-Plough*,

2009 WL 2043604, at *25-26.  As such, MMO's RICO and fraud-based claims should be dismissed because they do not satisfy the heightened pleading requirement of Rule 9(b).

## II.  The SAC Fails To Allege Plausible Claims Under the NJCFA or the NJIFPA

MMO cannot assert claims under the state consumer protection and insurance fraud statutes of states other than Ohio pursuant to applicable choice-of-law rules and principles of standing.  *See* Joint Memo. at 35-36.  Nevertheless, even assuming it could assert claims against the Actavis Defendants under the NJCFA and the NJIFPA, MMO's claims still fail.[2]

### A.  MMO Cannot State A Plausible Claim Under The NJCFA

The NJCFA prohibits fraud in the sale or advertisement of merchandise.  *See* N.J.S.A. § 56:8-1, *et seq.*  Under the NJCFA, MMO must allege that: (1) defendants engaged in unlawful conduct; (2) it suffered an ascertainable loss; and (3) the defendants' alleged unlawful conduct caused the alleged loss.  *See Sypala v. Mortgage Elec. Reg. Sys., Inc.*, 655 F. Supp. 2d 451, 457 n.15 (D.N.J. 2009).  A consumer suffers an "ascertainable loss" when it receives something of a lesser value than what was promised.  *Id.* at 437 (citing cases).

### 1.  MMO Lacks Standing To Sue Under The NJCFA

MMO lacks standing to seek relief under the NJCFA because it is not a consumer.  *See Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827 (GEB), 2009 WL 2568199, at *5 (D.N.J. Aug. 13, 2009); *Bracco v. Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002).  An entity such as MMO has standing as a "consumer" only if it directly uses the goods at issue.  *See In re Schering-Plough*, 2009 WL 2043604, at *32.

In *In re Schering-Plough*, the court dismissed TPP plaintiffs' NJCFA claim based on allegations of off-label marketing similar to those asserted here because the TPPs did not

---

[2]      For the reasons set forth in Defendants' Joint Memorandum, MMO's NJCFA claim and its NJIFPA claim are time-barred by the 6-year statutes of limitations applicable to such claims.  *See* Joint

purchase the prescription drugs for their own consumption; instead, the TPPs paid for the drugs for their beneficiaries or reimbursed the beneficiaries' purchases. *Id.* at *31. Thus, the TPPs lacked standing because they did not consume the prescription drugs, but "serve[d] as middlemen or insurers, paying all or part of the cost of a beneficiary's drugs . . . ." *Id.* at *32. Other courts have similarly held that a TPP may not bring NJCFA claims. *See Cen. Reg'l Employees Ben. Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009) ("[b]ecause [TPPs] do not use or consume prescription medications themselves, they are not 'consumers' within the meaning of the NJCFA"); *Southern Ill. Laborers*, 2009 WL 3151807, at *9-10 ("[TPP] is not a consumer within the meaning of the [NJCFA]"). MMO admits that it is an insurer, that it does not use the prescription drugs at issue, and that it pays for or reimburses prescription drugs purchased by or for its beneficiaries. (*See* SAC ¶ 36.) As such, MMO is not a "consumer" and lacks standing under the NJCFA.

MMO also lacks standing because the NJCFA does not apply to transactions outside of New Jersey. *See Chan v. Daimler AG*, No. 11-5391 (JLL), 2012 WL 5827448, at *10-11 (D. N.J. Nov. 9, 2012). MMO is an Ohio entity that does not allege any direct loss or injury that it has suffered in New Jersey. That MMO alleges that some of the Actavis Defendants have a principal place of business in New Jersey is not enough to support standing. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010); *Nirmul v. BMW of N. Am., LLC*, No. 10-cv-5586 (SDW), 2011 WL 5195801, at *5 (D.N.J. Oct. 31, 2011).

Memo. at 39; *see also* N.J.S.A. § 2A:14-1; N.J.S.A. § 17:33A-7e.

