IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-01748 <br><br> Hon. Judge Matthew F. Kennelly |
| This document relates to: <br><br> MEDICAL MUTUAL OF OHIO, <br><br>         Plaintiff, <br><br> v. <br><br> ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY PHARMACEUTICALS, INC., SOLVAY, S.A., UNIMED PHARMACEUTICALS, LLC, BESINS INC., BESINS S.A., AUXILIUM, INC., GLAXOSMITHKLINE LLC, OSCIENT PHARMACEUTICALS, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX COMMERCIAL PARTY LTD., ACRUX DDS PARTY LTD., ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC. WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC., <br><br>         Defendants. | No. 1:14-cv-08857 |

**ABBVIE DEFENDANTS' SUPPLEMENTAL REPLY
IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

8251976

## TABLE OF CONTENTS

Page

I.   MMO HAS NOT SUFFICIENTLY PLED RICO INJURY. ...............................................1

    A.   MMO Was Not Injured In Its Own "Business or Property." ....................................1

    B.   MMO Fails To Plead Concrete Facts Showing That It Paid
        For A Single AndroGel Prescription That Was
        "Medically Inappropriate." ....................................................................................3

II.  MMO HAS NOT SUFFICIENTLY PLED A CAUSAL CONNECTION
    BETWEEN ITS INJURY AND ABBVIE'S ALLEGED PREDICATE ACTS. .................4

III. MMO'S STATE-LAW CLAIMS FAIL. ...........................................................................5

IV.  THE COURT LACKS JURISDICTION OVER SOLVAY, S.A. AND SAI......................6

CONCLUSION.................................................................................................................7

8251976

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Gen. Hosp. v. Philip Morris*,
228 F.3d 429 (3d Cir. 2000)............................................................................................3

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
493 F.3d 841 (7th Cir. 2007) ..........................................................................................6

*BCS Servs. v. Heartwood 88, LLC*,
637 F.3d 750 (7th Cir. 2011) ..........................................................................................3

*Bridge v. Phoenix Bond & Indemnity Co.*,
553 U.S. 639 (2008) ........................................................................................................4

*In re Bridgestone/Firestone Inc.*,
155 F. Supp. 2d 1069 (S.D. Ind. 2001)...........................................................................4

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) ..........................................................................................7

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ..........................................................................................6

*Comm. Union Assurance Co. PLC v. Milken*,
17 F.3d 608 (2d Cir. 1994)..............................................................................................1

*Conn v. Zakharov*,
667 F.3d 705 (6th Cir. 2012) ..........................................................................................7

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
2008 U.S. Dist. LEXIS 103526 (D.N.J. Dec. 23, 2008).................................................4

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
784 F. Supp. 2d 508 (D.N.J. 2011) .................................................................................4

*Emery v. Am. Gen. Fin.*,
134 F.3d 1321 (7th Cir. 1998) ........................................................................................5

*Gibbs v. Abbott Labs., Inc.*,
2001 U.S. Dist. LEXIS 20411 (N.D. Ill. Dec. 5, 2001).................................................5

*Gomez v. Wells Fargo Bank, N.A.*,
676 F.3d 655 (8th Cir. 2012) ..........................................................................................1

*Health Care Serv. Corp. v. Olivares*,
2011 U.S. Dist. LEXIS 117750 (E.D. Tex. Sept. 2, 2011) .........................................1, 2

ii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Int'l Bhd. of Teamsters, Local 734 v. Philip Morris Inc.*,
196 F.3d 818 (7th Cir. 1999) ..............................................................................................1, 2

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*,
634 F.3d 1352 (11th Cir. 2011) ..........................................................................................1, 2

*Landau v. CNA Fin. Corp.*,
381 Ill. App. 3d 61 ...................................................................................................................5

*Litton Sys. v. Ssangyong Cement Indus. Co.*,
107 F.3d 30, 1997 U.S. App. LEXIS 2386 (Fed. Cir. Feb. 13, 1997) .......................................1

*Or. Laborers-Emplrs. Health & Welfare Trust Fund v. Philip Morris*,
185 F.3d 957 (9th Cir. 1999) ...................................................................................................4

*In re Pharmaceutical Average Wholesale Price Litig.*,
491 F. Supp. 2d 20 (D. Mass. 2007) ........................................................................................2

