# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 |
| | Master Docket Case No. 1:14cv1748 |
| | Honorable Matthew F. Kennelly |
| | No. 1:14-cv-8857 |
| MEDICAL MUTUAL OF OHIO, | |
| Plaintiff, | |
| v. | |
| ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY PHARMACEUTICALS, INC., UNIMED PHARMACEUTICALS, LLC, AUXILIUM, INC., GLAXOSMITHKLINE LLC, OSCIENT PHARMACEUTICALS, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX COMMERCIAL PARTY LTD., ACRUX DDS PARTY LTD., ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC., | |
| Defendants. | |

## MEMORANDUM OF PLAINTIFF, MEDICAL MUTUAL OF OHIO, IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 2

I.    THE TAC INCLUDES SPECIFIC ALLEGATIONS AS TO
DEFENDANTS' FALSE AND MISLEADING PROMOTION TO MMO ......... 2

II.    DEFENDANTS MISTATE THE RULE 9(B) STANDARD
APPLICABLE TO THE TAC ............................................................... 4

    A.    Application of Rule 9(b) to TPP Plaintiffs' RICO Claims ........................ 6

    B.    The TAC More Than Meets the Requirements of Rule 9(b) ..................... 7

III.    MMO'S ALLEGATIONS AGAINST DEFENDANTS ARE
SUFFICIENTLY PARTICULAR UNDER RULE 9(B) ....................................... 8

    A.    MMO's Allegations Against AbbVie Are Sufficiently Particular .............. 8

    B.    MMO's Allegations Against Auxilium Are Sufficiently Particular ......... 13

    C.    MMO's Allegations Against Eli Lilly Are Sufficiently Particular ........... 16

    D.    MMO's Allegations Against Endo Are Sufficiently Particular ............... 20

    E.    MMO's Allegations Against GSK Are Sufficiently Particular ............... 22

    F.    MMO's Allegations Against Actavis Are Sufficiently Particular ........... 22

IV.    THE TAC SUFFICIENTLY ALLEGES CONSPIRACY CLAIMS ................... 24

    A.    The Seventh Circuit Does Not Require MMO to Plead Conspiracy Under
Rule 9(b) ................................................................................. 24

    B.    The TAC Sufficiently Alleges an Inter-Corporate Unbranded, "Grow the
Pie" Conspiracy in Violation of RICO, 18 U.S.C. § 1962(D) ................. 25

V.    THIS COURT HAS ALREADY CORRECTLY CONCLUDED THAT
MMO'S NEGLIGENT MISREPRESENTATION CLAIMS ARE
SUFFICIENTLY PLEADED ............................................................... 29

VI.    TO THE EXTENT ANY CLAIMS ARE DISMISSED, SUCH
DISMISSAL SHOULD BE WITHOUT PREJUDICE ........................................ 30

CONCLUSION.................................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Cases*

*Ackerman v. Northwestern Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999) ................................................................. 6

*Aghaeepour v. N. Leasing Sys.*,
  2015 WL 7758894 (S.D.N.Y Dec. 1, 2015) ............................................ 5

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014)....................................................... 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................ 26, 27

*Bible v. United Student Aid Funds, Inc.*,
  799 F.3d 633 (7th Cir.), *reh'g denied*, 807 F.3d 839 (7th Cir. 2015), and *cert. denied*,
  136 S. Ct. 1607 (2016)................................................................... 8, 17

*Borsellino v. Goldman Sachs Group, Inc.*,
  477 F.3d 502 (7th Cir. 2007) ...................................................... 1, 5, 25

*Bridon Am. Corp. v. Mitsui & Co., Inc.*,
  1983 WL 1897 (D.D.C. Nov. 7, 1983) ................................................... 5

*Ghouth v. Conticommodity Services, Inc.*,
  642 F. Supp. 1325 (N.D. Ill. 1986) ....................................................... 5

*Goren v. New Vision Int'l, Inc.*,
  156 F. 3d 721 (7th Cir. 1998) .............................................................. 25

*In re Avandia Marketing, Sales Practices and Products Liability Litigation*,
  2013 WL 5761202 (E.D. Pa. Oct. 23, 2013)........................................... 6

*In re Brand Name Prescription Drugs Antitrust Litigation*,
  1996 WL 167350 (N.D. Ill. Apr. 4, 1996) ....................................... 27, 28

*In Re Celexa and Lexapro Marketing and Sales Practices Litigation*,
  65 F. Supp. 3d 283 (D. Mass. 2014) ...................................................... 7

*In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*,
  2016 WL 427553 (N.D. Ill. Feb. 4, 2016) ...................................... 1, 4, 7, 8, 22, 29

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) .............................................................. 26

*In Re: Lupron® Marketing and Sales Practices Litigation*,
   295 F. Supp. 2d 148 (D. Mass. 2003) ................................................................... 6

*Kostovetsky v. Ambit Energy Holdings, LLC*,
   2016 WL 105980 (N.D. Ill. Jan. 8, 2016) ........................................................ 4, 5

*Lachmund v. ADM Investor Servs., Inc.*,
   191 F.3d 777 (7th Cir. 1999) ............................................................................. 25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ................................................................................ 5

*Midwest Grinding Co. v. Spitz*,
   976 F.2d 1016 (7th Cir. 1992) ............................................................................. 6

*Minch v. City of Chicago*,
   363 F.3d 615 (7th Cir. 2004) ............................................................................... 1

*Mishler v. Hale*,
   26 N.E.3d 1260 (Ohio App. 2d Dist. 2014) ..................................................... 30

*Nesbitt v. Regas*,
   2015 U.S. Dist. LEXIS 35552 (N.D. Ill. Mar. 20, 2015) .................................. 24

*New England Carpenters Health & Welfare Fund v. Abbott Labs.*,
   2014 WL 4783833 (N.D. Ill. Sept. 25, 2014.) ..................................................... 4

