# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION
### [REDACTED VERSION]

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION<br>Coordinated Pretrial Proceedings | Master Docket Case No. 1:14-cv-01748<br>MDL No. 2545<br><br>Hon. Judge Matthew F. Kennelly |
| This document relates to:<br><br>MEDICAL MUTUAL OF OHIO,<br><br>                Plaintiff,<br><br>v.<br><br>ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY NORTH AMERICA, LLC, SOLVAY PHARMACEUTICALS, INC., SOLVAY PHARMACEUTICALS SARL, SOLVAY, S.A., AUXILIUM, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX LIMITED, ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC.,<br><br>                Defendants. | No. 1:14-cv-08857 |

## ACTAVIS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(b)

James W. Matthews *(pro hac vice)*
Katy E. Koski *(pro hac vice)*
Jason L. Drori *(pro hac vice)*
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199

Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jdrori@foley.com

David B. Goroff (IL Bar No. 6190039)
Jonathan W. Garlough (IL Bar No. 6295597)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Tel: (312) 832-4500
Fax: (312) 832-4700
dgoroff@foley.com
jgarlough@foley.com

*Counsel for Defendants Actavis plc, Actavis,
Inc., f/k/a Watson Pharmaceuticals, Inc.,
Actavis Pharma, Inc., Watson Laboratories,
Inc., n/k/a Actavis Laboratories UT, Inc., and
Anda, Inc.*

2

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................ 5

    A. Plaintiff's Limited Allegations Against Actavis Do Not Plead Knowledge Of Or Agreement To AbbVie's Or The Other Defendants' "Pattern Of Racketeering" ........................................................................................ 5

        1. Plaintiff Does Not Allege That Actavis Acted In Concert With Any Other Defendant As To The Alleged Androderm-Related Enterprises ............................................................................... 6

        2. Plaintiff Cannot Allege That Actavis Agreed To A Pattern Of Racketeering Activity ............................................................... 9

            a. As This Court Recognized, Plaintiff Does Not Implicate Actavis In The Alleged Inter-Company Conspiracy .................. 10

            b. Plaintiff's Allegations As To The Alleged Co-Promotion Conspiracy Do Not Show Any Agreement By Actavis To AbbVie's Pattern Of Racketeering ............................... 11

    B. The Allegations That Led This Court To Find That Plaintiff Pleaded A RICO Conspiracy Claim Against Actavis Do Not Bear Scrutiny ....................... 13

III. ARGUMENT .................................................................................................. 16

    A. This Court Should Reconsider Its Ruling That Plaintiff States A RICO Conspiracy Claim Against Actavis ....................................................... 16

        1. Actavis Satisfies The Standard For Reconsideration ............................... 16

        2. As A Matter Of Law, Plaintiff States No Conspiracy Claim Against Actavis ................................................................... 16

            a. While Plaintiff Must Satisfy The Plausibility Standard of *Twombly*, It Does Not Do So As To Actavis ............................... 16

            b. In Order To State A RICO Conspiracy Claim Plaintiff Must State Actavis' Agreement To AbbVie's Pattern Of Racketeering ............................................................... 18

            c. *Empress IV* Shows That Plaintiff Cannot Meet The High Bar Of Showing Actavis' Agreement To AbbVie's Pattern Of Racketeering ....................................................... 20

4823-1116-3703

B.    Actavis Meets The Standards For Permissive Interlocutory Appeal Under
       28 U.S.C. § 1292(b) ............................................................................................ 25

       1.    The Opinion And Order Presents A Question Of Law ............................. 26

       2.    The Opinion And Order Presents A "Controlling Question" ................... 27

       3.    The Question of Law Is Contestable ........................................................ 27

       4.    Immediate Appeal Would Materially Advance This Litigation ............... 27

       5.    The Motion Is Timely ............................................................................... 28

IV.    CONCLUSION ................................................................................................... 28

4823-1116-3703

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ...........................................................................................24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................16

*Board of Trs. of the Auto. Mechanics' Local No. 701 Union & Industry Welfare
Fund v. Beland &Wiegers Enters., Inc.*,
No. 13-cv-1611, 2014 WL 5475291 (N.D. Ill. Oct. 29, 2014) ................................................16

*City of Joliet v. Mid-City Nat'l Bank*,
No. 06 C 6746, 2008 WL 4889038 (N.D. Ill. June 13, 2008) ....................................25-26, 28

*Dahlstrom v. Sun-Times Media, LLC*,
39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) .............................................................................28

*DeGuelle v. Camilli*,
664 F.3d 192 (7th Cir. 2001) ................................................................................. 4, 24-25, 27

*District 1199P Health & Welfare Plan v. Janssen, L.P.*,
No. 06-3044 (FLW), 2008 WL 5413105 (D.N.J. Dec. 23, 2008).....................................22-23

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
No. 15-2526, 2016 WL 4097439 (7th Cir. Aug. 2, 2016) ......................................3, 16, 19-22

*First Nat'l Bank v. Midwest Autohaus, Inc.*,
241 F.3d 862 (7th Cir. 2001) ................................................................................................19

*Fosco v. DiFronzo*,
No. 09 C 1882, 2009 WL 2244611 (N.D. Ill. July 28, 2009) .................................................18

*Gamboa v. Velez*,
457 F.3d 703 (7th Cir. 2006) ............................................................................................26, 27

*Goren v. New Vision Int'l, Inc.*,
156 F.3d 721 (7th Cir. 1998) ........................................................................................18, 19, 22

*In re Ocwen Fed. Bank FSB*,
No. 04 C 2714, MDL 1604, 2006 WL 1371458 (N.D. Ill. May 16, 2006).......................26, 27

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ................................................................................................26

*Iowa Physicians Clinic Medical Foundation v. Physicians' Ins. Co. of Wis.*,
    No. 07-cv-4012, 2008 WL 268758 (C.D. Ill. Jan. 29, 2008).................................................28

