UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 |
| This Document Relates to:<br><br>Medical Mutual of Ohio v. AbbVie, et al. | Docket Case No. 1:14-cv-08857<br><br>Honorable Matthew F. Kennelly |

**JOINT STATUS REPORT
FOR JUNE 28, 2017 MEDICAL MUTUAL OF OHIO
CASE MANAGEMENT CONFERENCE**

The Court directed counsel to file this joint report regarding the status of the Parties' discussions, agreements and disagreements on the proposed agenda items for the June 28, 2017, Case Management Conference.

**Third Party Subpoenas**

The Parties met and conferred, and have reached agreement upon certain revisions to the seven (7) subpoenas that Defendants have issued to Putative Class Members. Namely, Defendants agreed to withdraw certain document requests without prejudice and to narrow or reword others. The Parties further agreed that, while MMO would no longer raise an objection to the subpoenas with the Court, this compromise would not preclude the subpoenaed Putative Class Members themselves from raising their own further objections to the subpoenas' scope, if any. The seven (7) subpoena recipients who are Putative Class Members have each been advised as to the revisions to Defendants' document requests and of their rights to raise individualized objections to the requests. The Parties further agreed that Defendants will not issue subpoenas to additional Putative Class Members without agreement of the Parties or leave of Court.

1

**Caps on Third Party Depositions**

The Parties have reached agreement on a limitation to the number of Third Party depositions in this proceeding. Each side (MMO on one hand, and Defendants on the other) will be permitted to take up to 20 third-party depositions. This cap would not apply to former employees of the Parties, who are instead subject to the existing deposition caps for Party witnesses. However, the Third Party deposition cap would apply to other nonparties, including absent members of the putative class and their employees. As with the agreement the Parties previously reached regarding depositions of Party witnesses, the cap of 20 Third Party depositions per side would be subject to modification by the Court upon a showing of good cause. The Parties will memorialize this agreement in a proposed Amended CMO 2.

**Status of General Discovery Production and Depositions**

*Medical Mutual Document Production*

**MMO's Position:**

MMO began its document production on January 6, 2017, and thus far has produced 23,897 documents to Defendants, including another 20,000 documents totaling over 100,000 pages this last week. While MMO initially experienced some delays in extracting electronic sources of documents, it has now resolved most of these issues, and has begun producing large numbers of documents to the Defendants. Additional custodial files are currently being processed for production this week. MMO will continue to produce custodial documents on a rolling basis, and expects to be able to notify Defendants in the next several weeks that its initial custodial production is completed.

While MMO is aware that it needs to provide Defendants with a metadata overlay for documents produced early in the course of discovery, including paper documents located in hard-

copy archives, MMO has prioritized locating, extracting, and producing custodial documents. However, MMO will provide Defendants with an overlay for the earlier produced documents by July 5, 2017.

**Defendants' Position:**

On March 7, 2017, Defendants requested the files of five MMO custodians (those identified in MMO's initial disclosures), and two others on March 17, 2017. On May 25, 2017, MMO's counsel advised that there had been some "technical issues in extracting" custodial materials but that those issues had been resolved, and that MMO expected to begin rolling productions within two weeks. On June 7, MMO's counsel advised defendants that rolling productions would begin the week of June 12. On June 22, 2017, defendants received a partial production from two custodians but no other update on when all of the seven custodial file productions will be substantially completed.

MMO states above that it had already produced documents prior to last week. That is true. However, by Defendants' count, MMO had produced only 1,498 documents. The vast majority of those were non-custodial, and many were publicly available materials, such as articles from medical journals. Defendants appreciate MMO's assurance that it intends to complete production of the seven initial MMO custodians' files "in the next several weeks." However, Defendants are compelled to note the asymmetric situation that has resulted from this delay: Defendants have already provided firm deposition dates for many of their own witnesses (as set forth below), but they are not even able to request deposition dates for any MMO witness, because they have not yet received any custodial files that are substantially complete. With the class-certification deadline approaching in early November, Defendants hope that this situation is quickly resolved.

Relatedly, Defendants note that MMO's first four document productions largely excluded key metadata for the documents produced, such as "custodian" and "date created." This is contrary to MDL Corrected CMO No. 15, which sets forth the 36 metadata fields that ESI productions must contain. On April 28, 2017, Defendants requested that MMO remedy these deficiencies. On May 6, counsel for MMO informed Defendants that it would produce an overlay containing the missing metadata. Counsel made the same representation orally during a May meet-and-confer with counsel for AbbVie. To date, MMO has not produced the overlay providing complete metadata for its first four productions.

