UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---------------------------------------------------------------:
IN RE: TESTOSTERONE REPLACEMENT  :
THERAPY PRODUCTS LIABILITY  :
LITIGATION  : Case No. 1:14-cv-01748
---------------------------------------------------------------x MDL 2545
This Document Relates To:  :
 :
*Medical Mutual of Ohio v. AbbVie Inc., et al.*,  :
Case No. 1:14-cv-8857 (N.D. Ill.)  :
---------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA *DUCES TECUM* UNDER FEDERAL RULE OF CIVIL PROCEDURE 45

Defendants Endo Pharmaceuticals Inc. ("Endo") and Auxilium Pharmaceuticals, LLC (f/k/a Auxilium Pharmaceuticals, Inc.) ("Auxilium," together with Endo, "Defendants") submit this memorandum of law in support of their motion under Federal Rule of Civil Procedure 45(d)(2)(B)(i) to compel compliance with a subpoena *duces tecum* that they served on UnitedHealthcare ("UHC") on May 8, 2017. UHC is a health insurer and the largest member of the putative class that Plaintiff Medical Mutual of Ohio ("MMO") seeks to represent. Almost three months after the subpoena was served, and despite Defendants' unsuccessful attempts to meet and confer with UHC about its general objections to the subpoena, UHC still has not produced any responsive documents, offered a schedule on which it will do so, or even explained its objections to any specific document request in the subpoena. The Court should compel UHC to comply with the subpoena.

## BACKGROUND

**A.  UHC is the Largest Member of the Putative Class That MMO Seeks to Represent**

MMO provides health insurance, including for the cost of prescription medicines filled by its insureds.  MMO seeks to represent a class of health insurers and other third-party payors ("TPPs") that paid to fill prescriptions for testosterone replacement therapy ("TRT") medicines for their insureds or members.

MMO alleges that defendants misrepresented the safety and efficacy of their TRT medicines, absent which MMO and the putative class members would not have agreed to pay for certain TRT medicine prescriptions filled by their insureds or would have restricted payments for those medicines.  On behalf of itself and the putative class, MMO asserts claims against certain manufacturers of TRT medicines, including Endo and Auxilium, for violations of RICO, conspiracy to violate RICO, and negligent misrepresentation.  MMO seeks to recover "hundreds of millions of dollars" from Defendants that MMO alleges it and the putative class members paid for TRT medicines, and seeks treble damages under RICO.  Third Amended Complaint ¶¶ 1484, 1487, 1523, 1526.  MMO's motion for class certification is due on November 6, 2017.  *See* First Amended CMO 1 [ECF No. 217].

UHC is the nation's largest health insurer and would be a member of the class if certified.  Among other things, UHC provides "pharmacy care services."  (United Health Group, Inc. 2016 10-K at 3, 21.)  Those "comprehensive and integrated pharmaceutical care services promote lower costs by using formulary programs to produce better unit costs, encouraging consumers to use drugs that offer improved value and outcomes, helping consumers take actions to improve their health and supporting the appropriate use of drugs based on clinical evidence through physician and consumer education programs."   UHC uses its sister company, OptumRx, one of

the country's largest pharmacy benefit managers, to "manage pharmacy benefits" for UHC's insureds. (*Id.* at 2.) OptumRx provides "pharmacy care services to more than 65 million people in the United States through its network of more than 67,000 retail pharmacies and multiple home delivery facilities throughout the country." (*Id.* at 10.) Together, UHC and OptumRx "processed more than one half trillion dollars in gross billed charges and . . . managed more than $200 billion in aggregate health care spending on behalf of . . . customers and consumers" in 2016. (*Id.* at 1.)

UnitedHealth Group, Inc., the parent of UHC and OptumRx, is the sixth largest business in the country. (*Id.* at 32.) It had $10.4 billion in cash and cash equivalents on hand at the end of 2016. (*Id.* at 42.) In addition, "[b]ecause of the nature of its businesses, [UHC] is frequently made party to a variety of legal actions and regulatory inquiries, including class actions and suits brought by members, care providers, consumer advocacy organizations, customers and regulators . . . ." (*Id.* at 82.)

