IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION COORDINATED PRETRIAL PROCEEDINGS | ) ) ) ) ) ) | MDL No. 2545<br><br>Case No. 14 C 1748 |
| This document relates to: | ) ) ) | |
| MEDICAL MUTUAL OF OHIO, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 14 C 8857 |
| ABBVIE INC., et al., | ) ) | |
| Defendants. | ) | |

CASE MANAGEMENT ORDER NO. 135
(Memorandum Opinion and Order on MMO's Motion for Leave to Amend the Third
Amended Complaint in *Med. Mutual of Ohio v. AbbVie Inc.*, No. 14 C 8857)

MATTHEW F. KENNELLY, District Judge:

In this civil RICO case, plaintiff Medical Mutual of Ohio (MMO), an Ohio mutual insurance company, alleges that defendants, which are pharmaceutical companies, engaged in a fraudulent scheme to induce MMO and other third-party payors (TPPs) to reimburse their insureds for defendants' allegedly unsafe and ineffective testosterone replacement therapy (TRT) drugs. MMO sued on behalf of a putative class of TPPs who allege they suffered economic injuries as a result of defendants' scheme, but the Court recently denied MMO's motion for class certification. *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, Nos. 14 C 1748, 14 C 8857, MDL No. 2545, 2018 WL 3586182 (N.D. Ill. July 26, 2018).

The Court previously dismissed some of MMO's claims but allowed others to proceed. See *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898 (N.D. Ill. 2016) ("*MMO I*"); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, Nos. 14 C 1748, 14 C 8857, MDL No. 2545, 2016 WL 4091620 (N.D. Ill. Aug. 2, 2016) ("*MMO II*"). MMO has moved for leave to amend its third amended complaint. For the following reasons, the Court denies MMO's motion in all respects but one: the Court will permit MMO to amend its third amended complaint by deleting allegations regarding the drug Testopel.

**Background**

**1.      Prior orders on defendants' motions to dismiss**

MMO alleges that defendants participated in a fraudulent marketing scheme that mischaracterized TRT drugs as a safe and effective treatment for various "off-label" conditions. According to MMO, defendants' fraudulent marketing scheme caused MMO and other TPPs to pay for off-label TRT prescriptions that were unnecessary and unsafe for their insureds and for which they would have never paid but for the scheme.

MMO filed this lawsuit in November 2014. MMO filed a first amended complaint in June 2015 after defendants moved to dismiss and filed a second amended complaint, also in June 2015, that contained technical rather than substantive changes.

MMO's RICO claims in the second amended complaint relied on predicate acts of mail fraud, wire fraud, and violations of the Travel Act, 18 U.S.C. § 1952. MMO

asserted these claims against defendants AbbVie, Auxilium, Lilly, Actavis, and Endo.[1] MMO also asserted claims against these defendants for RICO conspiracy under 18 U.S.C. § 1962(d); violations of the consumer protection statutes of all fifty states; and violations of the insurance fraud statutes of the states in which the defendants are headquartered. In addition, MMO asserted claims against all defendants (twenty-three in total) for common law fraud, negligent misrepresentation, and unjust enrichment.

In ruling on defendants' motion to dismiss, the Court determined that the scheme MMO alleged could support a civil RICO claim under 18 U.S.C. § 1962(c) based on the alleged predicate acts of mail and wire fraud. The Court concluded, however, that MMO's RICO claims were deficient because MMO had not alleged the circumstances of the fraud with the particularity required by Federal Rule of Civil Procedure 9(b). *MMO I*, 159 F. Supp. 3d at 920-22. By contrast, the Court allowed MMO's RICO conspiracy claims to go forward because it concluded that MMO had adequately alleged that each defendant "agree[d] to participate in an endeavor which, if completed, would constitute a violation of" 18 U.S.C. § 1962(c). *Id.* at 923 (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998)). The Court next found that MMO could bring state law claims only under the laws of Ohio. The Court dismissed MMO's common law claims for fraud and unjust enrichment because they failed to meet Rule 9(b)'s pleading requirements. The Court also dismissed all of MMO's state statutory claims because

---

[1] The AbbVie defendants include AbbVie Inc., Abbott Laboratories, Abbott Products, Inc., Solvay Pharmaceuticals, Inc. and Unimed Pharmaceuticals, LLC. Auxilium is an abbreviation for Auxilium Pharmaceuticals Inc. The Lilly defendants include Eli Lilly and Company, Lilly USA, Inc., Acrux Commercial Pty Ltd., and Acrux DDS Pty Ltd. The Actavis defendants include Actavis plc, Actavis Pharma, Inc., Actavis, Inc., Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Anda, Inc. Endo is a shorthand for Endo Pharmaceuticals Inc.