### 2. MMO Has Not Sufficiently Alleged Ascertainable Loss Or Causation

All of MMO's claims fail because MMO has not sufficiently alleged causation or a cognizable injury sufficient to support Article III standing or to state any plausible claims for relief. *See* Joint Memo. at 8-21. MMO's NJCFA claim fails for the same reasons.

First, MMO has not sufficiently alleged an "ascertainable loss." *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011). Under the NJCFA, a plaintiff must plead specific facts to quantify the difference in value between the promised product and the product received. *See id.* While MMO has identified a single patient, Patient 2, who allegedly received Androderm (SAC ¶ 831), the SAC does not itemize the specific cost of the alleged Androderm prescription obtained by Patient 2 or set forth how much MMO paid for that prescription. *See In re Riddell Concussion Reduction Litig.*, No. 13-7585 (JBS/JS), 2015 WL 224429, at *13 (D.N.J. Jan. 15, 2015) (dismissing claim where "Plaintiffs have not alleged where they purchased the product at issue, how much they paid, and when they were exposed to Defendants' alleged misrepresentations"). MMO fails to explain how it calculated its alleged reimbursement of Patient 2, or how the reimbursement sum was greater than what MMO would have paid absent the alleged conduct. *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939 (DRD), 2009 WL 2940081, at *13 (D.N.J. Sep. 10, 2009) ("Plaintiffs fail to allege . . . how much they paid for the HD DVD Players; and how much regular DVD players cost at the time. . . ."). Moreover, the SAC fails to allege the existence of a single Androderm prescription that MMO reimbursed that was ineffective, unnecessary, or unsafe as to a specific beneficiary. And, to the extent the SAC claims losses related to reimbursement of unidentified patients, those claims fail because vague allegations of reimbursement of unnamed beneficiaries are insufficient to state an ascertainable loss. *See Janssen*, 784 F. Supp. 2d at 521-22, 530; *In re Schering-Plough*, 2009 WL 2043604, at *31. MMO has alleged no more than a hypothetical or

illusory loss and the Court should dismiss its NJCFA claim. *See In re Gerber Probiotic Sales Pracs. Litig.*, No. 12-835 (JLL), 2014 WL 3446667, at *2-3 (D.N.J. July 11, 2014).

Second, MMO cannot demonstrate that the Actavis Defendants caused any alleged ascertainable loss. *See* Joint Memo. at 14-20. The SAC does not identify: (1) how, or if, any of MMO's beneficiaries sought prescriptions for Androderm as a result of the alleged marketing conduct of the Actavis Defendants; (2) how, or if, any prescribing physicians received and relied on specific representations of the Actavis Defendants in prescribing Androderm to MMO's beneficiaries; (3) how, or if, MMO received and relied on a specific representation from the Actavis Defendants in deciding to list Androderm on its formulary; or (4) which, if any, specific prescriptions for Androderm paid for by MMO were for off-label uses and were ineffective, unnecessary, or unsafe. Simply put, MMO's theory of causation "is too speculative and attenuated to be cognizable." *Janssen*, 784 F. Supp. 2d at 530-31; Joint Memo. at 14-20.

### B.  MMO Cannot State A Plausible Claim Under The NJIFPA

MMO's NJIFPA claim does not satisfy Rule 8(a) and fails to set forth a plausible claim for relief. The NJIFPA "prohibits the presentation of 'any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains false or misleading information concerning any fact or thing material to the claim.'" *Gov't Employees Ins. Co.*, 2013 WL 6384652, at *7 (quoting N.J.S.A. § 17:33A-4a(1)).

The SAC does not allege that MMO reimbursed any identifiable prescription or claim based on a specific false or misleading statement made to it by the Actavis Defendants. *See id.* at *8. The SAC does not state what, if any, false or misleading information was presented by the Actavis Defendants to MMO or what, if any, false or misleading information MMO relied upon or caused it to pay for a particular prescription for Androderm. *See id.* (dismissing NJIFPA

claim because complaint "contains no claim-specific allegation of fraud" and "presents no claim-by-claim analysis" as to specific allegedly fraudulent statements). Accordingly, MMO has not pled facts supporting a plausible claim for relief under the NJIFPA.