*Phillips v. Bally Total Fitness Holding Corp.*,
372 Ill. App. 53 (Ill. App. 2007) ..........................................................................................5, 6

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ...................................................................................................7

*Raintree Homes, Inc. v. Vill. of Long Grove*,
209 Ill. 2d 248 (Ill. 2004) ........................................................................................................6

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ..............................................................4

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) .....................................................................................................4

*SEIU Health & Welfare Fund v. Philip Morris Inc.*,
249 F.3d 1068 (D.C. Cir. 2001) ...............................................................................................4

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis US LLP*,
20 F. Supp. 3d 305 (E.D.N.Y. 2014) ........................................................................................3

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris*,
171 F.3d 912 (3d Cir. 1999) .....................................................................................................4

*Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*,
304 F. Supp. 2d 1018 (N.D. Ill. 2004) ......................................................................................7

8251976

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Travelers Indem. Co. v. Cephalon, Inc.*,
    32 F. Supp. 3d 538, 547-48 (E.D. Pa. 2014)..............................................................................4

*United Wisc. Servs., Inc. v. Abbott Labs.*,
    220 F.R.D. 672 (S.D. Fla. 2004) .............................................................................................2

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)...................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................................4

iv

## I. MMO HAS NOT SUFFICIENTLY PLED RICO INJURY.

### A. MMO Was Not Injured In <u>Its Own</u> "Business or Property."

As AbbVie has explained, the purpose of RICO damages is not to disgorge "unjust en-richment of the defendant,"[1] but to "place [plaintiffs] in the same position they would have been in but for the illegal conduct."[2]  TPPs, however, are "financial intermediaries" whose "books balance whether [their beneficiaries' costs of treatment] are high or low."[3]  For that reason, the Seventh Circuit held in *Philip Morris* that TPPs cannot sue under RICO to recover money spent on their beneficiaries' care—and courts have followed *Philip Morris* in TPP pharmaceutical cas-es indistinguishable from this one.[4]  Contrary to MMO's insistence, it is not enough that money MMO spent on AndroGel allegedly "would not have been paid but for the Defendants' [alleged] fraud."  (Opp. at 19.)  As *Philip Morris* explains, "it is necessary to consider *both* the income *and* the expenditure sides of the insurer's balance sheet."[5]  Even if MMO would have paid less mon-ey absent AbbVie's alleged efforts to increase TRT utilization, MMO's premiums take that utili-zation into account—so MMO would be in the very same financial position.

MMO attempts to evade *Philip Morris* by contrasting its supposedly "direct" injuries with the "derivative" injuries of the TPPs in that case.  (Opp. at 23.)  As explained in Defend-ants' joint brief, MMO's alleged injuries are anything but direct.  But regardless, this conflates the *existence* of "injury to business or property" with whether the injury was *proximately caused*

---

[1] *Litton Sys. v. Ssangyong Cement Indus. Co.*, 107 F.3d 30, 1997 U.S. App. LEXIS 2386, at *9 (Fed. Cir. Feb. 13, 1997).

[2] *Comm. Union Assurance Co. PLC v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994); *see also Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012).

[3] *Int'l Bhd. of Teamsters, Local 734 v. Philip Morris Inc.*, 196 F.3d 818, 824 (7th Cir. 1999).

[4] *Id.*; *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1368 (11th Cir. 2011); *Health Care Serv. Corp. v. Olivares*, 2011 U.S. Dist. LEXIS 117750, at *18 (E.D. Tex. Sept. 2, 2011).

[5] 196 F.3d at 823-24 (emphasis added).

by the defendant's fraud. Those are separate questions. Moreover, even assuming the causal chain were more "direct" here than in *Philip Morris*, MMO fails to address *Ironworkers* and *Olivares*, both of which applied *Philip Morris* to pharmaceutical claims just like those in this case.

MMO also argues that "how [its] actuaries calculate premiums" is a "fact question … reserved for discovery." (Opp. at 24.) But the dismissals in *Philip Morris*, *Ironworkers*, and *Olivares* all took place at the pleadings stage, before any discovery was taken. As those courts explained, where a TPP's complaint "ple[ads] no facts" suggesting that it sets premiums "in a way inconsistent with the insurance industry's conventional ratemaking procedures," a court "must infer" that they used those procedures.[6] Even now, MMO does not suggest that it deviates from those "conventional ratemaking procedures," or that it would be in a different position absent the alleged fraud.