*Parish v. City of Elkhart*,
   614 F.3d 677 (7th Cir. 2010) ............................................................................... 1

*PharMerica Chicago, Inc. v. Meisels*,
   772 F. Supp. 2d 938 (N.D. Ill. 2011) .................................................................. 5

*Roger Whitmore's Auto. Servs., Inc. v. Lake County*,
   424 F.3d 659 (7th Cir. 2005) ............................................................................. 26

*Ruderman v. Freed*,
   2015 WL 5307583 (N.D. Ill. Sept. 10, 2015) ............................................... 5, 16

*Salinas v. United States*,
   522 U.S. 52 (1997) ............................................................................................. 25

*Sanchez v. ASA Coll., Inc.*,
   2015 WL 3540836 (S.D.N.Y. June 5, 2015) ...................................................... 5

*Slaney v. Int'l Amateur Ath. Fed'n*,
   244 F.3d 580 (7th Cir. 2001) ............................................................................. 25

*Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms., L.P.*,
　2016 LEXIS 236 (Del. Apr. 12, 2016) ..................................................................... 30

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ............................................................................................. 5

*United States ex rel. Yannacopolous v. Gen. Dynamics*,
　315 F. Supp. 2d 939 (N.D. Ill. 2004) .................................................................... 14

*Vega v. Contract Cleaning Maint., Inc.*,
　2004 WL 2358274  (N.D. Ill. Oct. 18, 2004).................................................... 11, 24

## INTRODUCTION

On February 3, 2016, the Court granted in part and denied in part Defendants' motion to dismiss. *In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*, 2016 WL 427553, at *20 (N.D. Ill. Feb. 3, 2016). As to Medical Mutual of Ohio's ("MMO's" or "Plaintiff's") RICO claims, the Court denied Defendants' motion, with the exception of pleading with particularity substantive RICO claims. The Court ruled that MMO had not met the pleading requirements of Rule 9(b) because the Second Amended Complaint ("SAC") contained only general allegations that Defendants made direct misrepresentations or fraudulent omissions to MMO, whether in person, in writing, or by telephone.[1]

On April 7, 2016, MMO filed its Third Amended Complaint ("TAC," ECF No. 161), including MMO-specific and Defendant-specific allegations, with approximate dates and locations, and the personnel involved in the relevant meetings and communications, as well as information about the contents of the alleged misrepresentations or omissions that were targeted at MMO. On May 5, 2016, Defendants filed their Joint Memorandum ("JM"), seeking dismissal of the TAC.[2] (ECF No. 161.) At the Status Conference held on May 19, 2016, the Court asked MMO to submit briefing in response to the JM, but only as to Defendants' Rule 9(b) arguments.

---

[1] On March 2, 2016, Defendants filed a Motion for Reconsideration of the Court's ruling allowing Plaintiff's RICO conspiracy claims (ECF No. 1207), arguing that the Seventh Circuit's decision in *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007), was "controlling precedent" on the application of Rule 9(b). The Court subsequently stayed briefing in light of Plaintiff's anticipated filing of the Third Amended Complaint. Defendants renew these arguments in their Motion to Dismiss, to which Plaintiff responds herein, *see infra* pages 24-29. Plaintiff maintains that the Motion for Reconsideration should be denied, and reserves its right to file an opposition thereto.

[2] On a motion to dismiss, the Court "owe[s] a plaintiff's complaint a generous construction in deciding whether it states a claim on which relief can be granted," *Minch v. City of Chicago*, 363 F.3d 615, 630 (7th Cir. 2004), and accepts the plaintiffs' [well-pleaded] allegations as true and draws reasonable inferences in their favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).

**ARGUMENT**

I. **THE TAC INCLUDES SPECIFIC ALLEGATIONS AS TO DEFENDANTS'
FALSE AND MISLEADING PROMOTION TO MMO**

The TAC adds multiple specific allegations of Defendants' misrepresentations and/or
omissions, with some 150 pages of additional detailed allegations both as to each Defendant and
Defendants as co-conspirators jointly, referencing 417 citations, many of them taken directly
from Defendants' own documents, including:

- ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████

  ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████

2





## II. DEFENDANTS MISTATE THE RULE 9(B) STANDARD APPLICABLE TO THE TAC

Just as with their earlier motion, Defendants' JM does not assert the TAC fails to provide them enough information about their scheme to formulate their defenses.[3] Defendants exaggerate the Rule 9(b) standard, asserting the TAC must be alleged with particularly for every allegation.[4] But, this goes too far. MMO is not required to satisfy Rule 9(b) for allegations involving non-fraud elements of a RICO claim. *See Kostovetsky v. Ambit Energy Holdings, LLC*, No. 15 C 2553, 2016 WL 105980, at *3 (N.D. Ill. Jan. 8, 2016) (rejecting argument that Rule 9(b) applies to all RICO allegations and instead applying the less rigorous Rule 8 pleading standard to non-fraud elements of the claim). Thus, in cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications themselves

---

[3] Even though the Court has already rejected this argument (*Testosterone*, 2016 WL 427553, at n.5), Defendants again argue MMO must particularize its reliance on the fraud. (JM *passim*.) For example, AbbVie argues the TAC must not only allege specifically that it made misrepresentations to MMO, but that MMO "subsequently relied" on these misrepresentations "in making a formulary decision." (JM at 3-4.) However, as this Court stated: "Rule 9(b) does not require plaintiff to plead… plaintiff's reliance with particularity. The Rule states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Testosterone*, 2016 WL 427553, at n.5. Furthermore, as Defendant AbbVie already knows, when addressing RICO claims premised on fraud, "[f]irst-party reliance, or the plaintiff's reliance on fraudulent statements, is not required." *New England Carpenters Health & Welfare Fund v. Abbott Labs*., No. 12 CV 1662, 2014 WL 4783833, at *4 (N.D. Ill. Sept. 25, 2014). Criticisms that MMO failed to plead its reliance with particularity are thus not only inappropriate at this juncture, but also contrary to the law.