*Krakow Business Park v. Locke Lord, LLP*,
    135 F. Supp.3d 770 (N.D. Ill. 2015) ........................................................................17, 23, 24

*Lachmund v. ADM Investor Services, Inc.*,
    191 F.3d 777 (7th Cir. 1999) ..............................................................................................20

*Limestone Development Corp. v. Village of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) .......................................................................................1, 16, 17

*Mace v. Van Ru Cr. Corp.*,
    No. 94 C 7450, 1995 WL 716636 (N.D. Ill. Dec. 1, 1995) ..............................................27, 28

*Meier v. Musburger*,
    588 F. Supp. 2d 883 (N.D. Ill. 2008) .................................................................................17

*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
    No. 09 C 5619, 2010 WL 3940694 (N.D. Ill. Oct. 6, 2010) (Kennelly, J.) .................17, 20, 24

*Resolution Tr. Corp. v. Franz*,
    No. 93 C 2477, 1996 WL 166940 (N.D. Ill. Apr. 8, 1996).....................................................28

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012)..........................................................................................24

*Schiffels v. Kemper Financial Services, Inc.*,
    978 F.2d 344 (7th Cir. 1992) ..............................................................................................18

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) ............................................................................................17

*United States v. Moglia*,
    No. 02 C 6131, 2004 WL 1254128 (N.D. Ill. June 7, 2004) ................................................27

*VBR Tours, LLC v. Amtrak*,
    No. 14-cv-00804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015)...........................................16

*Wieboldt Stores, Inc. v. Schottenstein Stores Corp.*,
    No. 87 C 8111, 1989 WL 51068 (N.D. Ill. May 5, 1989) .....................................................27

**Statutes**

18 U.S.C. §1962(c) .............................................................................................2, 5, 13, 15

28 U.S.C. §1292(b) .....................................................................................1, 4, 26, 27, 28, 29

**Rules**

Fed R. Civ. P. 8...................................................................................................16, 17

Fed. R. Civ. P. 9(b).................................................................................................13

Fed. R. Civ. P. 12(b)(6)...........................................................................................26

Defendants Actavis plc, Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc., Actavis

Pharma, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc. and Anda, Inc.

(each individually an "Actavis Defendant" and "collectively "Actavis"), by its attorneys, Foley

& Lardner, LLP, respectfully submits the following memorandum in support of its Motion for

Reconsideration Or, In The Alternative, To Certify This Court's Order To The Seventh Circuit

For Interlocutory Appeal Under 28 U.S.C. §1292(b).

## I. <u>INTRODUCTION</u>

It would be manifestly unjust to allow this case to go forward as to Actavis. Here,

Plaintiff, despite four opportunities and what this Court recognized was a reasonable opportunity

to investigate, can state no claim for RICO conspiracy against Actavis. Plaintiff's allegations

attempting to tie Actavis to the AndroGel-Related Enterprise are completely conclusory and

devoid of content and do not permit an inference that Actavis agreed to a pattern of racketeering

by AbbVie or any other Defendant. Accordingly, Seventh Circuit precedent holds that Actavis

should not be put through the cost and burdens of discovery, nor should it have to face the

prospect of treble damages. *See, e.g., Limestone Development Corp. v. Village of Lemont, Ill.*,

520 F.3d 797, 803 (7th Cir. 2008). Instead Actavis should be dismissed from this case.

In its Memorandum Opinion and Order dated August 2, 2016 [Dkt. 170] ("Opinion and

Order" or "Op."), this Court correctly acknowledged that Actavis was not part of Plaintiff's

alleged co-branding conspiracy. This Court found that Plaintiff pleaded such a conspiracy as to

other Defendants because they are alleged to have engaged in conduct including jointly funding

"AstroTurf" organizations; jointly sponsoring Continuing Medical Education ("CME"); jointly

paying the same physicians consulting and promotional fees in connection with their TRT

(testosterone replacement therapy) drugs, and directing consumers to the same generic TRT

websites and Low T Questionnaires. (Op. 16) But Plaintiff makes no such allegations as to

1

Actavis.  This Court, therefore, found it "notabl[e]" that "most of Medical Mutual's allegations of Defendant's co-branding campaign did not involve Actavis."  (Op. 17)

This Court also correctly found that Plaintiff states no claim against Actavis under RICO Section 1962(c) or for negligent misrepresentation because Actavis made no misrepresentation. The Court found that Plaintiff's allegations of direct misrepresentations "are not only general but conclusory."  (Op. 11)

This Court erred, however, in finding that Plaintiff pleaded a RICO conspiracy claim based on Plaintiff's alleged Co-Promotion Conspiracy.  The Court based this conclusion on two things – *first*, that in settling a patent litigation, an Actavis Defendant had entered into a co-promotion agreement (the "Co-Promotion Agreement") with a predecessor of AbbVie, another Defendant, and that its sales force received training related to that Agreement from that AbbVie entity, and, *second*, that Actavis operated its own unbranded Low T website.  The Court found that these permit an inference that Actavis agreed to AbbVie's AndroGel-related RICO enterprise.  (Op. 17)  Actavis respectfully disagrees.  To be sure, Plaintiff alleged ████

████████████████████████████████████████████████████████████████████

████████████████████████████ (¶1087)[1]  Yet this is entirely conclusory.  Plaintiff provides no fact or content whatsoever as to anything actually done in that training or anything about when or where it occurred or for how long.

Nor does that empty assertion suffice to allege an agreement by Actavis as to AbbVie's unlawful objectives, even if Actavis could be inferred to have known of these from the bare allegation that it learned of AbbVie's ████████████████████████████████

████████.  Plaintiff does not allege that ████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[1] Paragraph citations are to the Third Amended Complaint ("TAC").

(¶1088)  That allegation is equally consistent with 

 Plaintiff does not plead otherwise.  Under these circumstances, Seventh Circuit

precedent does not permit an inference of an agreement to AbbVie's pattern of racketeering.