*Organizational 30(b)(6) Deposition Scheduling*

To the extent that MMO will notice preliminary 30(b)(6) depositions limited in scope to organizational matters, the Parties have begun negotiating times and places for those depositions if needed. MMO has continued discussions with counsel for Lilly and Endo/Auxilium in an attempt to locate sufficient information without a deposition.

*Defendants' Fact Witness Deposition Scheduling and Custodial File Production*

<u>AbbVie</u>

**MMO's Statement**

Upon receiving sufficient custodial file productions for these witnesses, on May 26, 2017 MMO requested depositions dates for five (5) AbbVie fact witnesses and asked for deposition dates starting in June. On June 14, AbbVie provided the following dates and locations for these witnesses:

| | | |
|---|---|---|
| Craig Geikie | July 11, 2017 | Portland, Maine |
| Peter Wardlaw | July 20, 2017 | Atlanta, Georgia |
| Bonnie Shaul | August 4, 2017 | Deerfield, Illinois |
| Mark Hollinden | August 9, 2017 | Louisville, Kentucky |
| Jed Cicak: | August 30, 2017 | Fort Lauderdale, Florida |

**AbbVie's Statement**

AbbVie notes that, at the time MMO requested deposition dates on May 26, 2017, the earliest deposition date permissible under Paragraph D.1 of CMO 3 was June 26 (*i.e.*, 30 days thereafter). Accordingly, MMO's request for deposition dates in June was not practicable. AbbVie offered the earliest dates on which its witnesses and counsel were both available.

*Lilly*

Upon receiving sufficient custodial file productions for these witnesses, on May 26, 2017, MMO requested deposition dates for four (4) Lilly witnesses and asked for deposition dates starting in June. On June 14, 2017, Lilly provided the following dates for these witnesses and further indicated that these were the earliest dates available:

| | | |
|---|---|---|
| Christopher Stokes | July 27, 2017 | Indianapolis, IN |
| Paul Titus | August 17, 2017 | Indianapolis, IN |
| Laura DeMayo Steele | August 29, 2017 | Indianapolis, IN |

MMO has not yet received a deposition date for Jill Shammas, the fourth person requested.

*Actavis*

Upon receiving sufficient custodial file productions for these witnesses, on June 16, MMO requested deposition dates for four (4) Actavis witnesses:

Marc Allard
Lynn Amato
Ed Tykot
Eric Pluckhorn

Counsel for Actavis notified MMO on June 23rd that it intended to produce a substantial production by June 30, 2017, and expects to complete its production by mid to late July. Counsel for Actavis also notified MMO that it will provide deposition dates for some of the witnesses identified above by June 30, 2017.

*Auxilium*

**MMO's Position**

Upon receiving sufficient custodial file productions for these witnesses, on June 16, MMO requested deposition dates for four (4) Auxilium witnesses:

Joseph Birdsall
Betty Jean Swartz
Mark Medvitz
Bill Metil

No dates or response have been provided by Auxilium at this time. As a result, MMO has been unable to begin noticing depositions of any Auxilium witnesses.

**Auxilium's Position** MMO has requested that Auxilium produce documents from the custodial files of twenty (20) witnesses. During the parties' meet and confer on February 7, 2017, Auxilium took the position—and MMO agreed—that Auxilium would not produce additional documents from the custodial files of three (3) of those custodians because documents from their custodial files already have been or will soon be produced in the MDL. On February 17, 2017, the parties finalized search terms for the custodial productions. Since that time, Auxilium has produced documents from the custodial files of fifteen (15) of the remaining requested custodians. Auxilium expects to complete its production of documents from the custodial files of all the requested custodians by July 3, subject to any supplementation as Auxilium completes its privilege review. Auxilium is working to provide dates for the depositions of the four (4) witnesses who MMO has requested. All of the requested deponents are former employees.

*<u>Endo</u>*

**MMO's Position**

Endo has yet to produce any custodial files for the eight (8) Endo employees requested by MMO over eight months ago on October 18, 2016 and therefore no depositions can be noticed of Endo witnesses. On June 16, MMO again requested the status of this production and requested a meet and confer to attempt to resolve this issue. Ex. A. On June 26, 2017, at the time of the writing of this joint status report, MMO received correspondence from Counsel that Endo expected to substantially complete production for certain custodians on or before July 3, 2017 and that Endo would now begin efforts to contact former employees to provide dates for the depositions requested. If, after reviewing the productions made by July 3, 2017, MMO is not satisfied with Endo's production, MMO will reiterate its request for a meet and confer made in its June 16, letter.