**B.     The Subpoena and UHC's Failure to Meet and Confer**

On May 8, 2017, Defendants served a subpoena *duces tecum* on UHC (the "Subpoena"). *See* Declaration of Robert Grass ("Grass Dec.") Exs. 1 [copy of subpoena and cover letter], 2 [copy of affidavit of service]. The Subpoena contains fifteen requests for the production of documents relating to (i) UHC's decisions whether to list TRT medicines on its formularies and, if so, their placement on UHC formularies during the class period (RFP Nos. 1, 5, 6, 10, 14); (ii) UHC's payments for TRT medicines (RFP No., 2); (iii) UHC's communications with defendants and MMO regarding TRT medicines (RFP Nos. 7, 8, 15); (v) contracts with pharmacy benefit managers or others concerning TRT medicines (RFP No. 9); (vi) documents concerning alleged

off-label use or promotion of TRT medicines or other promotion of TRT medicines that MMO has alleged is misleading or fraudulent (RFP Nos. 11, 12, 13).[1]

On May 12, 2017, UHC responded to the Subpoena by email attaching a letter dated May 11, 2017 from in house counsel for OptumRx ("UHC counsel"). *See* Grass Dec. Ex. 3 [copy of email w/attached letter].[2] The May 11 letter asserted several general objections that the Subpoena was unduly burdensome (purportedly on behalf of OptumRx, not UHC) because (i) "it appears to seek information . . . which is in the custody of one or more named litigants;" (ii) "fails to allow for a reasonable time to comply;" (iii) "seeks electronically stored records which will be unduly burdensome and expensive for OptumRx to locate, extract, review and produce;" (iv) "the date range of the subpoena requests extend[s] back 17 years;" and (v) "it appears the subpoena seeks records and information that are confidential and proprietary." The letter did not identify any objection to any specific request or otherwise provide any specific basis for any of the stated objections. It further stated "I look forward to discussing these objections with you and how we might work to narrow the scope in an appropriate manner." *Id.*

On May 18, 2017, Defendants' counsel responded by email asking whether UHC's counsel would be available on May 22 or 23 "for a short call to discuss the concerns expressed in your letter." Grass Dec. Ex. 4 [copy of 5/18 email]. UHC's counsel did not respond until Friday, May 26 when he left a voice mail message at approximately 6:46 pm EDT for Defendants' counsel suggesting that he would be available for that discussion the following week. Grass Dec. ¶ __.

---

[1] Defendants later withdrew Requests number 3 and 4 by agreement with MMO.

[2] The AbbVie defendants previously had served a separate subpoena directly on OptumRx. See Grass Dec. Ex. 7 [copy of OptumRx subpoena]. To date, OptumRx has not complied with that subpoena.

Defendants' counsel called UHC's counsel twice during the following week—on May 30 at approximately 1:53 pm EDT and on June 2 at approximately 1:56 pm EDT—to discuss the scope of the Subpoena or arrange a mutually convenient time for doing so. Grass Dec. ¶ _. Failing to connect with counsel on those occasions, Defendants' counsel left voice mail messages explaining the purpose of his calls and asking UHC's counsel to contact him. UHC's counsel did not respond until June 9 when he sent an email, acknowledging that he had received the voice mail messages, and stating that he was "checking on the status" and would let Defendants' counsel "know if [he had] an update." *See* Grass Dec. Ex. 5 [June 9 email]. On June 12, 2017, Defendants' counsel informed UHC's counsel that Defendants had agreed with MMO to narrow the scope of certain document requests in the Subpoena, including by withdrawing two of them. *See* Grass Dec. Ex. 6 [June 12 email].

UHC has not provided any update or contacted Defendants since that time. By voice mail message on July 13, 2017 at approximately 6:29 pm EDT and letter dated July 18, 2017, Defendants' counsel again informed UHC's counsel of Defendants' willingness to work with UHC to resolve its concerns about the Subpoena and requested that UHC's counsel contact him to discuss the Subpoena. *See* Grass Dec. Ex. 8 [copy of July 18 letter]. In light of the class certification deadlines, the July 18 letter also informed UHC's counsel that absent a mutually agreeable plan for compliance with the Subpoena by July 31, 2017, Defendants would be forced to file a motion to compel and to seek recovery of their fees and costs. UHC has not responded to the July 18 letter. Since Defendants served the Subpoena on May 8, UHC has not produced any documents, offered a schedule for producing documents, or even explained its objections to any specific document request called for by the Subpoena.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas to nonparties for documents. *See* Fed. R. Civ. P. 45(c)(2)(A). "The scope of material obtainable pursuant to a Rule 45 subpoena is 'as broad as what is otherwise permitted under Rule 26(b)(1).'" *In re Kleimar N.V. v. Benxi Iron & Steel Am., Ltd.*, Case No. 17-cv-01287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (citations omitted). "Rule 26(b)(1) allows parties to obtain discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *Id.* UHC bears the burden of showing that production of relevant information would be unduly burdensome. *Id.*[3]