3

none were based on Ohio statutes.  The Court declined to dismiss MMO's common law claims for negligent misrepresentation, concluding that they met pleading standards applicable to non-fraud-based claims.

The Court granted MMO leave to file a third amended complaint, and MMO did so in April 2016.  MMO dropped its common law fraud, unjust enrichment, and state statutory claims but added new details about the ways in which defendants' alleged scheme operated.  Based on MMO's new allegations, including the long duration of defendants' alleged scheme, the many channels through which defendants allegedly communicated misrepresentations, and the complexity of MMO's formulary decision-making process, the Court again concluded that "the circumstances of this case warrant a more flexible application of Rule 9(b)."  *MMO II*, 2016 WL 4091620, at *3.  The Court also noted that defendants were "at least equally likely" to have certain information that MMO lacked and contemplated that MMO would be able to obtain such information through discovery.  *Id.*  Ultimately, the Court found that MMO had adequately alleged its 18 U.S.C. § 1962(c) claims against Auxilium, AbbVie, Lilly, and Endo but not against GlaxoSmithKline (GSK) and Actavis.  The Court dismissed MMO's section 1962(c) claims against GSK and Actavis because they lacked "a plausible allegation that [those defendants] made direct misrepresentations to" MMO, *id.* at *5, and dismissed MMO's negligent misrepresentation claims against GSK and Actavis for the same reason.  The Court denied defendants' motion to dismiss in all other respects.

**2.    MMO's motion for leave to amend the third amended complaint**

MMO filed the present motion for leave to amend two weeks before fact discovery closed.  Since that time, the parties have completed fact discovery.  In its

proposed fourth amended complaint, MMO adds claims alleging that all defendants violated the Ohio Corrupt Practices Act (OCPA) by conducting and participating in the affairs of four fraudulent enterprises "through a pattern of corrupt activity." Ohio Rev. Code § 2923.32(A)(1); *see* Pl.'s Mot., Ex. 1 (4th Am. Compl.) Counts 27-30.[2] The alleged fraudulent enterprises are the same as those on which MMO's federal RICO claims are based: peer selling enterprises; publication enterprises; direct-to-consumer enterprises; and formulary access enterprises. MMO has also added a claim alleging that all defendants conspired to violate section 2923.32(A)(1) of the OCPA. *See* Ohio Rev. Code § 2923.34(A) (authorizing civil claim for relief against any person who violates or conspires to violate section 2923.32); 4th Am. Compl. Count 31.[3] MMO contends that "the OCPA claims are identical to the existing federal RICO claims" and that they "do not include any new factual allegations." Pl.'s Reply at 1, 3. In addition to seeking leave to add OCPA claims, MMO seeks leave to update the class definition and to delete allegations regarding defendant Auxilium's drug Testopel, which is no longer at issue in this case. Pl.'s Mot. at 2-3.

## Discussion

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as a matter of course. "In all other cases," however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

---

[2] MMO has clarified in its reply that, consistent with the Court's prior orders, MMO is not asserting direct OCPA claims (4th Am. Compl., Counts 27-30) against Actavis. Pl.'s Reply at 4-5.

[3] In Count 31 of the proposed fourth amended complaint, MMO alleges that defendants "conspir[ed] to violate Ohio Rev. Code § 2923.31(I)." 4th Am. Compl. ¶¶ 1637-38, 1640-41, 1644. Section 2923.31(I), however, defines "corrupt activity" as used in the OCPA. It is section 2923.34(A) that provides for conspiracy liability.

5

15(a)(2).  A "court should freely give leave when justice so requires."  *Id.*  Nonetheless, a "court may deny leave for a variety of reasons, including undue delay and futility." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).  A proposed amendment is futile when, for example, "the new pleading would not survive a motion to dismiss."  *Id.* at 685 (internal quotation marks and citation omitted).  In assessing whether a proposed amended complaint would survive a motion to dismiss, a court assumes the truth of all well-pleaded allegations in the proposed complaint and draws all reasonable inferences in the plaintiff's favor.  *See St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).