### C. The SAC Does Not State A Claim For Violation Of The Consumer Protection Statutes Of Any Jurisdiction

MMO purports to assert claims under the consumer protection statutes of 49 states, the District of Columbia, and Puerto Rico. *See* SAC ¶¶ 1291-94. It cannot do so. First, choice-of-law principles mandate that Ohio law applies to MMO's state law claims and, therefore, the state statutory claims for states other than Ohio should be dismissed. *See* Joint Memo. at 35-36. And, MMO's claims under the Ohio Consumer Sales Practices Act fail as a matter of law. *See id.* at 37-39.

Second, as an Ohio entity, MMO lacks standing to assert claims under state statutes and common law other than Ohio law. *See In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (dismissing state statutory claims for all states lacking a representative plaintiff that had standing to assert claims thereunder); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, Nos. 3:09–md–02100–DRH–PMF, 3:09–cv–20071–DRH–PM, 2010 WL 3119499, at *12 n.12 (S.D. Ill. Aug. 5, 2010) (considering common law claims under the law of the state in which Plaintiffs resided).

Third, MMO's mere recitation of state statutes is insufficient because such a "'catch-all' listing of statutes does not meet the most basic pleading requirements." *Janssen*, 784 F. Supp. 2d at 531; *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010).

### D. MMO Cannot State A Plausible Claim For Unjust Enrichment

MMO's unjust enrichment claim also fails because none of the underlying alleged fraudulent conduct is actionable. *See Enger v. Chicago Carriage Cab Co.*, No. 14-cv-02117,

2014 WL 7450434, at *4 (N.D. Ill. Dec. 29, 2014) (dismissing unjust enrichment claim based on alleged conduct underlying other equally futile claim); *Central Reg'l Employees*, 2010 WL 1257790, at *5 (same). "Having failed to allege a violation of [its] rights under any cognizable theory of relief, . . . [MMO] do[es] not establish how it would work an injustice for [the Actavis Defendants] to retain the money [allegedly] paid by . . . [MMO] for the Subject Drugs." *In re Schering Plough*, No. 2:06–cv–5774 (SRC), 2010 WL 2346624, at *12 (D.N.J. June 9, 2010).

## E. The SAC Should Be Dismissed With Prejudice

The Court should dismiss the SAC with prejudice. MMO has not cured any of the deficiencies of the original complaint, demonstrating that it simply cannot allege facts supporting its claims. As such, the SAC should be dismissed with prejudice and without leave to amend. *See Alizadeh v. Tellabs, Inc.*, No. 13 C 537, 2015 WL 557249, at *16 (N.D. Ill. Feb. 9, 2015).

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Joint Memorandum in Support of their Motion to Dismiss, the Actavis Defendants respectfully request that the Court: (1) dismiss with prejudice all claims asserted against the Actavis Defendants in the SAC; and (2) grant such other relief as the Court deems just and necessary.

Dated:   July 31, 2015                          Respectfully submitted,


By:   */s/ James W. Matthews*
        James W. Matthews (*pro hac vice*)
        Robert W. Sparkes, III (*pro hac vice*)
        K&L GATES LLP
        State Street Financial Center
        One Lincoln Street
        Boston, MA 02111
        Tel:  (617) 261-3100
        Fax:  (617) 261-3175
        E-mail: james.matthews@klgates.com
        E-mail: robert.sparkes@klgates.com

        *Counsel for Defendants Actavis plc, Actavis, Inc.,*
        *Actavis Pharma Inc., Watson Pharmaceuticals,*
        *Inc., Watson Laboratories, Inc. and Anda, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed through the Electronic Court Filing system on July 31, 2015 and a copy thereof will be sent electronically to the registered recipients and counsel of record as identified on the Notice of Electronic Filing.


*/s/ James W. Matthews*
James W. Matthews