Finally, MMO relies on *United Wisconsin Services, Inc. v. Abbott Laboratories*, which held that a TPP incurred *antitrust* (not RICO) injury, despite collecting premiums, since it "analyze[d] drug costs in the aggregate" and not on a drug-by-drug basis. (Opp. at 24.)[7] But this Court is bound by the Seventh Circuit's decision in *Philip Morris*, not the decision of a Florida district court. Assuming *United Wisconsin* were ever good authority in the RICO context, it is no longer so after the Eleventh Circuit's contrary RICO decision in *Ironworkers*. Indeed, the reasoning of *United Wisconsin* makes little sense in the RICO context: whether a TPP arranges its finances to break even on a drug-by-drug basis or to break even "in the aggregate," *it breaks even*—and the promotional activity of manufacturers, lawful or unlawful, therefore has no effect on the TPP's bottom line.

---

[6] *Ironworkers*, 634 F.3d at 1368; *see also Olivares*, 2011 U.S. Dist. LEXIS 117750, at *18.

[7] 220 F.R.D. 672 (S.D. Fla. 2004). *In re Pharm. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20 (D. Mass. 2007), cited in MMO's footnote 15, was not a RICO case either.

8251976

**B.**     **MMO Fails To Plead Concrete Facts Showing That It Paid For A Single AndroGel Prescription That Was "Medically Inappropriate."**

As AbbVie has explained, the SAC fails to plead a single instance where MMO paid for an AndroGel prescription that (1) was medically unnecessary or inappropriate and (2) caused injury to or failed to benefit one of its insureds. MMO concedes as much, but argues that "precedent in this Circuit" allows a TPP to plead a RICO injury via "probabilities." (Opp. at 20.)

The case that MMO cites, *BCS Services*,[8] was not decided at the 12(b)(6) stage and said nothing about pleading requirements. Nor were its facts at all like those in this case. In *BCS*, the parties participated in a series of random drawings. The defendant cheated, and won an unfairly large share of the prizes, by submitting multiple entries. Over the course of "many thousands" of random drawings, it was *mathematically guaranteed* that the plaintiff would have won more prizes had the defendant not stuffed the ballot box. Injury was an arithmetical certainty.

Here, by contrast, MMO's alleged injury results from the discretionary prescribing decisions of doctors across the country. Those decisions were not made by random drawing, but in accordance with each doctor's education, research, clinical experience, and judgment; patient-specific considerations; and *perhaps* the marketing of one or more Defendants. Moreover, patients' responses to drugs are not standardized.[9]

For these reasons, outside of unique factual scenarios such as that in *BCS*, *most* courts have rejected attempts to plead and prove RICO injury through "statistics" and "probabilities."[10]

---

[8] *BCS Servs. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011).

[9] *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis US LLP*, 20 F. Supp. 3d 305, 322-23 (E.D.N.Y. 2014) (distinguishing *BCS* in pharmaceutical RICO case for this reason).

[10] *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134-35 (2d Cir. 2010); *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 441-42, 443 (3d Cir. 2000); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris*, 171 F.3d 912, 928-29, 932 (3d Cir. 1999); *Or. Laborers-Emplrs. Health & Welfare Trust Fund v. Philip Morris*, 185 F.3d 957, 965 (9th Cir. 1999); *SEIU Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1074 (D.C. Cir. 2001); *In re Schering-Plough Corp. Intron/Temodar Con-*

3

Instead, they have required "particularized allegations" that the challenged product actually exhibited "inferior performance" *for the plaintiff*.[11]  Such allegations are entirely absent here.  Thus, it would be sheer speculation to conclude that as a result of AbbVie's alleged fraud, MMO paid for AndroGel prescriptions that injured or failed to benefit one or more MMO beneficiaries.