[4] The Court has already ruled that MMO has adequately alleged direct misrepresentations. "In those cases (*Avandia* and *Neurontin*), as in this one, the TPP relied on misrepresentations the defendants made directly that induced the TPP to place the defendants' drugs on formulary and pay for prescriptions for which it otherwise would not have paid. Any differences between this case on the one hand, and *Neurontin* or *Avandia* on the other, regarding the differences between the on-label and off-label uses of the drug are matters of degree that do not provide a basis for dismissal under Rule 12(b)(6)." *Testosterone,* 2016 WL 427553, at *14.

need not have contained false or misleading information. *Id.* at \*5 ("Even though the Ambit bills themselves are not deceptive on their face, each bill qualifies as a predicate act because they were sent in furtherance of the allegedly deceptive overall scheme."); *Ruderman v. Freed*, 2015 WL 5307583, at \*3 (N.D. Ill. Sept. 10, 2015) (mail fraud claim pled with the requisite specificity "[r]egardless of whether either letter contained misrepresentations," so long as they "were sent in furtherance of the alleged scheme").[5]

Defendants similarly conflate the pleading requirements for RICO conspiracy, arguing (incorrectly) that the Seventh Circuit's *Borsellino* decision is "controlling" precedent. (JM at 20.) It is not. Defendants then build upon their misstatement by arguing that *Borsellino* requires application of Rule 9(b) to every element of a RICO claim – *i.e.*, even to non-fraud elements. But, *Borsellino* expressly held only that, as to the Illinois state law civil conspiracy claims at issue, Rule 9(b) applies to "averments of fraud" and not "claims of fraud." *Borsellino*, 477 F.3d at 507; *see* conspiracy discussion at pages 24-30.

Moreover, in determining the adequacy of RICO fraud pleadings, courts must view "the alleged facts in their totality, not in isolation." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007)); *Ghouth v. Conticommodity Services, Inc.*, 642 F. Supp. 1325, 1332 (N.D. Ill. 1986) (allegations must not be "read in isolation" but in context of entire complaint). Further, the "'general rule requiring specific allegations of time, place and content is relaxed somewhat as to matters peculiarly within the adverse party's knowledge or where the issues are complex, or the transactions involved cover a long period of time.'" *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 962 (N.D. Ill. 2011) (quoting *Bridon Am. Corp. v.*

---

[5] All that is required to satisfy Rule 9(b) is a detailed description of the underlying scheme and the connection with the mail and/or wire communications. *See, e.g., Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145-46 (S.D.N.Y. 2014); *Aghaeepour v. N. Leasing Sys.*, 2015 WL 7758894, at \*4; *Sanchez v. ASA Coll., Inc.*, 2015 WL 3540836, at \*6 (S.D.N.Y. June 5, 2015) (citation omitted).

*Mitsui & Co., Inc.*, 1983 WL 1897, at *5 (D.D.C. Nov. 7, 1983)). A plaintiff satisfies Rule 9(b) by providing a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). The TAC clearly puts each Defendant on notice of the claims alleged with precision and a measure of substantiation, which is all that is required by Rule 9(b).[6]

### A. APPLICATION OF RULE 9(B) TO TPP PLAINTIFFS' RICO CLAIMS

In TPP cases alleging RICO violations that have survived a motion to dismiss, Courts have not required anything close to the Rule 9(b) specificity advocated by Defendants here. For example, in *Harden Mfg. Corp. v. Pfizer Inc. (In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.)*, 433 F. Supp. 2d 172, 184-85 (D. Mass. 2006), Judge Saris found that TPP allegations concerning anonymous surveys filled out by physicians after they had been detailed by drug company sales representatives were adequate under Rule 9(b) "[a]t this stage of the litigation." And, Judge Stearns in *In Re: Lupron® Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003), found that, even though "the TPP complaint did not identify specific instances of mailings, or the use of facsimile transmissions, or the telephone" "the allegations were reasonably specific as to the nature of the materials that are alleged to have been distributed in furtherance of the scheme." Likewise, in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 2013 WL 5761202, *9 (E.D. Pa. Oct. 23, 2013), Judge Rufe held that the TPP complaint alleging "Defendant intimidated [a doctor] to suppress

---

[6] The Court's previous ruling on Rule 9(b) relied heavily on *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999). The deficiencies in *Ackerman* are not present in the TAC. There, the Seventh Circuit was critical of plaintiffs' complaint, which only alleged, in general terms, that the corporate defendants merely inspired, encouraged, and condoned their agents' sales messages that were alleged to be misleading. However, here, the TAC alleges in specific terms Defendants' executive-directed, multi-year scheme, including multiple meetings with MMO and/or with Medco/ESI (often in person, *see* ¶ 373, as well as on multiple other occasions each year through publications, industry events, and CMEs). The TAC alleges approximate dates and content of Defendants' misrepresentations, which distinguishes the TAC from those deficiencies that doomed the *Ackerman* plaintiffs. Moreover, the TAC "associates a particular defendant with a particular set of statements (oral or written)." *Ackerman*, 172 F.3d. at 471.

his research on the risks of Avandia" to increase heart attacks and heart-related diseases and sent a letter (threatening suit if the information was disclosed) were "sufficient at this point in the proceedings." Similarly, Judge Gorton denied Forest's motion to dismiss in *In Re Celexa and Lexapro Marketing and Sales Practices Litigation*, 65 F. Supp. 3d 283, 294 (D. Mass. 2014), holding that "[a]lthough some of the allegations of mail and wire fraud are vague," "the predicate acts were related to increased illegal off-label sales of Celexa and Lexapro for pediatric use. Plaintiff [TPP] therefore sufficiently pleads requirements with respect to RICO predicate acts to survive a motion to dismiss."