Likewise, Actavis' personal website does not show any agreement by Actavis to

AbbVie's pattern of racketeering.  To the contrary, Plaintiff alleged

 (¶804) –

. And this Court agreed that "it might be rational

for any one defendant acting alone to decide that an unbranded marketing campaign to 'grow the

pie' would be in its best interests."  (Op. 16) .

Plaintiff alleges nothing tying the website to AbbVie or AndroGel or permitting an inference of

that linkage.

When it issued its Opinion, this Court did not have the benefit of the Seventh Circuit's

decision in *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, No. 15-2526, 2016 WL

4097439 (7th Cir. Aug. 2, 2016) ("*Empress IV*"), which was decided the same day.  *Empress IV*

underscores the steep hurdles a plaintiff must satisfy in this Circuit to allege a RICO conspiracy.

In *Empress IV*, the Seventh Circuit reversed a jury verdict that had found a RICO conspiracy on

the ground that no reasonable jury could find that a RICO conspiracy existed because, while the

facts showed that the defendant had agreed to a civil conspiracy, it had not agreed to a pattern of

racketeering in which someone would commit at least two predicate acts, as is necessary to

establish RICO conspiracy liability.  The Seventh Circuit made clear that it is not enough to

plead that a defendant entered into an agreement with another and that that other party violated

RICO.  The Seventh Circuit recognized that former Governor Rod Blagojevich had engaged in

multiple bribery schemes with others.  But it found the evidence did not support a finding that

Balmoral Racing Club, Inc., the defendant, knew of or agreed to these other schemes.  Here,

3

Plaintiff pleads detailed allegations of how ███████████████████████████
████████████████████████████████████████████ (*see, e.g.*, ¶¶371-72), but there
is no basis to infer from that that ████████████████████████████████████████
████████████████████████████████████████████████████████████████

Plaintiff does not and cannot allege that Actavis subsequently engaged in the wrongful tactics it claims that AbbVie employed.

Because the allegations *do not* permit an inference that Actavis agreed to AbbVie's RICO conspiracy, Actavis believes that the Opinion and Order reflects a manifest error of law and respectfully requests that this Court reconsider its conclusion that Plaintiff has stated a claim for RICO conspiracy against Actavis. In the alternative, Actavis respectfully requests this Court to certify its Opinion and Order to the Seventh Circuit for interlocutory appeal under 28 U.S.C. § 1292(b). Actavis satisfies Section 1292(b)'s standards here. Most importantly, this case presents a controlling question of law because, if Actavis is correct and the allegations do not permit this Court's inference, then the TAC does not state a claim against Actavis and if an appeal is granted the case would be over as to it. Moreover, there is a substantial ground for difference of opinion as to whether a conclusory allegation that an alleged RICO conspirator had knowledge of another RICO defendant's unlawful practices is sufficient to support an inference of agreement where the plaintiff pleads substantial detail only about that other defendant's practices. This Court relied on *DeGuelle v. Camilli*, 664 F.3d 192 (7th Cir. 2001), to suggest that one can infer a RICO conspiracy based on sparse factual allegations, but the degree of detail pleaded there – and yet found sparse – shows how totally absent such factual allegations are here.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Limited Allegations Against Actavis Do Not Plead Knowledge Of Or Agreement To AbbVie's Or The Other Defendants' "Pattern Of Racketeering"

Plaintiffs have now had four opportunities to plead a RICO conspiracy claim against Actavis and this Court agrees that Plaintiff had a reasonable opportunity to investigate before it filed the TAC.  (Op. 8)  Yet, while the TAC runs 496 pages and contains 1537 paragraphs, only a very tiny percentage mention Actavis specifically at all.  Indeed, Plaintiff acknowledged to this Court that its allegations against Actavis are "not as detailed"[2] as those it raises as to other Defendants.  In fact, Plaintiff does not and cannot allege any agreement by Actavis to the conduct by the other Defendants that this Court found stated a substantive RICO violation under 18 U.S.C. §1962(c).  Rather, what Plaintiff alleges as to Actavis is consistent with ordinary course, rational and lawful business conduct, including as to Actavis' Co-Promotion Agreement with AbbVie and its website.

The relevant Count against Actavis in Count XXIV, which incorporates the 1502 paragraphs that come before it and, while the Court did not rely on many of these allegations in concluding that Plaintiff states a RICO conspiracy claim against Actavis, a review of the entire substantive allegations of the TAC shows definitively that Plaintiff's allegations as to Actavis are few, thin and, for all material purposes, conclusory.



---

[2] Plaintiff's Opposition to Defendant's Motion to Dismiss the TAC, Dkt. 167, at 23.

4823-1116-3703

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████

██████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████

      **1.**      **Plaintiff Does Not Allege That Actavis Acted In Concert With Any
Other Defendant As To The Alleged Androderm-Related Enterprises**

███████████████████████████████

██████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[3] █████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████

6



[redacted]



[redacted]



[redacted]

[redacted]

**2. Plaintiff Cannot Allege That Actavis Agreed To A Pattern Of <u>Racketeering Activity</u>**

Plaintiff alleges that Defendants engaged in three forms of RICO conspiracies: (a) among Defendants themselves, in a deceptive "unbranded" marketing campaign (the "Inter-Corporate Conspiracy"); (b) between Defendants and their Co-Promoters (the "Co-Promoter Conspiracy"); and (c) between each Defendant and its third party marketers and promoters (the "Intra-Corporate Conspiracy"). (¶¶885-1099) In its Opinion, this Court addressed only the first two as

having possible relevance as to Actavis.[4]

**a. As This Court Recognized, Plaintiff Does Not Implicate Actavis In The Alleged Inter-Company Conspiracy**

[redacted]

[redacted]

[redacted]

[redacted]

---

[4] Since this Court agreed that Actavis itself did not violate RICO's substantive provisions, this would seem to preclude Plaintiff's allegation of a "Intra-Corporate Conspiracy" as to Actavis, even if this Court were to consider it.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

    b.  **Plaintiff's Allegations As To The Alleged Co-Promotion Conspiracy Do Not Show Any Agreement By Actavis To AbbVie's Pattern Of Racketeering**

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

███████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████[8]  Plaintiff makes no

specific allegation of any deception by or relating to marketing by Actavis, as Fed. R. Civ. P.