**<u>Endo's Position</u>**

MMO has requested that Endo produce documents from the custodial files of five (5) witnesses. During the parties' meet and confer on February 7, 2017, Endo took the position—and MMO agreed—that Endo would not produce additional documents from the custodial files of three (3) of those witnesses because documents from their custodial files already have been or will be produced in the MDL. On February 17, 2017, the parties finalized search terms for the custodial productions. Endo expects to complete its production of documents from the custodial files of all the requested custodians by July 3, subject to any supplementation as Endo completes its privilege review.

*Hess Deposition*

**MMO's Position**

On May 1, 2017, having identified documents related to managed care in his custodial file, MMO requested to cross-notice the deposition of Jonathan Hess, a former Auxilium employee responsible for training managed care and sales personnel at Auxilium. In response to this request, counsel for Auxilium indicated that it would not allow Hess, a former employee, to sit for any additional time other than the time allocated to counsel for the Products cases, and that if MMO intended to question Mr. Hess on his activities in training Auxilium managed care personnel, it would need to do so in the time allotted to the attorneys for the Products cases. The issue became moot shortly thereafter, as Auxilium postponed the deposition pending production of additional custodial files.

Upon learning that Mr. Hess' deposition had been rescheduled for July 20, MMO reiterated its request to have additional time to depose Mr. Hess, and proposed a compromise whereby it would only question Mr. Hess for an additional 3 hours beyond what had been allotted to the counsel in the Products cases and foregoing a second or separate deposition. Ex. B. Again, counsel for Auxilium rejected MMO's proposal, and stated that any questioning pertaining to the issues specific to the MMO case be asked in the seven (7) hours currently allotted for the Products cases. Ex. C.

While MMO is working with counsel from the Products cases to come up with a solution on the Plaintiffs' end, the underlying issue of concern goes beyond the Hess deposition. Auxilium has taken the position that a witness noticed in the Products cases cannot be cross-noticed in the MMO case and must be limited to the time allowed in that case, unless Auxilium agrees, or with leave of Court. This goes beyond MMO's understanding of the intent of the

language in CMO 2 and superimposes the requirements which apply to depositions which have already been taken to upcoming depositions. It has been MMO's understanding that, if a deposition has not yet been taken in the Products cases, MMO may notice the deposition in the MMO case, using the hours allotted for MMO depositions, and that those depositions would then count against its deposition cap for a specific Defendant. In all events, and pursuant to CMO 2, MMO will in good faith cooperate with counsel in the Products cases to avoid duplication and reduce deposition time for that witness to the extent possible. Auxilium thus seeks to impose an additional condition on depositions not contemplated as part of CMO 2. While it is anticipated that this issue should only impact a limited number of future depositions in the MMO case, the Parties have been unable to reach agreement thus far. Hence, MMO seeks guidance from the Court on this issue.

**Auxilium's Position**

Recognizing that the issues in the MMO case and the Products cases are related, the Court imposed a requirement in CMO 2 that MMO justify the need for any additional deposition time with company witnesses who already had been deposed in the Products cases. As Auxilium has conveyed to MMO orally on May 1, 2017 and by letter dated June 21, 2017 (Ex. C), the same rule should apply when Plaintiffs in the Products cases and MMO seek the deposition of the same witness.

Particularly in light of the overlap of factual issues and that the co-lead MDL counsel are co-counsel in the MMO case, the seven (7) hours of questioning afforded to question these witnesses should be sufficient to cover all issues in the Products cases and the MMO case. Auxilium already has agreed to provide state court counsel with three (3) additional hours of deposition time to question the witnesses. That time often has been used by counsel with cases

in the MDL, including the MDL PSC. In practice, therefore, MDL counsel often has had ten (10) hours to question Auxilium witnesses—three (3) more hours than the seven (7) provided for in the deposition protocol.

In addition, under MDL Deposition Protocol 21, Auxilium is entitled to examine its witnesses and MDL PSC counsel is then entitled to the same amount of time for additional questioning. Providing MMO counsel with additional hours of questioning on top of all that would require the witnesses (who, like Mr. Hess, are former employees) to set aside a third day for depositions. These former employees should not be put to that burden.