## ARGUMENT

**I.    THE SUBPOENA REQUESTS THE PRODUCTION OF RELEVANT INFORMATION THAT IS PROPORTIONAL TO THE NEEDS OF THE CASE**

The Subpoena seeks information directly relevant to the claims and defenses in this case. MMO alleges that Defendants deceived TPPs into paying for TRT medicines over a seventeen year period and seeks to represent a class of TPPs, including UHC, asserting claims for treble damages of hundreds of millions of dollars. In addition to defending themselves on the merits,

---

[3] UHC is required to comply with the subpoena in Minneapolis, Minnesota, which is within 100 miles of its headquarters in Minnetonka, Minnesota where it was served. Although Rule 45(d)(2)(B)(i) provides that motions to compel ordinarily should be determined in the court for the district where compliance is required, this MDL Court has the power to enforce the Subpoena. Under 28 U.S.C. § 1407(b), this Court "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in . . . coordinated or consolidated pretrial proceedings." Applying that statue, numerous courts have held that MDL courts "may hear and decide motions to compel or motions to quash or modify subpoenas directed to nonparties in any district." *In re Clients & Former Clients of Baron & Budd, P.C.*, 478 F.3d 670, 671 (5th Cir. 2007) (per curiam); *accord In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2325, 2:12-cv-09084, 2017 WL 1090029, at *1 (S.D. W. Va. Mar. 31, 2017); *In re Factor VII or IX Concentrate Blood Prods. Litig.*, 174 F.R.D. 412, 415 (N.D. Ill. 1997).

Defendants are entitled to defend themselves against MMO's allegation that all TPPs are similarly situated with respect to the fraud alleged in the Third Amended Complaint and that a class of TPPs should be certified.

In this case, as this Court has found based on Plaintiffs' representations, MMO's theory of "RICO injury and causation appears to be as follows: (1) defendants made *direct* misrepresentations to plaintiff and other TPPs, (2) which *directly* caused their injuries (favorable formulary placement of TRTs), and (3) defendants' misrepresentations to physicians and consumers ensured that defendants could "pull through" on the formulary placement, . . . thereby increasing plaintiff's injury with each off-label prescription." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 159 F. Supp. 3d 898, 914 (N.D. Ill. 2016) (emphasis added). To satisfy its burden on class certification, MMO must prove that it can make that showing for each putative class member based on generalized proof. *See Wal-Mart Stores, Inc. v. Duke*, 564 U.S. 338, 350 (2011) (issue is "capable of classwide resolution" only if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). In addition, MMO must "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

To prepare for MMO's class certification motion, Defendants are entitled to discover, among other things, whether TPPs made different decisions about the placement of TRT medicines on their formularies and restrictions placed on payment for those medicines during the class period, whether TPPs had access to different information about TRT medicines from defendants or other sources on which they based their formulary decisions, when different TPPs learned of the fraud alleged in the Third Amended Complaint, and how much different TPPs paid for TRT medicines. *See*, *e.g.*, *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-*

*Aventis U.S. LLP*, 806 F.3d 71, 90–91 (2d Cir. 2015) (affirming denial of certification of class of TPPs seeking recovery for amounts paid for prescription medicine allegedly due to manufacturer's fraud because "Plaintiffs' generalized proof is insufficient to establish RICO causation for each member of the putative class"); *UFCW Local 1176 v. Eli Lilly & Co.*, 620 F.3d 121, 134 (2d Cir. 2010) (same); *In re Actiq Sales & Marketing Pracs. Litig.*, 307 F.R.D. 150 (E.D. Pa. 2015) (denying certification of proposed TPP class seeking recovery of amounts paid for prescription medicine, among other reasons, because record "show[ed] that TPPs treated claims for Actiq reimbursement differently throughout the proposed class period"). Plainly, UHC, as the largest member of the proposed class, has information bearing on those issues.

Moreover, the information from UHC requested by the Subpoena is proportional to the needs of the case. MMO on behalf of itself and the putative class members, including UHC, seeks damages of hundreds of millions of dollars trebled. The information Defendants have requested of UHC is critical to determining whether MMO can satisfy its burden to certify a class of TPPs, including UHC, seeking those substantial damages. Although UHC is a non-party, it has significant resources and stands to benefit if a class is certified, and Defendants have expressed their willingness to work with UHC to reduce the burden on it.