For the following reasons, the Court concludes that MMO's proposed addition of OCPA claims would be futile and denies MMO's motion for leave to amend in that regard.  The Court also terminates as moot MMO's request to amend the class definition.  Finally, the Court grants MMO's request to delete allegations regarding the drug Testopel.

**1.    OCPA claims**

MMO seeks to amend its complaint to add five claims under the OCPA.  Ohio Rev. Code. § 2923.32(A)(1) provides, "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]"  To state a claim for a violation of section 2923.32(A)(1), MMO must allege the following elements "with specificity:  (1) that conduct of the defendant involves the commission of two or more specifically prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity, and (3) that the defendant has

6

participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 913 (S.D. Ohio 2013). The OCPA is "modeled after the federal RICO statute" but differs in at least one way: the "pattern of corrupt activity that forms the basis of a civil [OCPA] claim" must include "at least one predicate act that is not a form of securities fraud, mail or wire fraud, or the interstate transportation of stolen property or securities." *Bradley v. Miller*, 96 F. Supp. 3d 753, 770, 774 (S.D. Ohio 2015) (quoting *Baker v. Pfeifer*, 940 F. Supp. 1168, 1181 (S.D. Ohio 1996)); *see also* Ohio Rev. Code § 2923.34(A).

To state a claim for conspiracy to violate § 2923.32(A)(1), MMO need not allege that each defendant committed two or more predicate acts. *See Bradley*, 96 F. Supp. 3d at 773. It must, however, allege that the defendants agreed that others would commit acts that would establish a pattern of corrupt activity. *See id.* MMO must also allege that it "was injured, directly or indirectly, by the OCPA violation[s] and the injuries were proximately caused by [those] violation[s]." *Bradley*, 96 F. Supp. 3d at 774; *see* Ohio Rev. Code § 2923.34(A).

### a. **MMO has not alleged fraud with particularity**

MMO argues that the Court should grant leave to add OCPA claims to the complaint because the proposed claims "completely track the existing federal RICO direct and conspiracy claims which this Court already found satisfied Rule 12(b) and Rule 9(b)." Pl.'s Reply at 1. MMO contends that the fourth amended complaint alleges the same predicate acts as the third and that it intends to rely on the same allegations and evidence to prove the RICO and OCPA claims. MMO's OCPA claims thus depend

on allegations that defendants engaged in mail and wire fraud.

Just as MMO must allege the circumstances of mail and wire fraud "with particularity" for RICO purposes, Fed. R. Civ. P. 9(b), MMO must also do so for OCPA purposes. *See Ogle*, 924 F. Supp. 2d at 913; *Cap City Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *9 (S.D. Ohio Sept. 1, 2016). When the Court concluded that MMO's federal RICO claims satisfied Rule 9(b)'s pleading requirements, it did so because at the time, the "circumstances . . . warrant[ed]" a "more flexible application" of the rule. *MMO II*, 2016 WL 4091620, at *3; *see also MMO I*, 159 F. Supp. 3d at 920-22. MMO had provided enough detail to show that its allegations were "responsible and supported," and it would have the opportunity to obtain through discovery the information it contended was outside of its control. *MMO II*, 2016 WL 4091620, at *3, *5. Now that the parties have completed fact discovery, however, MMO is no longer entitled to the same, more flexible application of Rule 9(b). *See, e.g.*, *Gandhi v. Sitara Capital Mgmt.*, 721 F.3d 865, 869-70 (7th Cir. 2013) (affirming denial of plaintiff's request to amend complaint for the fourth time where, "[d]espite having the benefit of discovery," plaintiff failed to allege fraud with the particularity that Rule 9(b) requires); *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-cv-5577, 2017 WL 6569633, at *9 (N.D. Ill. Dec. 21, 2017).