## II.  MMO HAS NOT SUFFICIENTLY PLED A CAUSAL CONNECTION BETWEEN ITS INJURY AND ABBVIE'S ALLEGED PREDICATE ACTS.

As AbbVie has noted, the SAC expounds at length on the bad acts that AbbVie supposedly committed (mostly by copying from the *King* complaint), but fails to "allege facts to establish that [its] off-label purchases … [were] fairly traceable to [the] … allegedly unlawful marketing practices."[12]  Still less does the SAC plead that linkage with particularity, as Rule 9(b) requires: it identifies no specific communication of false information from AbbVie to MMO or its agents or plan physicians that resulted in MMO's payment for an improper AndroGel prescription.

MMO essentially concedes as much, but argues that "a RICO plaintiff need not have relied on or even received the communications that form the predicate act…"  (Opp. at 31 (citing *Bridge v. Phoenix Bond & Indemnity Co.*).)  That is true—but, as *Bridge* warned, unless "*someone*" in the chain between the defendant and the plaintiff "relied on the defendant's misrepresentations," there can be no but-for causation, and hence no RICO claim.[13]  Here, there is no non-conclusory allegation, let alone a *particularized* allegation, that anyone in the causal chain re-

*sumer Class Action*, 2009 U.S. Dist. LEXIS 58900, at *84-89 (D.N.J. July 10, 2009); *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 2008 U.S. Dist. LEXIS 103526, at *23-24 n.8 (D.N.J. Dec. 23, 2008).

[11] *In re Bridgestone/Firestone Inc.*, 155 F. Supp. 2d 1069, 1092-94 (S.D. Ind. 2001), *aff'd in relevant part*, 288 F.3d 1012, 1017 & n.1 (7th Cir. 2002); *see also Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 547-48 (E.D. Pa. 2014) (absent "facts … supporting [TPPs'] assertion that Actiq and Fentora were ineffective for [their] claimants" or that their claimants "suffered physical harm," TPPs suffered no "economic injury"), *aff'd*, 2015 U.S. App. LEXIS 13949 (3d Cir. Aug. 10, 2015).

[12] *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 246 (3d Cir. 2012); *see also Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 523-24 (D.N.J. 2011).

[13] 553 U.S. 639, 658 (2008).

8251976

ceived and relied on any specific misrepresentation alleged in the SAC. That is fatal.[14]

### III. MMO'S STATE-LAW CLAIMS FAIL.

MMO does not dispute that "the 'only' state laws other than Ohio that could potentially apply [to its claims against AbbVie] are [those of] Illinois, Texas, or Georgia." (Opp. at 90.) Thus, its purported claims under the laws of the other 46 states must be dismissed.

AbbVie has explained that Texas and Georgia's consumer protection statutes require notice 30 days before suit is filed. Arguing that it satisfied this requirement, MMO cites a letter sent "on November 20, 2014." (Opp. at 90). But this lawsuit was filed fifteen days before that, on November 5, 2014. That is not pre-suit notice. *Post*-suit "notice," moreover, cannot cure a failure to comply with the statute. Dismissal with prejudice is required.[15]

MMO's Illinois statutory claims fare no better. MMO concedes that the ICFA and insurance fraud statute lack extraterritorial application, but asserts that "discovery" may show that "the transaction which gave rise to th[is] lawsuit" occurred "'primarily and substantially in Illinois.'" (Opp. at 92–93). This assertion is baffling: the very cases that MMO cites explain that the state from which misrepresentations were "disseminated," or where the defendant was "headquartered," is not controlling; the state where the "alleged damages occurred" is.[16] MMO was damaged, if anywhere, in Ohio. While it may have beneficiaries or doctors in Illinois, it claims the same is true of almost every other state (Opp. at 83)—and, in any event, the location

---

[14] MMO argues that Rule 9(b) should be relaxed because information "lies outside of [its] control." (Opp. at 28 (citing *Emery v. Am. Gen. Fin.*, 134 F.3d 1321 (7th Cir. 1998)). However, as *Emery* explained, such relaxation requires a plaintiff to make an actual "*showing* of [its] inability" to "obtain essential information without pretrial discovery." *Id.* at 1323 (emphasis added). MMO has not done so.

[15] *See Gibbs v. Abbott Labs., Inc.*, 2001 U.S. Dist. LEXIS 20411, at *7-12 (N.D. Ill. Dec. 5, 2001) (failure to give notice "prior to the filing" of initial complaint was "fatal to" Georgia statutory claim and could not be remedied by notice letter sent after lawsuit had been filed).