### B. THE TAC MORE THAN MEETS THE REQUIREMENTS OF RULE 9(B)

Just as they had in their earlier motion (*see* ECF No. 109 at 22; ECF No. 122 at 5), Defendants again concede they are on notice of the underlying scheme alleged in the TAC. Instead, they argue that the TAC includes only "generalized allegations" (JM at 1), ignoring altogether the very detailed allegations concerning each defendant and their joint conspiracy. And, Defendants overstate the Court's Rule 9(b) concerns with the SAC. The Court previously found that the allegations concerning the targeting of MMO were "inadequate" only because "the allegations leave unclear whether this targeting resulted in misrepresentations or significant omissions." *Testosterone*, 2016 WL 427553, at *15. The Court noted that the SAC "comes close" concerning the Solvay free CME aimed at TPPs, but failed to allege that any of MMO's personnel received the misrepresentations. (*Id.*)

The TAC does not suffer the same deficiencies. Viewing the TAC allegations in their totality, and not in isolation (as Defendants would have the Court do), the TAC specifically sets forth detailed allegations of the Defendants' fraudulent representations (both individually and as co-conspirators) directly to MMO and, taken together with its detailed allegations of Defendants' conduct *in furtherance of the fraud* (which need not themselves contain any false or misleading

7

information), MMO has more than met the Rule 9(b) requirements of pleading RICO claims at this stage of the proceedings.[7]

## III. MMO'S ALLEGATIONS AGAINST DEFENDANTS ARE SUFFICIENTLY PARTICULAR UNDER RULE 9(B)

### A. MMO'S ALLEGATIONS AGAINST ABBVIE ARE SUFFICIENTLY PARTICULAR

MMO's allegations concerning the AbbVie Defendants' fraudulent scheme are sufficiently particular. Citing no case law in support, AbbVie contends the TAC fails to allege that it made specific statements directly to MMO, that were false or misleading, and upon which MMO relied.[8] (JM at 3-4.) For example, AbbVie faults the TAC for not explaining "why downplaying TRT's ability to improve sexual function or impotence would be fraudulent." (JM at 4-5.) This inquiry is *only* appropriate at the summary judgment stage after discovery has completed. As the Seventh Circuit has held: "A Rule 12(b)(6) motion to dismiss is not a suitable procedure for determining" whether certain documents could have been misleading to a Plaintiff. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 658 (7th Cir.), *reh'g denied*, 807 F.3d 839 (7th Cir. 2015), and *cert. denied*, 136 S. Ct. 1607 (2016). At this stage of the proceedings, Defendants' arguments thus simply ignore the law and the detailed allegations in the TAC.

The TAC alleges that before the AndroGel launch in 2000, AbbVie made clear to its managed markets personnel that they would "downplay" safety and efficacy claims so that they could garner TPP formulary access without limitations. (¶ 364.) MMO was one of the plans on which it then used these "tactics." (¶ 366.)

---

[7] The Court dismissed the common law fraud and unjust enrichment claims "for the same reasons" as it had MMO's RICO claims. *Testosterone*, 2016 WL 427553 at *19. As such, if the Court holds that the TAC adequately pleads RICO claims under Rule 9(b), MMO's common law fraud and unjust enrichment claims are adequately pled as well.
[8] *See supra* note 2 regarding the Court's holding that there is no Rule 9(b) requirement to plead reliance.

A key part of the scheme was to gloss over what AbbVie knew were safety and efficacy concerns. For example, as early as 2001, the TAC alleges that AbbVie knew about, but concealed, cardiovascular risks associated with TRT drug use. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████ ████████████

██████████████████████████████ (¶¶ 512-19.) ██████████████

███████████████████████████████████████ (¶ 518.)

Despite the fact that AbbVie was aware of serious safety and efficacy concerns with AndroGel, the TAC alleges multiple examples of meetings between AbbVie's managed markets representatives and both MMO and Medco (now ESI), and highlighted some of AbbVie's key managed markets personnel presentations and meetings wherein these false or misleading safety and efficacy representations were made, including the following:



███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

- A█████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

The TAC alleges that AbbVie tailored its unlawful marketing scheme for the Ohio region and had designated MMO, specifically, as a priority target for its formulary access enterprise.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

The TAC highlights other avenues utilized by AbbVie to direct misrepresentations and misinformation to MMO and other TPPs, including through industry publications, professional conferences, CME courses, and AstroTurf organizations. (¶¶ 386-397.) In 2006, for example,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



(¶¶ 386-91.)

.)[11]

AbbVie attended most AMCP conferences between 2004 and 2015 and routinely sponsored events and presentations. AMCP is a national professional organization comprised of

---

[10] Because FIRST REPORT is a managed care periodical to which MMO subscribes (¶ 271), it is a reasonable inference that this CME was sent to MMO personnel. At this time, it is not clear which MMO personnel received it. Defendants argue the Rule 9(b) requirements should not be relaxed here because the identity of the individuals who would have received this CME does not lie exclusively within the Defendants' control. However, in instances when a defendant (or a third party co-conspirator, in this instance Princeton Media) is more likely to have information regarding names of agents who had contact with a plaintiff and dates of communications with plaintiff, courts will typically not dismiss a plaintiff's claim for fraud for lack of particularity when the plaintiff can obtain these details through discovery. *Vega v. Contract Cleaning Maint., Inc.*, 2004 WL 2358274, at *10 (N.D. Ill. Oct. 18, 2004).

[11] As with FIRST REPORT, PHARMACY TIMES is a periodical to which MMO subscribes (¶ 271). As such, it is reasonable to infer that these CE materials would have been sent to MMO personnel. *See supra* note 10.

hundreds of managed care entities, including MMO, and is regularly attended by MMO employees. (¶ 209-16, 980-83.) ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████.