9(b) requires for such a fraud-based allegation.

**B.    The Allegations That Led This Court To Find That Plaintiff Pleaded A RICO Conspiracy Claim Against Actavis Do Not Bear Scrutiny**

In its Opinion, this Court correctly determined that Plaintiff can state no substantive

RICO claim against Actavis under Section 1962(c) and that Plaintiff has no negligent

misrepresentation claims against Actavis.  As noted above, this Court noted that there was no

allegation of a direct misrepresentation by Actavis to Plaintiff.  (Op. 11)

However, this Court erred concluding that Plaintiff pleads a RICO conspiracy claim

against Actavis.  Plaintiff's allegations as to Actavis simply do not meet Seventh Circuit

standards for pleading a RICO conspiracy.  And the same finding that "general" and

"conclusory" allegations do not suffice to state a direct RICO claim against Actavis should have

led this Court to conclude that it was not possible to infer agreement to a conspiracy from

Plaintiff's conclusory allegation that Watson was trained "on the AndroGel fraudulent marketing

---

[8] Plaintiff in fact pleads no "linkage" between Actavis and any other party that had a co-promotion agreement with AbbVie.

scheme."

This Court agreed that more than parallel conduct is required to support an inference of an agreement and that "without any 'parallel plus' behavior, Medical Mutual's conspiracy claims are deficient." (Op. 16) (citing *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010)). This Court also agreed that "it might be rational for one defendant acting alone to decide that an unbranded marketing campaign to 'grow the pie' would be in its self-interest." (Op. 16) However, the Court found that Plaintiff had alleged "parallel plus" behavior, explaining:

> But once defendant has already began such an unbranded campaign, from which all defendants benefit, what incentive would other defendants have to join the campaign and fund the same AstroTurf organization and physicians instead of free riding on one or more of the other defendants? It would be unusual for each of the other defendants to assist in the unbranded endeavor without "advance understanding among the parties." Thus, given this seemingly anomalous behavior, as well as other aspects of industry structure and practice that might facilitate collusion (such as the relatively small number of defendants and their regular joint attendance at industry conferences), the Court concludes that an agreement to engage in a fraudulent marketing campaign can be reasonably inferred. (Op. 16-17)

However, Actavis was not one of the Defendants said to have funded AstroTurf organizations and physicians. (Op. 15) It is not alleged to have regularly joined attendance at industry conferences with its rivals. Based on the dearth of allegations about Actavis, this Court correctly concluded as noted above, that Actavis was not part of the Co-Branding Conspiracy. (Op. 17)

Nonetheless, the Court found that Plaintiff pleaded a RICO conspiracy claim against Actavis based on two alleged facts – *first* that it had a Co-Promotion Agreement with AbbVie and that its personnel received training related to that, and *second*, that Actavis operates its own unbranded Low T website. (Op. 18) It found "these allegations are certainly adequate to support the claim that Actavis agreed with AbbVie that it would 'knowingly facilitate the activities' of the operations of AbbVie's RICO enterprise and that it would commit a number of predicate acts of fraud to do such in violation of Section 1962(d)." (Op. 17-18) Actavis believes this is

14

incorrect.

First, one cannot infer an agreement to AbbVie's RICO enterprise from Watson's entry into the Co-Promotion Agreement. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████ No "parallel plus" activity is alleged as to the Co-Promotion Agreement.

In addition, Plaintiff makes no allegation that Actavis did anything with regard to that Co-Promotion Agreement that furthered AbbVie's criminal objectives or violation of Section 1962(c). ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ (¶1081) Plaintiff pleads nothing to permit an inference that Actavis performed under the Co-Promotion Agreement in anything but a lawful way.

Further, and importantly, one cannot infer *Actavis*' agreement to AbbVie's racketeering because Plaintiff pleads ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

Finally, Actavis' own website does not show any agreement *with AbbVie* or any other Defendant to engage in a joint fraudulent marketing campaign. To the ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

15

███████████████████████████████████

███████████████████████████████

## III.   ARGUMENT

### A.   This Court Should Reconsider Its Ruling That Plaintiff States A RICO Conspiracy Claim Against Actavis

#### 1.   Actavis Satisfies The Standard For Reconsideration

Motions for Reconsideration have the "function of allowing the Court to correct manifest errors of law or fact or to consider newly discover material evidence." *Board of Trs. of the Auto. Mechanics' Local No. 701 Union & Industry Welfare Fund v. Beland &Wiegers Enters., Inc.*, No. 13-cv-1611, 2014 WL 5475291, at *2 (N.D. Ill. Oct. 29, 2014).  A motion to reconsider is proper when the "Court has made an error . . . of apprehension" or "fail[s] to recognized controlling precedent."  *VBR Tours, LLC v. Amtrak*, No. 14-cv-00804, 2015 WL 5693735, at *5 (N.D. Ill. Sept. 28, 2015) (citations omitted).  Plaintiff's allegations simply do not meet the high threshold for pleading a RICO conspiracy claim set forth by *Empress IV* and other precedent.

#### 2.   As A Matter Of Law, Plaintiff States No Conspiracy Claim Against Actavis

##### a.   While Plaintiff Must Satisfy The Plausibility Standard of *Twombly*, It Does Not Do So As To Actavis

The sufficiency of allegations regarding conspiratorial agreements are subject to the pleading standard of Fed. R. Civ. P. 8.  As such, those allegations must satisfy the plausibility requirement set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny.  Thus, a conspiratorial agreement must be "plausible on its face," *id.* at 570, and supported by fact-based allegations, not legal labels and conclusions.  The Seventh Circuit has held that *Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the Plaintiff has a substantial case."  *Limestone Development Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802-803 (7th Cir. 2005).