To ensure efficiency and avoid duplicative questioning and burden on Mr. Hess, the Court should require MMO counsel and their co-counsel who are co-lead PSC counsel to agree on how to allocate the seven (7) hours of questioning time of Mr. Hess so that all relevant topics are covered. Mr. Hess was not involved with managed care. To the extent he had any tangential involvement in areas of interest to MMO, counsel has not identified those areas. Nor has counsel explained why those areas cannot be covered in seven (7) hours otherwise provided by the deposition protocol in the Products cases, much less ten (10) hours if the three (3) hours reserved for state court counsel are used by MDL counsel, which almost always has been the case. Plaintiffs should be required to justify their request for additional time (as they would be required to do had Mr. Hess already been deposed) before Mr. Hess is put to the burden of making himself available for a potential third day of deposition.

Dated: June 26, 2017                              Respectfully submitted,


/s/ David E. Stanley                              /s/ Conlee S. Whiteley
David E. Stanley (pro hac vice)                   Conlee S. Whiteley, Esq. (*pro hac vice*)
Janet H. Kwuon (pro hac vice)                     Layne C. Hilton, Esq. (*pro hac vice*)
**REED SMITH LLP**                                Marshall L. Perkins (*pro hac vice*)

355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 457-8000
Fax: (213) 457-8080
dstanley@reedsmith.com
jkwuon@reedsmith.com

*Attorneys for Defendants Eli Lilly and Company, Lilly USA, LLC, and Acrux Limited*

William F. Cavanaugh, Jr. (pro hac vice)
Jonah M. Knobler (pro hac vice)
**PATTERSON BELKNAP WEBB & TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
jknobler@pbwt.com
scaplan@pbwt.com

*Abbott Laboratories, Abbott Products, Inc., Solvay, S.A., Solvay Luxembourg, S.A.R.L. f/k/a Solvay Pharmaceuticals S.A.R.L., and Solvay America, Inc.*


Andrew K. Solow (pro hac vice)
**ARNOLD PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
Tel: (212) 836-7740
Fax: (212) 836-6776
andrew.solow@apks.com

Pamela Joan Yates (pro hac vice)
**ARNOLD PORTER KAYE SCHOLER LLP**
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017
Tel: (213) 243-2400

**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, Louisiana 70130
Tel: (504) 524-5777
Fax: (504) 524-5763

W. Scott Simmer, Esq. (*pro hac vice*))
Thomas J. Poulin, Esq. (*pro hac vice*))
**THE SIMMER LAW GROUP**
The Watergate
Suite 10-A
Washington, DC 20037
Tel: (202) 333-4562
Fax: (202) 337-1039

Ruben Honik, Esquire (*pro hac vice*)
David J. Stanoch, Esquire (*pro hac vice*)
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax: (215) 985-4169

*Attorneys for Plaintiff Medical Mutual of Ohio*

Stephen A. Weiss, Esq. (*pro hac vice*)
Christopher A. Seeger, Esq. (*pro hac vice*)
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
Tel: (212) 584-0700

Trent B. Miracle, Esq.
Brendan A. Smith, Esq.
**SIMMONS HANLY CONROY**
One Court Street
Alton, IL 62002
Tel: (618) 259-2222
Fax: (618) 259-2251

Ronald E. Johnson, Jr., Esq. (*pro hac vice*)
Sarah N. Lynch, Esq. (*pro hac vice*)
**SCHACHTER HENDY & JOHNSON PSC**
909 Wright's Summit Parkway

Fax: (213) 243-4199
pamela.yates@apks.com

*Attorneys for Defendants Endo Pharmaceuticals Inc.* and *Auxilium Pharmaceuticals, Inc.*

James W. Matthews *(pro hac vice)*
Katy E. Koski *(pro hac vice)*
Jason L. Drori (*pro hac vice*)
**FOLEY & LARDNER LLP**
111 Huntington Ave
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jdrori@foley.com

David B. Goroff (IL Bar No. 6190039)
Jonathan W. Garlough (IL Bar No. 6295597)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Tel: (312) 832-4500
Fax: (312) 832-4700
dgoroff@foley.com
jgarlough@foley.com

*Counsel for Defendants Actavis plc, n/k/a Allergan plc, Actavis, Inc., n/k/a Allergan Finance, LLC, Actavis Pharma, Inc., Watson Laboratories, Inc., and n/k/a Actavis Laboratories UT, Inc.*

Suite #210
Ft. Wright, KY 41011
Tel: (859) 578-4444
Fax: (859) 578-4440

*MDL Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2017, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

/s/ Layne C. Hilton