## II. UHC HAS FAILED TO SATISFY ITS BURDEN TO SHOW THAT COMPLIANCE WOULD BE UNDULY BURDENSOME

UHC's response to the Subpoena (through OptumRx) stated only general objections. *See* Grass Dec. Ex. 5. Consistent with their obligations to "take reasonable steps to avoid imposing undue burden or expense" on UHC, Fed. R. Civ. P. 45(d)(1), Defendants have attempted to engage UHC to work toward a mutually agreeable plan to address UHC's stated concerns about the Subpoena, including potentially narrowing its scope, reducing the burden on UHC regarding electronically stored information ("ESI"), protecting UHC's confidential information, and

providing sufficient time for compliance.  But Defendants' efforts to engage UHC in those discussions have not been reciprocated.

UHC's general objections plainly are insufficient to comply with its obligation to "state with specificity the grounds for objecting to [each] request, including the reasons," which applies to responses to subpoenas served on nonparties under Rule 45 just as it does to responses to document requests served on parties under Rule 34.  *See Am. Fed'n of Musicians of the U.S. and Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) ("a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections"); *Walinbay S.A. v. Fresh Results, LLC*, Nos. 13-CIV-60844, 13-CIV-615460, 2014 WL 1267170, at *2 (S.D. Fla. Feb. 26, 2014) (non-party's "generic, boilerplate, and cursory" objections to subpoena "fail to satisfy the requirements of this Court").  UHC's general objections should be overruled for that reason alone.

UHC should not be permitted to supplement its objections now because "Rule 45 'require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.'"  *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012).  But even if, contrary to law, UHC's general objections are considered, they should be overruled for the following reasons:

- UHC objects on the ground that the Subpoena is burdensome because it appears to seek information "in the custody or control of one or more named litigants," but it does not identify any such information.

- UHC objects on the ground that the Subpoena does not allow "a reasonable time to comply," but it has been almost three months since the subpoena was served and almost two months since the Subpoena was returnable and UHC still has not produced a single document.

- UHC objects on the ground that the Subpoena is overbroad and unduly burdensome because it "seeks electronically stored records," but Rule 45(e)(1) expressly contemplates the production of ESI in response to a subpoena, and UHC has not explained the particular burden that supposedly would be caused by a search for ESI.

- UHC objects to the date range of the Subpoena, but the date range parallels the date range for which MMO seeks damages.

- UHC objects because it appears the Subpoena "seeks records and information that are confidential and proprietary," but this Court has entered a protective order that would permit UHC to protect such information by designating it as confidential. *See* First Amended CMO 8 at ¶¶ 1.e, 1.h [ECF No. 1682].

In any event, UHC's objections likely could have been resolved had UHC responded to Defendants' repeated requests to discuss them. Instead, in the three months since Defendants served the Subpoena, UHC has done nothing to clarify or resolve its objections, has not produced a single document, and has not offered a schedule for doing so. Defendants should not be required to wait longer for compliance as Court-ordered deadlines approach. The Court should compel UHC to comply with the Subpoena and produce the requested documents.

### III. THE COURT SHOULD AWARD DEFENDANTS' FEES AND COSTS IN MAKING THIS MOTION

The Court should exercise its inherent authority to require UHC to reimburse Defendants for their costs in making this motion. *See Manez v. Bridgestone Firestone North Am. Tire, LLC*,

533 F.3d 578, 591 (7th Cir. 2008) ("courts retain the inherent power to punish the full range of litigation abuses," including "inflict[ing] needless costs on the court and the defendants"). This motion does not arise from the parties' failure to resolve a legitimate dispute over the scope of a subpoena after discussions between them. Instead, this motion was necessitated by UHC's failure to engage in any meaningful discussions over the scope of the Subpoena. Failing to impose the costs of this motion on UHC would create a perverse incentive for recipients to ignore validly issued subpoenas in the hope that the issuing party will not allocate the resources and incur the costs of enforcing them.

## CONCLUSION

For the foregoing reasons, the Court should compel UHC to comply with the Subpoena.

Dated: August 21, 2017

Respectfully submitted,

*/s/ Andrew K. Solow*
Andrew K. Solow (*pro hac vice*)
Ingo W. Sprie, Jr. (*pro hac vice*)
Robert M. Grass (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Tel: (212) 836-8000
Fax: (212) 836-8589
andrew.solow@apks.com
ingo.sprie@apks.com
robert.grass@apks.com

*Attorneys for Endo Pharmaceuticals Inc. and Auxilium Pharmaceuticals, LLC (f/k/a Auxilium Pharmaceuticals, Inc.)*