MMO contends that it "did not add new factual allegations to the [fourth amended complaint] from ensuing discovery to avoid" defendants' argument "that additional discovery and expert opinion would . . . be needed to test MMO's proposed new allegations." Pl.'s Reply at 3. As the Court understands MMO's argument, it says it has collected new evidence relevant to its fraud claims but contends it has chosen not to

8

incorporate it into the proposed fourth amended complaint.  Defendants, on the other hand, argue that even after discovery, MMO has not unveiled any evidence of fraud, such as evidence that defendants communicated misrepresentations directly to MMO. Whatever the evidence produced in discovery may show, MMO's OCPA claims are deficient because they do not incorporate any new facts.  Rather, they depend on allegations that the Court found sufficient to state a claim only under the more relaxed Rule 9(b) pleading standard prior to the completion of fact discovery.  (MMO's argument that the OCPA claims relate back to the original complaint may resolve any limitations issue, but it does not cure MMO's noncompliance with Rule 9(b).)  And although MMO has previously argued that the OCPA has "broader standing" requirements and "arguably lower pleading standards from proximate causation grounds than" federal RICO claims, *see* Pl.'s May 2, 2018 Ltr. at 1 n.1 (notifying Court of intent to file amended complaint), MMO has not pressed these arguments in its motion for leave to amend—and in any event they have no bearing on MMO's failure to allege the circumstances of the alleged fraud with the required particularity.

Because MMO's proposed fourth amended complaint "does not add any new factual allegations at all" and "merely adds" OCPA claims, the OCPA claims "would not survive a motion to dismiss."  Pl.'s Reply at 1, 2; *McCoy*, 760 F.3d at 685.  Thus the amendment would be futile.  *McCoy*, 760 F.3d at 685.

### b. MMO has not sufficiently alleged other OCPA predicate acts

The Court concludes that MMO's proposed OCPA claims would not survive a motion to dismiss for an additional reason.  Even if MMO alleged mail and wire fraud with particularity, it has not sufficiently alleged "at least one predicate act that is not a

9

form of securities fraud, mail or wire fraud, or the interstate transportation of stolen property or securities." *Bradley*, 96 F. Supp. 3d at 774; *see also* Ohio Rev. Code § 2923.34(A). MMO contends that it has sufficiently alleged violations of the Travel Act predicated on "kickbacks and commercial bribery." Pl.'s Reply at 4. MMO also argues that the alleged kickbacks and bribery—as well as defendants' "engage[ment] in [a] wide-ranging fraudulent, unbranded promotional scheme"—supply, as standalone offenses, predicate acts for the OCPA that are not grounded in mail or wire fraud. *Id*. The Court disagrees.

      **i.    Travel Act**

The Travel Act provides, in relevant part, that "[w]hoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to . . . (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform (A) an act described in paragraph . . . (3)," commits a crime. 18 U.S.C. § 1952(a). "Unlawful activity" as used in the Travel Act is limited to violations of laws regarding "gambling, liquor . . . narcotics or controlled substances . . . prostitution . . . extortion, bribery . . . arson," and money laundering. *See* 18 U.S.C. § 1952(b); *see also Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342-43 (11th Cir. 2017); *Allen Bros., Inc. v. Byrdak*, No. 98 C 6190, 1999 WL 558136, at *2 (N.D. Ill. July 27, 1999). "[T]he Travel Act incorporates the state law definition of some of these prohibited activities." *Feldman*, 849 F.3d at 1342-43; *see also* 18 U.S.C. § 1952(b) (defining "unlawful activity" to include bribery "in violation of the laws of the State in which committed or of the United States"). Predicate acts that are not based on

10

fraud, such as bribery, need not be alleged with particularity under Rule 9(b). *See, e.g.*, *Santana v. Cook Cty. Bd. of Review*, 270 F.R.D. 388, 389 (N.D. Ill. 2010); *Johnson Controls, Inc. v. Exide Corp.*, 132 F. Supp. 2d 654, 659 (N.D. Ill. 2001).

MMO alleges in the third amended complaint that the patterns of racketeering underlying defendants' direct-to-consumer enterprises and defendants' conspiracies to violate 18 U.S.C. § 1962(c) include acts indictable under the Travel Act, 18 U.S.C. § 1952. *See* 3d Am. Compl. ¶¶ 1373, 1393, 1413, 1433, 1453, 1469, 1483, 1496, 1509, 1522. MMO repeats these allegations in the proposed fourth amended complaint, *see* 4th Am. Compl. ¶¶ 1346, 1366, 1386, 1406, 1426, 1442, 1456, 1469, 1482, 1495, and alleges for purposes of the proposed OCPA conspiracy claims that defendants' racketeering predicate acts included "multiple instances of unlawful activity in violation of 18 U.S.C. § 1952." 4th Am. Compl. ¶ 1642. Although MMO's proposed claims for direct OCPA violations do not expressly include allegations that defendants violated the Travel Act, proposed Count 29 can fairly be interpreted as alleging Travel Act violations because it incorporates by reference MMO's RICO allegations regarding defendants' direct-to-consumer enterprises. *See* 4th Am. Compl. ¶ 1587.