[16] *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 64 (Ill. App. 2008); *see also Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53, 59 (Ill. App. 2007).

8251976

of its doctors and beneficiaries is already in MMO's possession.  Thus, there are no facts "discovery" could plausibly reveal that would shift the "primary" locus of MMO's claims to Illinois.[17]

As for unjust enrichment, the Seventh Circuit has held that such a claim may not be maintained separate and apart from MMO's remaining tort claims.[18]  MMO urges the Court to ignore the Seventh Circuit's express holdings in light of the Illinois Supreme Court's decision in *Raintree Homes, Inc. v. Vill. of Long Grove*.[19]  But the Seventh Circuit's decisions postdate *Raintree* and expressly distinguish it.  Indeed, *Raintree* has little relevance here: the plaintiffs in that case did not claim "compensation for a wrong done," and "no [other] substantive claim" besides unjust enrichment covered the unique scenario in question.[20]  *Raintree* did not hold that unjust enrichment may be maintained as a fallback claim where plaintiffs *do* allege that "a wrong [was] done," but their statutory and common-law tort claims fail.[21]

## IV.    THE COURT LACKS JURISDICTION OVER SOLVAY, S.A. AND SAI

As AbbVie has shown, MMO failed to establish any basis for personal jurisdiction over Solvay, S.A. or Solvay America, Inc.  MMO now agrees to dismiss Solvay America, Inc. as a defendant, but contends that its generic allegations regarding Solvay, S.A.'s ownership of "U.S.-based subsidiaries" and its filing of an unrelated patent infringement lawsuit in a U.S. court

---

[17] *Cf. Phillips*, 372 Ill. App. 3d at 59–60 (discovery not needed for extraterritoriality analysis where relevant information is in plaintiff's possession and only information unknown to plaintiff would not change result).

[18] *See Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

[19] 209 Ill. 2d 248 (Ill. 2004).

[20] *Id.* at 256-58.

[21] MMO also argues that it is entitled to "plead [unjust enrichment] in the alternative."  (Opp. at 105.) Parties may certainly raise unjust enrichment as an alternative claim in the event a contract is found invalid.  But that does not help MMO, since no contract is alleged.  *Cleary* and *Ass'n Benefit* squarely hold that unjust enrichment may *not* be maintained as an "alternative" to a failed *tort* claim.

6

"raise fact questions." (Opp. at 34, n.21.) This argument fails.

First, Seventh Circuit law is clear that a subsidiary's conduct generally cannot create personal jurisdiction over a corporate parent.[22] Courts have also rejected "the dubious proposition that general jurisdiction may be asserted on the basis of involvement in an unrelated lawsuit."[23]

Second, once a defendant moves to dismiss a complaint for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction."[24] And where, as here, "the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."[25] MMO has offered nothing to meet that burden here.

## CONCLUSION

For the reasons above, as well as those set forth in Defendants' joint memoranda, the SAC should be dismissed with prejudice as to the AbbVie Defendants.

---

[22] *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943-45 (7th Cir. 2000).

[23] *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004); *see also Conn v. Zakharov*, 667 F.3d 705, 719 (6th Cir. 2012).

[24] *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

[25] *Id.* at 782-83.

8251976

Dated: November 5, 2015

Respectfully submitted,

/s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr.
Jonah M. Knobler (*pro hac vice*)
Scott C. Caplan (*pro hac vice*)
**PATTERSON BELKNAP WEBB
& TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
jknobler@pbwt.com
scaplan@pbwt.com

*Attorneys for Defendants AbbVie Inc., Abbott
Laboratories, Abbott Products, Inc., Solvay,
S.A., Solvay America, Inc., Solvay Pharmaceu-
ticals, Inc., and Unimed Pharmaceuticals, LLC*

8

8251976

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2015, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered attorneys of record.

    /s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr.

*Attorneys for Defendants AbbVie Inc., Abbott Laboratories, Abbott Products, Inc., Solvay, S.A., Solvay America, Inc., Solvay Pharmaceuticals, Inc., and Unimed Pharmaceuticals, LLC*

9

8251976