    The TAC also ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

12

The TAC identifies multiple Ohio doctors who were in its physician networks and who were cultivated and financially compensated by AbbVie to serve as KOLs, including specific doctors who wrote prescriptions to MMO insureds. ████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████

Contrary to AbbVie's assertion that the TAC does not contain "a single" allegation in which it made a false and/or misleading statement directly to MMO (JM at 3), the TAC not only does just that, it does so at a level of specificity that more than meets Rule 9(b). Its hyperbole aside, even AbbVie admits that the TAC has provided an "avalanche" of AbbVie's own documents to support its allegations (JM at 4), but then feebly argues these are still somehow insufficient. AbbVie is simply wrong, a fact that is more than apparent from the TAC's detailed allegations.

### B. MMO'S ALLEGATIONS AGAINST AUXILIUM ARE SUFFICIENTLY PARTICULAR

Much like AbbVie, Defendant Auxilium asks the Court to engage in a completely inappropriate analysis of MMO's allegations at the 12(b)(6) stage. (JM at 9.) MMO is not required at the pleadings stage to "establish" anything. The purpose of Rule 9(b) is to protect the interests of a defendant by providing notice so it might prepare its defenses adequately, and to avoid "strike suits." *United States ex rel. Yannacopolous v. Gen. Dynamics*, 315 F. Supp. 2d

---

[12] The total cost of treating the MI for Patient 2 has been some $39,449.18 to date, most of it borne by MMO.

939, 944 (N.D. Ill. 2004).  These goals are more than achieved by the allegations MMO sets

forth – naming Auxilium personnel, dates and locations of meetings.

The TAC alleges ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

    █  ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████



The TAC highlights other means in furtherance Auxilium's scheme to direct misrepresentations and misinformation to MMO and other TPPs, including through industry publications, professional conferences, CME courses, and AstroTurf organizations. (¶¶ 572-77.)

The TAC alleges Auxilium regularly attended, and sponsored, Testim presentations and showcase booths during AMCP events, ██████████████████████████████████



Additionally, Auxilium sponsored CE events specifically intended for managed care pharmacy personnel through PHARMACY TIMES, one of the leading publications subscribed to by several MMO employees, with misleading messages on unapproved and unsafe uses of TRT drugs, including in February 2010. (¶¶ 573-76.) Auxilium was also an important financial supporter of the MHN, which became a central mouthpiece for the false and misleading safety and efficacy message. (¶¶ 913-17.) MMO was in attendance at one such MHN event. (¶ 938.)

The TAC also identifies multiple doctors who were cultivated and financially compensated by Auxilium to serve as KOLs, including specific doctors who wrote prescriptions to MMO insureds ██████████████████████████████████████

Despite Auxilium's bald assertions, the TAC pleads allegations to a level of specificity that more than exceeds the requirements of Rule 9(b). Any faults perceived by Auxilium are the sorts of deficiencies appropriate for resolution at summary judgment or trial.

### C. MMO's ALLEGATIONS AGAINST ELI LILLY ARE SUFFICIENTLY PARTICULAR

---

[13] Auxilium attempts to make hay of the TAC allegation █████ (¶¶ 552-55), completely brushing aside all other allegations of fraud made directly to MMO (JM at 9 n.4.) and ignoring the context of this allegation – *i.e.*, it alleges acts *in furtherance of* Auxilium's fraudulent scheme. *See Ruderman*, 2015 WL 5307583 at *3 (plaintiff stated mail fraud claim with requisite specificity "[r]egardless of whether either letter contained misrepresentations," so long as they are "in furtherance of the alleged scheme").

██████████████████████████████████

The majority of the failings that Defendant Eli Lilly identifies fall into one of three categories: reliance, causation, or whether a statement is false and/or misleading. But, Lilly gives no persuasive reason for the Court to reverse its decisions on reliance and causation, and a Rule 12(b)(6) motion is not suitable for determining whether certain statements could have been misleading to a Plaintiff. *See Bible*, 799 F.3d at 658.

The TAC also provides many examples of meetings between Lilly's managed markets representatives highlighting the role of key managed markets personnel, including:

- █████████████████████████████████████████
  █████████████████████████████████████████
  █████████████████████████████████████████
  ███████████████████

  ▮ █████████████████████████████████████████
  █████████████████████████████████████████
  ████████████████████████████

  ▮ █████████████████████████████████████████
  ███████████████████████████████████████

  ▮ █████████████████████████████████████████
  █████████████████████████████████████████
  █████████████████████████████████████████
  █████████████████████████████████████████
  █████████████████████████████████████████
  ████████████████████████████████████

  ▮ █████████████████████████████████████████
  █████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

The TAC specifically alleges that ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████





When taken together, along with Lilly's acts in furtherance of its scheme, these allegations provide the requisite 9(b) particularity for the allegations of fraud against Lilly.

### D. MMO'S ALLEGATIONS AGAINST ENDO ARE SUFFICIENTLY PARTICULAR

Notwithstanding its attempt to argue MMO's allegations are insufficient (JM at 13-14), Defendant Endo nonetheless acknowledges the detailed averments of Endo's fraudulent marketing, which include examples of the who, what, where and when (set forth below). These

allegations must be read together with the TAC's description of its disease-mongering strategies, deceptive tactics and misrepresentations aimed and delivered to MMO and TPPs.

Specifically, the TAC alleges that ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████

The TAC alleges that ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

21

███████████████████████████████████████

████████████████████████

By providing specific details of Endo personnel who delivered Endo's false and misleading message to MMO, the TAC more than pleads its fraud with sufficient particularity.