16

Judge Posner in *Limestone* explained why it is especially important to satisfy *Twombly's* plausibility requirements in the case of RICO claims:

> Under *Bell Atlantic*, the complaint in a potentially complex litigation, or one that by reason of the potential cost of a judgment to the defendant creates the "in terrorem" effect against which *Blue Chip [Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)] warned, must have some degree of plausibility to survive dismissal. It is true that the narrowest holding in *Bell Atlantic* is merely that an antitrust complaint charging an agreement between firms not to compete must contain "enough factual matter (taken as true) to suggest that an agreement was made ..." But the concern is as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful plaintiff. RICO cases like antitrust cases, are "big" cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim.

*Id.* at 520 F.3d at 803. *Accord Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

Indeed, this Court in other cases has relied on this same reasoning to dismiss RICO conspiracy claims at the pleading stage. In *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C 5619, 2010 WL 3940694 (N.D. Ill. Oct. 6, 2010) (Kennelly, J.) this Court noted that:

> [f]or complex claims like the RICO claims at issue here, a fuller set of factual allegations may be necessary to show that the plaintiff's claim is not largely groundless. When, as in this case, discovery would be unusually time-consuming and expensive, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim.

*Id.* (internal citations and quotations omitted).

Allegations that do not plausibly support a conspiratorial agreement state no claim for RICO conspiracy and must be dismissed. *See Krakow Business Park v. Locke Lord, LLP*, 135 F. Supp.3d 770, 772, 791-98 (N.D. Ill. 2015) (applying Rule 8 and *Twombly's* plausibility standard to conclude that plaintiff had insufficiently alleged knowledge and agreement); *Meier v. Musburger*, 588 F. Supp. 2d 883, 912 (N.D. Ill. 2008) (allegations did not plausibly suggest a RICO conspiracy).

Relatedly, the Seventh Circuit and other Courts in this District and elsewhere have

17

stressed "conclusory allegations of 'conspiracy' are not sufficient under RICO; rather, the Plaintiff must allege supportive facts." *Fosco v. DiFronzo*, No. 09 C 1882, 2009 WL 2244611, at *4 (N.D. Ill. July 28, 2009) (quoting *Schiffels v. Kemper Financial Services, Inc.*, 978 F.2d 344, 352 (7th Cir. 1992)).

Here, the fact that Actavis had a Co-Promotion Agreement coupled with conclusory allegations of training cannot support an inference that Actavis agreed to facilitate AbbVie's RICO enterprise. Plaintiff does not allege "supportive facts" about the training. Its conclusory allegations of conspiracy, therefore "are not sufficient under RICO." *Schiffels*, 978 F.2d at 352.

> **b.      In Order To State A RICO Conspiracy Claim Plaintiff Must State Actavis' Agreement To AbbVie's Pattern Of Racketeering**

The Seventh Circuit has cautioned "that the broad construction of the RICO conspiracy provision should not be used by the courts to criminalize mere association with an enterprise." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 731-32 (7th Cir. 1998) (quoting *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir.), *cert. denied*, 479 U.S. 940 (1986)). Rather, the Seventh Circuit has stressed that the "touchstone of liability is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren*, 136 F.3d at 732.

As the Seventh Circuit explained in *Goren*, in turn, quoting *Neopolitan*:

> From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ...:  an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of Section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential.

18

*Goren*, 156 F.3d at 732 (quoting *Neapolitan*, 791 F.2d at 499).

The pleading of an agreement has both a knowledge and a meeting of the minds component. As to knowledge, to establish the necessary agreement a plaintiff must allege that the defendant knew the scope and the objective of the illegal enterprise. An agreement to participate in the affairs of an enterprise is an agreement to knowingly facilitate the activities of those who are operating an enterprise in an illegal manner. *First Nat'l Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 869 (7th Cir. 2001) (quoting *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000)).

The meeting of the minds component, in turn, has two subparts. As the Seventh Circuit stated in *Goren*: the plaintiff must allege "that (1) the defendant[s] agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant[s] further agreed that someone would commit at least two predicate acts to accomplish these goals." Further, as *Goren* holds, the agreement must be as to two *specific* predicate acts. *See Goren*, 156 F.3d at 732 ("Moreover, the complaint also fails to allege an agreement by [the alleged RICO conspirator] to the commission of two specific predicate acts."); *see also Empress IV*, 2016 WL 4097439, at *3 (internal quotations omitted) (reaffirming these standards). While a "RICO conspirator need not agree to commit personally two predicate acts in furtherance of the enterprise[,] . . . he must agree that someone will commit them." *Id.* Similarly, although the alleged conspirator need not participate in the affairs of an enterprise of racketeering activity, he must agree that someone does. *Id.*

A failure to adequately plead each of these steps is fatal to a RICO conspiracy claim. As this Court has previously noted, dismissal is appropriate "[i]f a complaint fails to allege any facts indicating an agreement by the defendants as to which roles they would play in the enterprise or any agreement by the defendants that someone would commit two specific predicate acts on

19

behalf of the enterprise . . . ." *Pennsylvania Chiropractic Ass'n*, 2010 WL 3940694, at *5. *See also Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 784-85 (7th Cir. 1999) (A RICO claim must be dismissed if it fails to allege any facts indicating an agreement by the defendants as to which roles they would play in the enterprise or any agreement by the Defendants that someone would commit the specific predicate acts on behalf of that enterprise).

Here, Plaintiff's allegations about the Co-Promotion Agreement (and about Actavis as a whole) satisfy neither prerequisite for finding an agreement.