MMO also alleges in its third amended complaint and its proposed fourth amended complaint that defendants bribed and paid kickbacks to physicians. MMO alleges, for example, that in forming and conducting peer selling enterprises, defendants paid physicians to promote TRTs to other doctors "all across the country." 3d Am. Compl. ¶ 266. It alleges that those physicians

> knowingly and willingly agreed to assist each of the Defendants in their false and misleading promotion of the TRT drug(s), notwithstanding that such a promotional campaign required the systematic repetition of false and misleading statements to, and the commercial bribery (through kickbacks) of, a score or

11

more physicians throughout the United States, and that the promotion of any of the TRT drugs for unsafe and unapproved indications by Defendants was illegal. *Id.* ¶ 269.

In particular, MMO alleges that one physician, who is "one of the highest-volume TRT prescribers in the country[,] told an AbbVie manager that 'to make it worthwhile for me [to speak at AbbVie sponsored CME events] I would need to have at least three talks set up, with my honorarium being $2500 for each one . . . then we can make this happen.'" *Id.* ¶ 441; *see also, e.g.*, *id.* ¶¶ 735, 748 (alleging that defendants paid specific physicians for consulting, speaking, meals, and travel). MMO alleges that "[t]he more favorable a physician's statements were, the more he or she could expect to receive in the form of speaker fees, consulting fees, advisory board fees, and research grants." *Id.* ¶ 291. On the other hand, "[p]hysicians who refused to deliver the messages that each Defendant wanted were blackballed and would not receive additional payments." *Id.*; *see also id.* ¶ 273 (citing document in which an AbbVie manager "strongly" recommended against using a physician as a future speaker "[because he] was unwilling to follow" "the AbbVie-supplied promotional slide deck"). Finally, MMO alleges that defendants used the wires and mails to send event invitations to physicians, pay physicians, and book hotels and airplane tickets. *See, e.g.*, *id.* ¶ 276; *id.* ¶ 287 (alleging that AbbVie paid unnamed physicians $3,000 each "as an attendance honorarium" at a conference in Puerto Rico and paid their lodging expenses). MMO repeats these allegations in the proposed fourth amended complaint.

MMO makes similar allegations regarding defendants' alleged conspiracy to violate 18 U.S.C. § 1962(c). MMO alleges, for example, that defendants paid specific amounts to at least six named physicians for "research, consulting, travel, meals and

12

speaker fees." TAC ¶ 999; *see also id.* ¶¶ 1014, 1023, 1030, 1037, 1045 (similar). A physician that received $44,500 in compensation and $5,000 "for travel and expenses" in 2011 is the same physician that requested a $2,500 "honorarium" for every CME speech (but MMO does not allege that defendants paid him in response to that request). *See id.* ¶¶ 441, 1037. MMO repeats these allegations in the proposed FAC.

Although MMO need not allege bribery and kickbacks with particularity, it does need to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even assuming the truth of MMO's allegations and drawing all reasonable inference in its favor, *see St. John*, 822 F.3d at 389, the Court finds that MMO has not stated a plausible claim for bribery or for a Travel Act violation predicated on bribery. As an initial matter, MMO ties the bulk of its bribery and kickback allegations only to defendants' alleged peer selling enterprises—yet it has not alleged that defendants violated the Travel Act in conducting peer selling enterprises.

Setting that issue aside, MMO's allegations are also deficient in substance. Namely, MMO does not allege, or explain in its briefs on the motion to amend, how any of the facts described above constitute bribery or kickbacks "in violation of the laws of the State in which committed or of the United States." 18 U.S.C. § 1952(b). MMO does not even specify whether its bribery and kickback claims are grounded in state law, federal law, or both. In addition, if the Court does guesswork for MMO—such as by assuming that it intends to invoke Ohio Revised Code § 2921.02, which prohibits bribery

13

of "a public servant or party official"—MMO has not alleged sufficient factual content from which one can reasonably infer defendants' liability for violation of that statute. *See Iqbal*, 556 U.S. at 678. For example, MMO has not alleged that (or how) a physician can be considered a "public servant." Accordingly, MMO's allegations that defendants have committed bribery or paid kickbacks, or have violated the Travel Act by committing bribery or paying kickbacks, do not salvage its OCPA claims.