### E.    MMO's Allegations Against GSK Are Sufficiently Particular

MMO specifically alleges that GSK worked with Auxilium to promote its TRT product Testim.  On May 21, 2012, GSK entered into a Testim Co-Promotion Agreement with Auxilium to last through September 30, 2015. (¶ 67.) MMO alleges that GSK knowingly engaged in the unsafe and off-label detailing and promotion of Testim to physicians and misrepresented to physicians that Testim was an FDA-approved treatment for "Low T" and age-related declines in testosterone levels and age-related symptoms in men. (¶ 603.) As this Court ruled previously, "Rule 9(b) does not prohibit plaintiff from grouping corporate affiliates in its allegations, given that it is unlikely to possess information about the specifics of the relationships . . . or the particular roles they played in the alleged scheme." *Testosterone*, 2016 WL 427553, at *15.

The sufficiency of MMO's allegations against GSK is largely tied to the strength of MMO's allegations against Auxilium.  Therefore, at this stage of the proceedings, it is unnecessary for MMO to parse between Auxilium's conduct and GSK's conduct.  It is enough to allege the specifics as to GSK's Co-Promotion Agreement with Auxillum as MMO has done here.  Such details include allegations regarding GSK's history of promoting TRT drugs for unapproved and unsafe uses (¶ 596), details regarding the financial incentives in place in the co-promotion agreement which provide a financial motive to promote TRT for unsafe and unapproved uses (¶¶ 597-99), and details regarding GSK sponsorship of the well-documented efforts of MHN. (¶¶ 913-17.)

### F.    MMO's Allegations Against Actavis Are Sufficiently Particular

Compared to the "avalanche" of material the TAC lays out as to the other Defendants, MMO's allegations with respect to Actavis may not seem as detailed. However, MMO has still pled its allegations against Actavis with the sufficient particularity required by Rule 9(b). MMO identifies key Actavis personnel, including those responsible for presenting scientific and health economics outcome data to TPPs and PBMs. (¶ 780.) The TAC specifically identifies ███████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

The TAC also describes the Actavis' Peer Selling Enterprise in great detail ███████

████████████████████████████████████████████

████████████████ (¶¶ 784-89), its Publication Enterprise ███████████████████

████████████████████████████████████ (¶ 790-96), and its marketing message to consumers ██████████████████████████████████

██████████████████████ (¶¶ 789-802.)

Reading these allegations in their totality, and not in isolation as Actavis attempts to do in the JM, MMO has met its burden to plead with the required particularity. Furthermore, this district has held, "[i]n instances where a defendant is more likely to have information regarding names of agents who had contact with a plaintiff and dates of communications with plaintiff, courts will typically not dismiss a plaintiff's claim for fraud for lack of particularity when the plaintiff can obtain these details through discovery." *Vega*, 2004 WL 2358274, at *10. Such is the case with Actavis. It would be inappropriate for the Court to dismiss claims against Actavis when the TAC sets forth the specific details of Actavis' fraud, which will be bolstered during discovery.

## IV.     THE TAC SUFFICIENTLY ALLEGES CONSPIRACY CLAIMS

### A.     THE SEVENTH CIRCUIT DOES NOT REQUIRE MMO TO PLEAD CONSPIRACY UNDER RULE 9(B)

This Court correctly held that the Seventh Circuit does not require RICO conspiracy claims to be pled with specificity under Rule 9(b).   Previous to this Court's ruling in *Testosterone*, the next most recent decision in the Seventh Circuit addressing the pleading standard for RICO conspiracy claims, *Nesbitt v. Regas*, 2015 U.S. Dist. LEXIS 35552 (N.D. Ill. Mar. 20, 2015), holds that a RICO conspiracy claim is not subject to Rule 9(b)'s particularity requirements:

> Unlike [a] substantive RICO claim, however, a RICO conspiracy claim does not need to identify with particularity the two predicate acts, but only needs to allege an agreement that two predicate acts would occur.   The defendant need not personally commit a predicate act; rather, it is sufficient to allege with plausible factual support that the defendant agreed that someone would commit at least two predicate acts, *e.g.,* misrepresentations, in furtherance of the conspiracy.

Id. at *56-57.

Instead, the Seventh Circuit has applied Rule 8(a) notice pleading to RICO conspiracy allegations. *See Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001). Defendants cite what they purport is a "controlling" Seventh Circuit decision, *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502 (7th Cir. 2007),[15] to support their argument that RICO conspiracy must be pled under Rule 9(b).   (JM at 21).   But they overreach.   *Borsellino* only applies to Illinois civil conspiracy common law claims, not RICO claims. *Id.* at 507.   Thus, their argument that "[t]his is as true for RICO conspiracies as for common-law conspiracies" is nothing more than sleight of hand. (JM at 23.)

---

[15] Defendants' Motion for Reconsideration (ECF No. 1207, at 2) describes *Borsellino* as "controlling precedent" on the issue of whether MMO must plead RICO claims adequately under Rule 9(b). Not only does *Borsellino* say no such thing, the Seventh Circuit has applied Rule 8(a) notice pleading to RICO conspiracy allegations. *See Slaney,* 244 F.3d at 600.

Instead, to plead a sufficient RICO conspiracy, MMO must only allege that one or more of the conspirators agreed that one of the other conspirators would fraudulently promote a specific TRT drug, or (for the Inter-Company conspiracy) further the fraudulent promotion by a joint "Unbranded" campaign.  It is not necessary to allege that each Defendant actually agreed to commit or facilitate each and every part of the fraudulent marketing schemes.[16] The defendant need not personally commit a predicate act; rather, it is sufficient to allege with plausible factual support that the defendant agreed that someone would commit at least two predicate acts – *e.g*., misrepresentations, in furtherance of the conspiracy.  *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999).  Furthermore, a plaintiff simply must allege that a defendant "agreed to the objective of a violation of RICO."  *Goren v. New Vision Int'l, Inc*., 156 F. 3d 721, 732 (7th Cir. 1998) (internal citations and quotations omitted).  "If a defendant by his words or actions, objectively manifest[s] an agreement to participate, directly or indirectly, in the affairs of the enterprise, through the commission of two or more predicate crimes," then that defendant may be liable under section 1962(d).  *Roger Whitmore's Auto.  Servs., Inc. v. Lake County*, 424 F.3d 659, 674 (7th Cir. 2005) (internal quotes omitted).