> c.  *Empress IV* Shows That Plaintiff Cannot Meet The High Bar Of Showing Actavis' Agreement To AbbVie's Pattern Of Racketeering

*Empress IV* crystallizes and reemphasizes the high hurdle that a plaintiff alleging a RICO conspiracy must meet, and requires a reconsideration of the Court's ruling.[9]

In *Empress IV*, the Seventh Circuit noted Rod Blagojevich, Illinois' former Governor, had been found guilty of violating RICO and that he had routinely entered into criminal *quid pro quo* arrangements. The defendant in *Empress IV*, Balmoral, had agreed with Blagojevich to one such *quid pro quo* arrangement under which Balmoral would donate $100,000 in funds in exchange for Blagojevich's signature on a 2008 Illinois State Bill to tax riverboat casinos and use proceeds therefrom to benefit the Illinois horse racing industry.

*Empress IV* draws the distinction between an agreement to enter into a single civil conspiracy under state law and a RICO conspiracy, and holds that the demonstration of the former does not mean that the latter is established. Thus, even though the Seventh Circuit agreed that Balmoral's principal, John Johnston, had engaged in a civil conspiracy with Blagojevich under Illinois state law and upheld a jury verdict for $24.9 million against Balmoral on plaintiffs'

---

[9] While *Empress IV* reverses a jury verdict, it did so because of a legal defect in Plaintiffs' RICO conspiracy claim that led the Seventh Circuit to conclude that no reasonable jury could find a RICO conspiracy. Therefore, it is equally instructive here as to the legal defects in the TAC that require the dismissal of Actavis.

civil conspiracy Count, it held that that sum could not be trebled under RICO because no

reasonable jury could find that a RICO conspiracy existed.

Empress IV also stands for the proposition that a RICO conspiracy is not pleaded simply

because a defendant alleged to be a co-conspirator committed or agreed to the commission of the

predicate acts. There, the Seventh Circuit found "a rational jury could find that Johnston

committed or agreed to the commission of several RICO predicate acts," Empress IV at p. 15, yet

the RICO conspiracy claim failed. As the Seventh Circuit explained:

> The evidence supports a finding of a *quid pro quo* agreement that extended to at
> least two predicate acts of racketeering, but that evidence does not support a
> finding of an agreement to engage in a pattern of racketeering activity.

Most importantly here, the Seventh Circuit held that was not enough to plead that

Balmoral entered into an agreement with Blagojevich and that he was a RICO violator and that

Blagojevich's intentions and conduct as to other quid pro quo arrangements could not be imputed

to Johnston, who was not shown to have knowledge of these or to have agreed to them. As the

Seventh Circuit explained:

> The evidence certainly shows that Blagojevich's regular way of conducting
> business involved bribery. And Johnston knew about the criminal investigation
> into Blagojevich by late 2007. But Blagojevich is not the defendant here. The
> question is the scope of what Johnston and the racetracks agreed to. Monk and
> Johnston both testified that Johnston was not aware of the various other
> Blagojevich schemes mentioned at trial. . . . The standard, rather, is whether *these*
> *defendants agreed* that someone would commit two predicate acts and whether
> *these defendants agreed* "to maintain an interest in or control of an enterprise or
> to participate in the affairs of an enterprise through a pattern of racketeering
> activity." There is no evidence that Johnston agreed to participate in any corrupt
> scheme except for the one to have Blagojevich sign the 2008 Act.

Empress IV, 2016 WL 4097439 at *11 (citations omitted).

So, here, Plaintiff has not alleged that "these defendants [the Actavis Defendants] agreed

to maintain an interest in or control of [AbbVie's] enterprise or to participate in the affairs of

[AbbVie's] enterprise through a pattern of racketeering." There is no substantive allegation that

21

Actavis knew of how AbbVie trained or used its own sales force or that it agreed to anything similar for its Co-Promotion Agreement.

And while *Empress IV* makes it especially clear how difficult it is to meet the legal standards for a civil RICO claim in this Circuit, it is far from the only authority that so holds. In *Goren*, a company falsely promoted a mineral water as providing unique health benefits through an infomercial and other advertisements. *See* 156 F.3d at 725. Plaintiff alleged that the company's owners, the infomercial's creator and a distribution broker engaged in a RICO conspiracy to overprice the water. *Id.* at 730. The Seventh Circuit affirmed the dismissal of the RICO conspiracy claims against all defendants, finding that the complaint did not state a claim against the company's owners because, even though it alleged that they were familiar with the company's policies, it did not allege an agreement to participate in an enterprise, or that someone would commit any predicate acts, and did not describe the defendants' roles. *Id.* at 732-33. It found no liability as to the infomercial's creator because its agreement to perform services for the company did not imply that its specific agreement to participate in the affairs of an enterprise or the commission of predicate acts. *Id.* So here, even assuming that AbbVie shared the details of its fraudulent scheme in training Watson's sales force (and no allegation supports such an assumption), there is no allegation that they agreed to ▮▮▮▮▮▮▮▮▮▮ or that they engaged in any actual "conspiratorial conduct," as Plaintiff is required to allege as to "each defendant[]."

*District 1199P Health & Welfare Plan v. Janssen, L.P.*, No. 06-3044 (FLW), 2008 WL 5413105 (D.N.J. Dec. 23, 2008), reaches the same conclusion on especially similar facts to those here. There, a putative class of TPPs alleged that the manufacturers of an antidepressant conspired to mislead physicians to overprescribe the drug by promoting the drug off-label and by understating its side effects. *Id.* at *2. Plaintiffs alleged that defendants' scheme involved a

marketing firm enterprise, comprised of seemingly independent research and public relation firms, which disseminated inaccurate information about the drug. *Id.* They also alleged that defendants misrepresented the drugs' uses and side effects directly to prescribing physicians. *Id.* at *3. The Court nevertheless dismissed the RICO conspiracy claims because, even accepting these allegations as true, plaintiffs "fail[ed] to show how all of the alleged conspirators knew that their acts were part of a pattern of racketeering activity." *Id.* at *16. Plaintiff has equally failed to make that showing here. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████

Finally, that Actavis operates its own Low-T website does not evidence any agreement by Actavis to the criminal objectives of AbbVie's fraudulent scheme. This is particularly true where ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████. (¶¶796-804)

In *Krakow Business Park*, the District Court found that a plaintiff alleging a RICO conspiracy had failed to plead a pattern and noted the standard:

> Where, as here, the plaintiff claims that the defendant joined an *existing* RICO conspiracy, the plaintiff must prove that the defendant agreed to participate in the enterprise's affairs through the same pattern of racketeering to which the already-members of the conspiracy have also agreed. To be part of the same pattern, predicate acts must be related to each other. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The pattern requirement is a standard, not a rule, so "its determination depends on the facts and circumstances of the particular case." *Id.* (citation omitted). Generally, though, predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events. *DeGuelle*, 664 F.3d at 199 (quoting *H.J.*, 492 U.S. at 240, 109 S.Ct. 2893).