### ii. Other predicate acts

MMO argues that "in addition to the Travel Act predicate acts," it alleges in the third amended complaint and the proposed fourth amended complaint that defendants engaged in (1) a "wide-ranging fraudulent, unbranded promotional scheme"; (2) kickbacks; and (3) commercial bribery, and that these actions constitute OCPA predicate acts that are not grounded in mail or wire fraud. *See* Pl.'s Reply at 4. MMO's reference to defendants' alleged "fraudulent, unbranded promotional scheme" is a nonstarter, however, because MMO does not explain how that "scheme" is distinct from its RICO claims predicated on mail and wire fraud. And the Court has already discussed why MMO's allegations regarding kickbacks and bribery fail even as standalone claims.

Because MMO fails to sufficiently plead any OCPA predicate act that is not based on mail or wire fraud, MMO's OCPA claims would not survive a motion to dismiss. *See Bradley*, 96 F. Supp. 3d at 774; Ohio Rev. Code § 2923.34(A).

### c. Whether permitting MMO to add OCPA claims would cause defendants unfair prejudice

In addition to arguing that MMO's proposed OCPA claims are deficient, defendants argue that MMO unduly delayed in seeking to add them. Defendants

14

dispute that the requirements for showing proximate cause under the OCPA differ from those under RICO but stress that if the Court holds otherwise, the differing requirements would result in the need for additional fact and expert discovery. Defendants emphasize that MMO filed its motion after the final deadline for propounding discovery requests and that fact discovery has since closed. Under these circumstances, defendants contend, they would be unfairly prejudiced if the Court were to grant MMO leave to add OCPA claims. MMO responds to these arguments by stating that the factual allegations in its proposed fourth amended complaint are exactly the same as those in the third and that no further discovery would be necessary. Taking MMO's response at face value, defendants' arguments regarding delay and prejudice are not implicated, and the Court need not rule on them.

As discussed above, however, the Court has determined that MMO's factual allegations do not satisfy Rule 9(b) at this later stage of the litigation. If MMO agrees that the requirements for showing proximate cause under the OCPA and RICO are the same, then MMO's motion to amend is unpersuasive for the additional reason that MMO has made no effort to explain why it needs to amend the complaint to add the new claims. On the other hand, if MMO's position is that the requirements for showing proximate cause differ, then the opposite problem exists: MMO has made no effort to explain why it waited so long to assert OCPA claims. And in that event, defendants' arguments regarding undue delay and prejudice come into play. *See, e.g., McCoy* 760 F.3d at 687 (finding that undue delay in seeking leave to amend would cause prejudice to defendants even at the pleading stage where, among other things, "the parties had already invested significant resources in the case" and plaintiff had "presented no

excuse for omitting [the] theories originally"); *Johnson v. Cypress Hill*, 641 F.3d 867, 872-73 (7th Cir. 2011) (affirming denial of plaintiff's motion to amend where fact discovery had closed, defendants had filed a summary judgment motion, plaintiff had engaged in "lengthy delay," and the proposed amendment "would mean additional discovery" that would "change the course of the litigation"); *Ferguson v. Roberts*, 11 F.3d 696, 706-07 (7th Cir. 1993) (affirming denial of plaintiff's motion to amend where "the amended complaint contained 'new complex and serious charges' which would undoubtedly require additional discovery for the defendants to rebut" (citation omitted)).

**2.    Other proposed amendments**

Because the Court denied MMO's motion for class certification, it terminates as moot MMO's request to update the class definition as proposed.  On the other hand, because defendants do not appear to oppose MMO's request to delete allegations regarding the drug Testopel, *see* Defs.' Opp. at 1 n.1, the Court grants MMO leave to make that technical change.

**Conclusion**

For the foregoing reasons, the Court denies in part and grants in part MMO's motion for leave to amend [dkt. no. 389].  MMO is given leave to delete its allegations regarding the drug Testopel.  MMO's motion is otherwise denied.  The case is set for a case management conference, to be conducted by telephone, on September 13, 2018 at 11:15 a.m. Chicago time.  Defense counsel are to set up a call-in number and are to advise all counsel and the Court by the close of business on September 12, 2018.  Counsel should be prepared to discuss all remaining discovery and pretrial deadlines as

well as the trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 11, 2018