### B. THE TAC SUFFICIENTLY ALLEGES AN INTER-CORPORATE UNBRANDED, "GROW THE PIE" CONSPIRACY IN VIOLATION OF RICO, 18 U.S.C. § 1962(D)

Defendants' illegal agreement and misrepresentations to MMO and the TPPs are alleged in ¶¶ 885-1078 (Inter-Company Conspiracy), ¶¶ 1079-92 (Co-Promotion Conspiracies), and ¶¶ 1093-99 (Intra-Company Conspiracies); and with a wide array of third parties identified in ¶¶ 247-51, 277-81, 294-98.  These allegations include the TAC's detailed allegations of the individual Defendants' substantive RICO violations with these third parties (the "Enterprise

---

[16] The Supreme Court has held that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63-64 (1997). (quoting Justice Holmes: "[P]lainly a person may conspire for the commission of a crime by a third person."). Thus later-joining manufacturer defendants face RICO conspiracy liability as well.

Conspiracies").  (*Id.* ¶¶ 225-335 (Formation of Enterprises), ¶¶ 356-526 (AbbVie), ¶¶ 527-691 (Auxilium), ¶¶ 692-770 (Lilly), ¶¶ 771-812 (Actavis), and ¶¶ 813-84 (Endo).[17]

As in their earlier motion, Defendants argue that the TAC's Inter-Corporate Conspiracy allegations only assert perfectly legal "parallel" conduct. (JM at 24-25.) However, the TAC's Inter-Corporate Conspiracy allegations are sufficiently pled under Rule 8(a), particularly under the Seventh Circuit's standard articulated in *In re Text Messaging Antitrust Litig*., 630 F.3d 622 (7th Cir. Ill. 2010), affirming this Court.  There the Court of Appeals discussed "the type of evidence that enables parallel conduct to be interpreted as collusive" to support a conspiracy claim, and found that "parallel plus" behavior (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, n.5 (2007) could suffice. The Circuit Court concluded that the "second amended complaint provides a sufficiently plausible case of price fixing to warrant allowing the plaintiffs to proceed to discovery."  *Id.* at 628-29.  Judge Posner, citing *Twombly*, describes examples of parallel conduct allegations that would be sufficient, including parallel behavior that would "probably not result from chance, coincidence, independent responses to common stimuli, mere interdependence unaided by an advance understanding among the parties or conduct that indicates the sort of restricted freedom of action and sense of obligation that one generally associates with an agreement."  *Id.* at 628.  Tipping the scales were allegations that the defendants behaved uniformly, made complex and historical changes in pricing policy at the same time, and without any discernible reason.  *Id.*  The Court noted, "[t]hat is the kind of 'parallel plus' behavior" which allowed "[a] plausible inference of conspiracy."  *Id.*

The TAC meets this standard by alleging much more than lawful, parallel conduct. Agreements to achieve the overall profit-driven objectives of the conspiracies can be inferred

---

[17] Although the Seventh Circuit does not require RICO conspiracy claims to be pled with particularity, Plaintiff's substantive RICO fraud allegations nevertheless include detailed allegations of the circumstances of fraud, including examples specifying the who, what, where and when of Defendants' misrepresentations to MMO.

from the TAC's allegations read as a whole. The TAC sufficiently alleges, at a minimum, tacit agreements between the Defendants, which is sufficient in this Circuit. For example, in *In re Brand Name Prescription Drugs Antitrust Litigation*, 1996 WL 167350 (N.D. Ill. 1996), Judge Kocoras relied on a number of factors when denying the manufacturers' motion for summary judgment, including the "uniformity" of the manufacturers' policies, and "the fact that it was in the manufacturers' interest to act as they were alleged to have acted; and the fact that they had the opportunity to so act." *Id.* at *8.

The same is true here. The TAC alleges Defendants' "uniformity" of policies to "Grow the Pie" with their fraudulent "Unbranded" campaign (which was in their "interests to act," and each seized upon "the opportunity to so act." (¶¶ 886-909.) That the Defendants had something to gain because "consciously engaging in apparently [deceptive] parallel conduct is a critical component to the plaintiffs' conspiracy claim," which "entails a showing that the conduct claimed to be parallel would be in each conspirator's interest only if all conspirators acted alike. It would be against each conspirator's interest if a conspirator acted alone. *In re Brand Name,* 1996 WL 167350, at *8 (internal citation omitted).

The TAC alleges Defendants have engaged in parallel "plus" behaviors, which amply supports a plausible inference of conspiracy. Such examples alleged in the TAC include:



---

[18] (See, e.g., ¶¶ 6, 17, 229, 328-55, 423, 521, 626-27, 635, 761, 800-01, 871, 885-909, 916, 921, 932, 939-40, and 1066-78.)



---

19 (*See, e.g.*, ¶¶ 6, 344-45, 369, 389, 480, 625, 627, 634-35, 681, 688, 730, 871, 880, 890, 895-96, 898-900, 909, 913, 915-16, 918-19, 932, 935, 937, 970, 997, 1064, and 1066-78.)
20 The FDA outlined these principles in its "Help-Seeking and Other Disease Awareness Communications by or on Behalf of Drug and Device Firms" ("Disease Awareness Guidance"). (¶ 895.)
21 (*See, e.g.*, ¶¶ 4-5, 12, 14-15, 285, 331, 343-44, 346, 357, 423, 426-28, 433, 459, 463, 470, 475, 526, 536, 582, 589, 607, 610, 625-26, 630-36, 643-67, 672, 677-84, 687-88, 705, 708, 711, 726, 728, 730, 747, 750, 761, 765-67, 769, 797-98, 805, 808, 817-18, 848, 850, 871-72, 875-77, 880, 886, 891, 906, 919, 922, 929, 937, 940-41, 948, 984, 997, 1013, 1049, 1068, 1071-75, and 1109.)