> Here, the fraudulent scheme is said to have dated back to the beginning of the century

23

(¶11), but the Co-Promotion Agreement was signed in 2006. *Krakow Business Park* is directly on point and, as in *Krakow*, here Plaintiff fails to plead an agreement to a pattern.

### (i) Because The Co-Promotion Agreement Is Equally Consistent With Lawful Behavior, It Cannot Support A RICO Conspiracy Claim

A claim of RICO conspiracy also cannot be inferred from allegations that equally suggest lawful conduct as unlawful behavior, as is true here. *See, e.g.*, *Pennsylvania Chiropractic Ass'n*, 2010 WL 3940694 (RICO agreement could not be inferred from allegations that health plans improperly sought return of prior reimbursement because those allegations at most suggested that defendants engaged in the practice of recouping payments previously made to providers). *See also American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) (RICO conspiracy cannot be inferred when the alleged conduct suggests an alternative explanation, one consistent with lawfulness); *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (law firm's representation of participants in fraudulent scheme did not imply agreement to violate RICO because representation suggested the lawful conduct of providing legal services). Here, because co-promotion agreements may be lawful, as can company websites, Plaintiff pleads nothing as to Actavis that is not equally suggestive of lawful behavior.

### (ii) The Allegations Here Cannot Support An Inference of RICO Conspiracy

In its Opinion, this Court noted that *DeGuelle v. Camili*, 664 F.3d 192 (7th Cir. 2011), allowed a RICO conspiracy claim to go forward because the allegations supported an inference of an agreement even though the allegations as to the existence of the agreement were "sparse." (Op. 14) (citing *DeGuelle*, 664 F.3d at 206). Yet the contrast between the facts permitting an inference there – which the Court nonetheless found to be "sparse" – and those here could not be greater. There, a plaintiff, an officer in a company's Tax Department, discovered the company

24

had engaged in tax fraud on several occasions over a seven-year period. He advised supervisors in the company's Tax Department, who each time instructed him to destroy records and who also altered reports sent to the IRS. When plaintiff complained, these supervisors subjected him to a hostile work environment. They then offered plaintiff an increase in salary and payment of attorney's fees if he agreed to sign a confidentiality agreement and release. When he refused, the alleged co-conspirators were responsible for his termination. The Court also found that those in the Tax Department conspired with the company's Human Resources Department, as they had received plaintiff's complaints, approved plaintiff's negative performance reviews, conveyed the offer to pay his attorney's fees to persuade him not to expose the tax fraud scheme and then were involved in his termination. The Court found that "Camilli, and Kosterman engaged in acts aimed at preventing DeGuelle from disclosing information outside the company. It can be inferred from the facts of the complaint that these actions against DeGuelle were part of the original conspirators' agreement to conceal their fraud." *DeGuelle*, 664 F.3d at 206.

Here, by contrast, the allegations of Actavis' "agreement" to the alleged fraudulent scheme are less than "sparse;" they are completely conclusorily. The defendants in *DeGuelle* plainly knew of the particulars of the alleged misconduct. Here, there are no such allegations against Actavis. Each alleged co-conspirator in *DeGuelle* dealt with plaintiff directly and each played a role in his termination. Here, Plaintiff pleads no communication with Actavis. The *DeGuelle* conspirators each took steps which plainly were designed to facilitate concealment of the scheme. Here, Plaintiff pleads nothing Actavis did to facilitate AbbVie's criminal acts.

### B. Actavis Meets The Standards For Permissive Interlocutory Appeal Under 28 U.S.C. § 1292(b)

Actavis believes that reconsideration is appropriate here. However, should this Court disagree, Actavis has satisfied the five requirements for certifying the Court's Opinion and Order for interlocutory appeal to the Seventh Circuit under 28 U.S.C. § 1292(b). *See City of Joliet v.*

*Mid-City Nat'l Bank*, No. 06 C 6746, 2008 WL 4889038, at *1 (N.D. Ill. June 13, 2008).

### 1. The Opinion And Order Presents A Question Of Law

The first statutory requirement provides that the petition must seek to certify a question of law, which typically refers to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine . . . ." *In re Ocwen Fed. Bank FSB*, No. 04 C 2714, MDL 1604, 2006 WL 1371458, at *2 (N.D. Ill. May 16, 2006) (internal citations and quotations omitted) (certifying order that denied motion to dismiss on preemption issue). The Seventh Circuit has entertained an interlocutory appeal of a denial of a motion to dismiss RICO claims. *See Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (addressing whether allegations sufficiently supported pattern of racketeering activity).