- 

In sum, the TAC adequately alleges multiple instances of Defendants' deceptive and "uniform" behavior, which did not result from chance, or coincidence, or from any discernable legitimate reason. Rather, MMO has pled a tacit (if not explicit) agreement to "Grow the Pie," which satisfies the Parallel Plus standard in this Circuit.

## V. THIS COURT HAS ALREADY CORRECTLY CONCLUDED THAT MMO'S NEGLIGENT MISREPRESENTATION CLAIMS ARE SUFFICIENTLY PLEADED

The Court has already correctly decided that negligent misrepresentation should proceed. *Testosterone*, 2016 WL 427553 at *19. Despite the Court's instruction that the parties must limit their briefing to issues related to Rule 9(b) particularity, Defendants attempt to re-litigate this settled issue by briefing a recently decided non-binding, factually-distinct Delaware state court case. (JM at 26-27.)[22] Defendants' specious attempt to re-open the issue does not merit reconsideration of this Court's prior ruling. Additionally, as this Court previously ruled, under

---

[22] Defendants seize upon a recent Delaware Supreme Court decision, *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms., L.P.,* 2016 LEXIS 236 (Del. Apr. 12, 2016), to argue that the TAC is inadequate because it fails to allege the "common sense principle" of what MMO did once it became aware of their fraud. (JM at 19.) Defendants' argument ignores the fact that much of their fraud remains hidden under a protective order, barring disclosure to MMO and the TPP Class Members. (MDL Case Management Order No. 8, ¶ 9(a)-(h).) Indeed, the publicly filed TAC resembles a block of Swiss cheese with numerous redactions throughout, obscuring Defendants' egregious conduct. (ECF No. 162.) Unlike here, where MMO and the TPP Class Members have yet to have access to much of the detailed information as to how Defendants defrauded them, in *Teamsters Local* the Plaintiff was fully aware of, and litigating, the alleged fraud for some 10 years, and did nothing to change its formulary. Moreover, speculation as to the current status of MMO's formulary is improper and beyond the four corners of MMO's TAC. MMO has alleged that Defendants' fraudulent and misleading messages as to TRT safety and efficacy induced it to add TRT products to its formulary and maintain them on the formulary without restriction. MMO also alleged that it could have taken steps to limit payments for unsafe and unapproved uses had it known of Defendants' fraudulent scheme. (¶ 1123.) Any speculation as to additional steps taken to limit TRT utilization is beyond MMO's TAC and is more properly considered at summary judgment. Lastly, notwithstanding the fact that the Court has already decided the issue, *Teamsters Local 237* does not even address negligent misrepresentation claims, or for that matter Ohio law.

Ohio law, "justifiable reliance is a question of fact." *Testosterone*, 2016 WL 427553, at *19 (citing *Mishler v. Hale*, 26 N.E.3d 1260, 1271 (Ohio App. 2d Dist. 2014)). Thus, Defendants' efforts to resurrect this issue, with unsubstantiated arguments beyond the four corners of MMO's TAC, are both improper and entirely inappropriate at the pleading stage.

## VI. TO THE EXTENT ANY CLAIMS ARE DISMISSED, SUCH DISMISSAL SHOULD BE WITHOUT PREJUDICE

MMO has more than sufficiently alleged RICO and state law claims to withstand Rule 9(b) scrutiny against each Defendant. Yet, in the event that the Court finds that MMO has not sufficiently carried its burden, MMO requests that any dismissal be granted without prejudice, giving MMO the opportunity to amend its pleadings.

## <u>CONCLUSION</u>

For these reasons, the Court should deny Defendants' Motion.


Dated: June 20, 2016               Respectfully submitted,

/s Conlee Whiteley
KANNER & WHITELEY, LLC
Allan Kanner, Esq. (LA Bar No. 20580)
Conlee S. Whiteley, Esq. (LA Bar No. 22678)
701 Camp Street
New Orleans, Louisiana 70130
Tel: (504) 524-5777
Fax: (504) 524-5763

and

THE SIMMER LAW GROUP PLLC
W. Scott Simmer, Esq. (D.C. Bar No. 460726)
Thomas J. Poulin, Esq. (D.C. Bar No. 475115)
The Watergate
Suite 10-A
Washington, DC 20037
Tel: (202) 333-4562
Fax: (202) 337-1039

*Attorneys for Plaintiff Medical Mutual of Ohio*

SIMMONS HANLY CONROY
Trent B. Miracle, Esq. (IL Bar No. 6281491)
Brendan A. Smith, Esq. (IL Bar No. 65190)
One Court Street
Alton, IL 62002
Tel:  (618) 259-2222
Fax:  (618) 259-2251

and

SEEGER WEISS LLP
Christopher A. Seeger, Esq. (NY Bar No. 2425304)
Stephen A. Weiss, Esq. (NY Bar No. 2413342)
77 Water Street
New York, NY 10005
Tel:  (212) 584-0700


and

SCHACHTER HENDY & JOHNSON PSC
Ronald E. Johnson, Jr., Esq. (KY Bar No. 88302)
Sarah N. Lynch, Esq. (KY Bar No. 94261)
909 Wright's Summit Parkway
Suite #210
Ft. Wright, KY 41011
Tel:  (859) 578-4444
Fax:  (859) 578-4440

*MDL Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2016 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all registered attorneys of record.


<u>/s/ Conlee Whiteley</u>