The Seventh Circuit also has previously held that a judge's application of the *Twombly* plausibility standard in deciding a Rule 12(b)(6) motion in a complex case raising the possibility of treble damages presents a question of law sufficient to justify an interlocutory appeal. In *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010), which this Court cited in its Opinion, the Seventh Circuit reviewed the District Court's refusal to dismiss under *Twombly* a putative class action alleging a price-fixing conspiracy. The Seventh Circuit explained:

> [W]hen the question presented by an appeal is whether *Twombly* requires dismissal of a complaint, the concerns underlying that decision argue for empowering the district court and the court of appeals to authorize an interlocutory appeal. *Twombly*, even more clearly than its successor, *Ashcroft v. Iqbal*, 566 U.S. 662, 868 (2009), is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand. When a district court by misapplying the *Twombly* standard allows a complex case of extremely dubious merit to proceed, it bids fair to immerse the parties in the discovery swamp – "that Serbonian bog ... where armies whole have sunk" (*Paradise Lost* ix 592-94) – and by doing so create irrevocable as well as unjustifiable harm to the defendant that only an immediate appeal can avert.

*Id*. at 624-26. This rationale equally supports interlocutory appeal here.

26

### 2. The Opinion And Order Presents A "Controlling Question"

With respect to the second statutory requirement, a "controlling question of law is one that would require reversal if denied incorrectly or that could materially affect the conduct of litigation with resulting savings of the court or the parties' resources." *Mace v. Van Ru Cr. Corp.*, No. 94 C 7450, 1995 WL 716636, at *6 (N.D. Ill. Dec. 1, 1995). Thus, if an interlocutory appeal would result in dismissal of claims, the second requirement has been met. *See In re Ocwen*, 2006 WL 1371458, at *2 (question to be certified was controlling because if appellant succeeded majority of counts would be dismissed).

### 3. The Question of Law Is Contestable

"The third statutory criterion under § 1292(b) . . . that the question of law must be contestable, [means] that substantial grounds for a difference of opinion on the issue exist." *United States v. Moglia*, No. 02 C 6131, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004) (concluding that whether a statute compelled trustee to clean up abandoned estate was contestable issue). *See also Gamboa*, 2004 WL 7877339 at *4 (a question of law is contestable if there is a 'substantial likelihood ... that the district court ruling will be reversed on appeal.") (citation omitted). Here, *DeGuelle* has created confusion as to what level of factual detail must be pleaded by a plaintiff to plausibly give rise to an inference of a RICO conspiracy. Actavis also believes that if the Seventh Circuit accepts appeal, it will reverse this Court's determination as to Actavis.

### 4. Immediate Appeal Would Materially Advance This Litigation

As to the fourth statutory requirement, a Section 1292(b) petitioner must show that an interlocutory appeal would materially advance the termination of the litigation. *See Wieboldt Stores, Inc. v. Schottenstein Stores Corp.*, No. 87 C 8111, 1989 WL 51068, at *2 (N.D. Ill. May 5, 1989). An appeal materially advances the termination of the litigation if it has the possibility of precluding burdensome and time-consuming discovery and a lengthy complex trial. *Id.*

27

4823-1116-3703

(concluding interlocutory appeal could preclude wasteful, lengthy discovery and trial). This indisputably would be true as to Actavis, which should not have to face costly discovery and the possibility of treble damages based on an implausible RICO conspiracy claim.

### 5.  The Motion Is Timely

Finally, the non-statutory element requires that "the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *City of Joliet*, 2008 WL 4889038, at *1 (internal citations and quotations omitted). There is no precise timeline governing the filing of a petition for interlocutory appeal with the District Court; however, filing petitions within weeks of a contested decision, such as here, have routinely been deemed timely in this District. *See id.* (petition was timely when it was filed more than seven weeks after the last order to be certified); *Resolution Tr. Corp. v. Franz*, No. 93 C 2477, 1996 WL 166940, at *1 (N.D. Ill. Apr. 8, 1996) (granting petition for permissive interlocutory appeal that was filed over six weeks after order to be appealed); *see also Iowa Physicians Clinic Medical Foundation v. Physicians' Ins. Co. of Wis.*, No. 07-cv-4012, 2008 WL 268758, at *1, 3 (C.D. Ill. Jan. 29, 2008) (noting the norm of filing within 30 days of order to be appealed, but excusing delay).

While permissive interlocutory appeals are not routine, they are particularly appropriate in cases that, as here, could involve burdensome intra-party and third-party discovery, and other significant motion practice. *See Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014). "An interlocutory appeal is appropriate if there exists by virtue of the order appealed from both the possibility of prejudice to a party pendent lite and the possibility of considerable avoidable wasted trial time and litigation expense." *Mace*, 1995 WL 716636, at *6 (internal quotations omitted). This is undeniably true as to Actavis here.

### IV.  CONCLUSION

For the foregoing reasons, Actavis respectfully requests that this Court grant its motion

4823-1116-3703

and on reconsideration rule that Plaintiff fails to state a RICO conspiracy claim against Actavis.

In the alternative, Plaintiff requests that this Court certify its Opinion and Order to the United States Court of Appeals for the Seventh Circuit for interlocutory appeal pursuant to 28 U.S.C. §1292(b).

August 29, 2016                                    Respectfully submitted,

                                                   By:  /s/ David B. Goroff
                                                        James W. Matthews (pro hac vice)
                                                        Katy E. Koski (pro hac vice)
                                                        Jason L. Drori (pro hac vice)
                                                        FOLEY & LARDNER LLP
                                                        111 Huntington Avenue
                                                        Boston, MA 02199
                                                        Tel:  (617) 342-4000
                                                        Fax:  (617) 342-4001
                                                        jmatthews@foley.com
                                                        kkoski@foley.com
                                                        jdrori@foley.com


                                                        David B. Goroff (IL Bar No. 6190039)
                                                        Jonathan W. Garlough (IL Bar No. 6295597)
                                                        FOLEY & LARDNER LLP
                                                        321 North Clark Street, Suite 2800
                                                        Chicago, IL 60654-5313
                                                        Tel:  (312) 832-4500
                                                        Fax:  (312) 832-4700
                                                        dgoroff@foley.com
                                                        jgarlough@foley.com

                                                        *Counsel for Defendants Actavis plc, Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc., Actavis Pharma, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., and Anda, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, David B. Goroff, hereby certify that on August 29, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notifications of said filing to all registered attorneys of record.


/s/ David B. Goroff